**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

AMERICAN STEVEDORNG, INC.,

                    Plaintiff        Civil Case No.  13 cv 0918

-against-

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, ET. ALS.

                    Defendants.


_____


MICHAEL FARINO,

                                         **THIRD AMENDED**
                    Plaintiff,           **THIRD PARTY-COMPLAINT**

-against-


SABATO CATUCCI, RONALD CATUCCI,
KEITH CATUCCI, MATT YATES AMERICAN MARITIME
SERVICES OF NEW YORK INC.,AMERICAN MARITIME
SERVICES OF N.J. , INC. AND AMERICAN
CHASIS POOL SYSTEMS, LLC,

                    Defendants.
_____


     Michael Farino, by and through his attorney Steven M. Schaffer,
Esq., by the within third-party complaint against third party
defendants Salvatore Catucci, Matt Yates, Ronald Catucci, Keith
Catucci, American Maritime Services of New York. Inc., and American
Chassis Pool of Systems LLC, complains of the third-party defendants
and alleges the following to be true:

          **THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS**

          **SABATO CATUCCI, MATT YATES RONALD CATUCCI, KEITH CATUCCI,**

          **AMERICAN MARITIME SERVICES OF NEW YORK, INC. AND**

                    **AMERICAN CHASIS POOL SYSTEMS, LLC**


                    <u>**JURISDICTIONAL ALLEGATIONS**</u>

     1. This Court has jurisdiction over this matter pursuant to

18 U.S.C. 1964(a)

2. Venue is predicated upon 18 U.S.C. 1965, and 28 U.S.C. 1391.

## AS TO THE FIRST CAUSE OF ACTION

1.   Third-party plaintiff Michael Farino is engaged in business in the trucking industry and is a principal of MTC Transportation, Inc.

2.   American Stevedoring, Inc. a/k/a American Stevedoring Ltd. ("ASI") was from approximately 1993 to 2011 the terminal operator of the Red Hook Brooklyn Pier and engaged in business running the Port operation services, including without limitation, stevedoring for container, warehouse operations, loading and unloading vessels,  and support services ("Stevedoring").

3.  American Maritime Services of N.J., Inc.  ("AMSNJ") is a corporation is engaged in business in providing maritime services in New Jersey.

4. American Maritime Services of New York, Inc.  ("AMS") is a corporation is engaged in business in providing maritime services in New York.

5. American Warehousing Inc. was a corporation engaged in business of providing warehousing services at the Brooklyn Red Hook Port.

6.  Sabato Catucci ("Sal Catucci") is a third-party defendant and is or was  an owner and, or officer of ASI.

7. Sabato Catucci ("Sal Catucci") is a third-party defendant and is or was an owner and, or officer of American Maritime Services of New York, Inc. ("AMS") a third-party defendant.

8.  Sabato Catucci ("Sal Catucci") is a third-party defendant and is or was an owner and, or officer of American Maritime Services of N.J. Inc. ("AMSNJ") a third-party defendant.

9. Sabato Catucci ("Sal Catucci") is a third-party defendant and is or was an owner and, or officer of American Chasis Pool Systems, LLC ("ACP") a third-party defendant.

10. Sabato Catucci("Sal Catucci") is a third-party defendant and is or was an owner and, or officer of American Warehousing Inc.("AWI").

11. Ronald Catucci ("Ronald Catucci") is a third-party defendant, and is, or was an owner and, or officer of ASI.

12. Ronald Catucci ("Ronald Catucci") is a third-party defendant, and is, or was an owner and, or officer of American Maritime Services of New York Inc. ("AMS").

13. Ronald Catucci ("Ronald Catucci") is a third-party defendant, and is, or was an owner and, or officer of American Maritime Services of N.J., Inc. ("AMSNJ").

14.Ronald Catucci ("Ronald Catucci") is a third-party defendant, and is, or was an owner and, or officer of AWI.

15. Ronald Catucci ("Ronald Catucci") is a third-party defendant, and is or was  an owner and, or officer of American Chasis Pool Systems LLC ("ACP").

16. Keith Catucci is a third party defendant, and, is or was an owner and, officer, or employee of ASI.

17. Keith Catucci is a third party defendant, and, is or was an owner and, or officer, or employee of American Chasis Pool Systems, LLC (hereinafter "ACP").

18. Matt Yates is or was an employee of ASI.

16. Clinton Catucci is or was an employee of ASI.

19. Sal Catuucci and Ronald Catucci at all times relevant were the individuals in control of the operations of ASI, AWI, AMS, AMSNJ, and ACP.

20. Weiss & Hiller PC is a law firm which were the attorneys for ASI in a proceeding entitled <u>American Stevedoring, Inc. v. The Port Authority of New York and New Jersey</u> Docket no. 10-05 before the Federal Maritime Commission, Washington D.C. (the "Federal Maritime Commission Action") and the "Escrow Agent" regarding the proceeds of a monetary settlement fund established in a settlement in the Federal Maritime Commission Action (the "Port Authority Settlement Fund").

21. Michael Hiller, Esq. is a partner in the law firm of Weiss & Hiller P.C. and for Weiss & Hiller PC has administered the Port Authority Settlement Fund.

22. Lauren Rudick, Esq. is upon information and belief an associate attorney at Weiss & Hiller PC and has worked on and, or administered with Michael Hiller, Esq. on behalf of Weiss & Hiller PC, the Port Authority Settlement Fund.

## The Enterprise

23. Dating from the year 2000 to date Sal Catucci, Ronald Catucci,  Keith Catucci, Clinton Catucci, and  Matt Yates ( hereinafter referred to as the "Catuccis" or "Catucci Associates" ) acting in concert with and using  ASI, AWI, AMS, AMSNJ, ACP and their employees, respectively as instrumentalities to engage and conduct business at the Red Hook Brooklyn New York Port and in New Jersey through means, including without limitation the illegal criminal acts hereinafter set forth herein, combined with intent to deprive others of money to benefit themselves individually and are an association in fact enterprise who individually and using  ASI, AWI,  AMS, AMSNJ, ACP and others as instrumentalities agreed to engage in and intentionally engaged acts constituting in a pattern of criminal activities, and conducted, and participated in the affairs of the criminal enterprise by participating in  a

pattern of criminal activity, including but not limited to, mail
fraud in violation of 18 U.S.C. 1341, wire fraud in violation of
18 U.S.C. 1343, tax fraud, Grand Larceny by Extortion under New
York Penal Law Section 155.05 and 155.30 indictable offenses
under State Law in violation 18 U.S.C. 1961-1964 et. Seq., theft
of interstate shipment in violation of 18 U.S.C. 659, and
commission of a felony Scheme to defraud under New York Penal
Law section 190.65 an indictable offense under State Law in
violation of 18 U.S.C 1961-1964 et. Seq.,  the Catucci
Asoociates, ASI, AMS, AWI and others, being  an association in
fact-enterprise at all times relevant controlled by Sal Catucci,
Ronald Catucci and the Catucci Associates from at least 2000
through 2012 and using ASI and its employees, AMS, AMSNJ, AWI,
ACP and other entities and individuals identified in the within
complaint as an instrumentalities, combined and agreed with one
another to effect the several fraudulent and criminal schemes
and commit themselves individually the acts hereinafter set
forth and to use ASI and its employees, AMS, AMSNJ, AWI, ACP and
other individuals and entities as instrumentalities to engage
and effect, in concert with them,  the illegal acts at all times
relevant intending to illegally and, or fraudulently enrich
themselves individually and personally,   ASI, AMS, AWI, ACP,
and, or business entities, now or formerly owned by the
individuals and, or Catucci family members, and others by
engaging in at least two (2) distinct and discrete episodes of
criminal and, or fraudulent activity hereinafter set forth
herein between the years 2000 to date. The enterprise was at all
times relevant vertically controlled jointly by Sal Catucci and
Ronald Catucci, together with their "soldiers" Matt Yates, Keith
Catucci, and Clinton Catucci, who conducted the criminal
enterprise with the activities of the illegal enterprise having
been effected by the Catucci Associates, using the business

entities identified herein as instrumentalities, in combination
with other individuals herein identified over a period of at
least twelve (12) years from 2000 through 2012, and the
enterprise is, an on-going enterprise (the "Enterprise").

## 2000 thru 2011

## Extortion And Tax Fraud Scheme

    24. The first distinct and discrete fraudulent and criminal
scheme was effected from 2000 through 2011 the Catucci
Associates acting in concert with ASI, with intent to wrongfully
deprive and take monies from approximately 25  individuals and
entities listed below and other "truckers" whose identity is
unkown at this time by extortion to benefit themselves
individually, ASI, and the Enterprise, the Catuccis, and or ASI
upon the direction of the Catuccis through employee(s) of ASI
demanded "cash" monies  be paid and they actually collected
"cash" monies weekly, in the amount aggregating of up
approximately $10,000 per month by threat and instilling a fear
upon each trucker conducting business that if the "cash" monies
were not paid, and not paid "weekly," the Catuccis and ASI would
not permit the truckers to enter and "park" at the Red Hook
Brooklyn Port which event would damage each trucker,
respectively, in their business the Red Hook Brooklyn Port, the
truckers were extorted weekly, from 2000 to September 2011, to
wit,

                PRIMA
                PABLO
                TAYLOR
                CLEARLAND
                TIME GO
                MM
                Jose
                Andres
                Robinson

Jomar
Demitri
Slava
Marta jelen crane shop
Rocky pier 7
Bemore
Diana
Bobby
Y&H YONG HUA LIU
RA & T JASON
RA & T RAYMOND
PAUL PRESTIGE
LUTHER SLIM
DAVE
GUY
VIP JOHNNY

A number of Chinese individuals or
Entities "trucking" from the
Red Hook Brooklyn Port whose
Exact Identify is to date unkown

The Unsworn Declaration of one (1) of the above truckers (identity redacted) is attached as Exhibit 2 and hereby incorporated herein as if more fully set forth at length.

   25. At all times relevant the Catuccis, whom were at all times in control of the Enterprise, acting in concert with Matt Yates who was Sal Catucci's enforcer, collected or directed ASI and its employees, including but not limited to Clinton Catucci and others, to collect and Extort these "cash" monies weekly, from 2000 through 2011 in violation of ,New York Penal Law sections 155.05 and 155.30, and 18 U.S.C. 1961

155.05 Larceny; defined.
   1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.
   2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

   ….(e) By extortion.

7

A person obtains property by extortion when he compels
or induces another person to deliver such property to
himself or to a third person by means of instilling in him a
fear that, if the property is not so delivered, the
actor or another will:
… ix) Perform any other act which would not in
itself materially benefit the actor but which is
calculated to harm another person materially with respect
to his health, safety, business, calling, career,
financial condition, reputation or personal relationships.

§ 155.30 Grand Larceny in the fourth degree.
… 6. The property, regardless of its nature and value, is
obtained by extortion;
Grand larceny in the fourth degree is a class E felony.

18 U.S.C. 1961
(1) "racketeering activity" means (A) any act or threat
involving….extortion….which is chargeable under State
Law.

26. From the period 2000 through September, 2011 (129
months) (516 weeks) the Catuccis, the Enterprise, acting in
concert with Matt Yates and using ASI an instrumentality
as, inter alia, ASI held the lease rights as the "Tenant"
of the Port Authority at the Red Hook Brooklyn Port,
committed twenty-five acts of extortion per week for five
hundred and sixteen weeks, aggregating twelve thousand nine
hundred (12,900) separate and distinct acts of criminal
extortion netting the individuals, ASI and the Enterprise
the approximate sum of One Million Two Hundred and Ninety
Thousand Dollars ($1,290,000) in "cash" (129 months @
approximately $10,000 per month), all Grand Larceny by
Extortion in violation of New York Penal Law 155.05,
155.30 and Felony Scheme To Defraud under New York Penal
Law 190.65, each of the 12,900 acts of criminal extortion
being an indictable offense under State Law and a predicate
act of "racketeering activity" in violation of 18 U.S.C.
1961-1964 et. Seq..

27.  At all times relevant the Catuucis and ASI had no License to operate a parking lot and, or did not file instruments with the applicable New York State and New York City authorities identifying the existence of a public parking business being conducted at the Red Hook Brooklyn Port..

28.  At all times relevant the Catuccis and ASI paid no tax to the US Internal Revenue Service, the State of New York, and the City of New York as to the "cash" monies herein referred to.

29.  At all times relevant the Catuccis and ASI paid no "parking tax" to the City of New York, the "parking tax" being a tax assessed by the City of New York upon  revenues arising from the business of offering "parking" to the public in the City of New York and collecting such revenues, thee tax being due to the City of New York.

30. Upon information and belief, The Catuccis (the Enterprise) directly or indirectly, and ASI were the ultimate recipients of the "cash" monies with intent to defraud and avoid payment of tax did not claim the "cash" monies as "income" or pay "tax" with respect to the "cash" monies received  from the scheme.

31. Upon information and belief, the Catucci's individual tax returns with intent to defraud and as part of the tax evasion scheme contained material misrepresentations of fact as to income and, very specifically,  did not claim, list, aggregate as part of the "income" claimed, or otherwise the "cash" monies received as income in the larceny by extortion and tax fraud scheme herein set forth and U.S. Federal, New York State, and New York City tax returns were upon information and belief transmitted by wire or the U.S. mail and filed by each, respectively thereby

9

32.. Upon information and belief, the ASI tax returns with intent to defraud and as part of the tax evasion scheme contained material misrepresentations of fact as to income and, very specifically,  did not claim, list, aggregate as part of the "income" claimed, or otherwise the "cash" monies received as income in the larceny by extortion and tax fraud scheme herein set forth and U.S. Federal, New York State, and New York City tax returns were upon information and belief transmitted by wire or the U.S. mail and filed by each, respectively thereby (the Catuccis individual and the ASI corporate tax returns are collectively referred to as the "Tax Returns").

33. Upon information and belief, The Tax Returns of the Catuccis and ASI, each, respectively, for the year- end for the years 2000 through 2011  were upon information and belief filed "electronically"  by "wire"  in violation of 18 U.S.C. 1343, the Catuccis and ASI having devised or intending to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses and representations, or promises, transmitted or caused to be transmitted by means of wire in interstate commerce, writings, to wit, the Tax Returns for the purpose of  executing such scheme or artifice, and, or the Tax Returns for were "filed" by means of use of the United States Mail or private carrier using means of interstate commerce in violation of 18 U.S.C. 1341, to wit, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of  false or fraudulent pretenses and representations for the purpose of executing such scheme or artifice or attempting so to do, placed in a post office or authorized depository for mail the Tax Returns to be sent or delivered by the Postal Service, or delivered by any private or commercial interstate carrier.

34. The wire fraud and, or mail fraud crimes in the filing of federal, state, and city Tax Returns were effected and done by the Catuccis (the Enterprise) and ASI as part of the tax evasion element of the extortion and tax avoidance scheme (the "Trucking Extortion and Tax Fraud Scheme") with intent to unlawfully take, extort, and defraud the Truckers of monies to enrich the individuals committing the larceny, extortion, and fraud and to avoid and evade payment of taxes.

35. The Catuccis  (the Enterprise), each, respectively, committed further illegal acts, and used ASI as an instrumentality, at least three (3) times annually from 2001 through 2012 aggregating to a total of thirty-three (33) acts of either wire fraud or mail fraud by having devised a scheme and artifice to defraud they caused writings, to wit, criminally fraudulent and incomplete tax returns omitting the "cash" income (and any New York City "parking" tax) from the Trucking Extortion and Tax Evasion Scheme as to U.S. Federal, New York State, and New York City tax returns actually filed by use of either wire and, or the United States Mail, thereby committing from 2001 through 2012, three (3) times (one (1) time for each tax return e.g. federal, state, and City), annually, wire fraud and, or mail fraud in violation of 18 U.S.C. 1341, and, or 18 U.S.C. 1343 thereby committing wire fraud, or mail fraud in violation of 18 U.S.C.1341 or 18 U.S.C. 1343, and tax evasion, at least thirty-three (33) times from 2000 through 2012, each act being a predicate act of "racketeering activity" in violation of 18 U.S.C. 1961-1964 et. Seq..

## 2005 thru 2008
### "Cocoa" Inventory Theft At The Red Hook Pier

36. Upon information and belief, from in or about 2005 thru 2007 to 2008, in a series of acts in an ongoing theft (by

"skimming" inventory over a period of years, the Catucci's (the Enterprise) in combination with Matt Yates the "soldier" and "right arm" of Sal Catucci, ASI, AWI the entity under their control engaged in the business of providing public warhousing services located at the Red Hook Brooklyn Pier, acting in concert with John Hall, the supervisor of warehousing at the Brooklyn Red Hook Pier at the time (who was closely associated with Matt Yates) and the warehouse supervisor responsible for the inventory located thereat, and the loading of containers and trucks, together with an individual named "J.P.", a "trucker", and Dean Malone (the "broker" for resale), with intent to deprive the rightful owner upon information and belief "Blommer Chocolate" (the "Owner") of money or property and goods which were part of an interstate or foreign shipment stored at the Brooklyn Red Hook Pier under the control of the Catuccis and the Enterprise, to wit, up to approximately seven (7) million dollars of "cocoa" used in manufacture of chocolate products (the "Cocoa") and being warehoused at AWI at the Red Hook Brooklyn Pier under the control of the Catuccis, did,and caused the following:

    (a) From 2005 thru 2008 took whole bags and, or "opened" bags of the cocoa inventory and "skimmed" a percentage of "weight" from the "bags"and later attributed the "weight loss" to "natural shrinkage";

    (b) moved, or stated inventory was "moved" from building to building at the Port to confuse "audit" and avoid discovery missing "bags" and "weight loss" due to movement out of the warehouse of whole bags of cocoa inventory and "skimming" of a percentage of weight from whole bags, such "movements" of inventory being unjustifiable as storage was charged and being paid and there being no reason to move the cococa inventory in storage;

12

(c ) at such time, and date, as a "barge" sunk in the river claimed falsely that the barge had been loaded with a "cocoa" inventory;

(d) denied falsely any knowledge whatsoever of the loss of inventory in the possession, custody, and control of AWI and under the control of the Catuccis;

(e) As to the foregoing set forth in subparagraphs (b) thru (d) falsely affirmed the same to facilitate an insurance claim by the owner of the "cocoa" further concealing the tru facts.

37. Upon information and belief, the Catuccis (the Enterprise") did take possession of the Cocoa, divert it, using Matt Yates and John Hall caused it to be loaded out of storage at American Warehousing of New York, Inc. where it was warehoused in the name of the Owner, loaded the Cocoa into containers under "Scat Code AXPO" (with the assistance of a warehouseman named "John Hall" a New Jersey resident who loaded the trucks, and or containers) , falsified the paperworks regarding the true contents of the shipments and, or containers and shipped, using means of interstate commerce and carriers, including without limitation interstate truckers and transatlantic vessels (ships), the Cocoa out of American Warehousing of New York, Inc. at the Brooklyn Red Hook Pier to destinations in Germany and Europe where the Catuccis (the Enterprise) via a business entity under their control resold for money for their personal and the Enterprise's financial benefit.

38. Upon information and belief, the Cocoa was sold to end users arranged by Dean Malone, formerly a goods "broker" and currently operating a business out of Brooklyn, New York known as "Malone Pest Control.

39. Upon information and belief, the Owner, upon information and belief, was fully compensated by reason of "theft" of the goods, to wit, the Cocoa, by insurance.

40. Upon information and belief, the Catuccis (the Enterprise) acting in concert with others, with intent to steal and deprive the Owner of the Cocoa of property with a value in excess of $50,000, and in excess of $1,000,000 did steal in excess of $1,000,000 and up to approximately $7,000,000 in value of goods, to wit, the Cocoa from Blommer Chocolate or the true Owner by the means heretofore described herein in violation of New York Penal Code sections 155.40 Grand Larceny in the Second Degree a C Felony and indictable offense under the laws of the State of New York, and section 155.42 Grand Larceny in the First Degree a B Felony and indictable offense under the laws of the State of New York.

41. upon information and belief, by the means heretofore set forth, the Catuccis (the Enterprise) acting in concert with others, violated of 18 U.S.C. 659, by having stolen , or unlawfully , carried away, or concealed, or by fraud or deception obtains from storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property.

**2011 Thu 2013**

**Scheme To Defraud Creditors**

   42. Upon information and belief, in or about September, 2011 the Catuccis and Matt Yates (the Enterprise ) again using ASI as instrumentality, and, with intent to defraud creditors of ASI, in combination with and using Weiss and Hiller, P.C. and Michael Hiller, Esq. the latter who is the "architect" of the Scheme o defraud and who actively participated in its execution, agreed to, and engaged, a new, distinct and discrete criminal episode to defraud the general unsecured creditors of ASI.

   43. Upon information and belief, the Catuccis (the Enterprise) using ASI as an instrumentality engaged and agreed to a settlement with Port Authority in connection with its "exit" from the Red Hook Brooklyn Port in proceedings entitled American Stevedoring, Inc. v. The Port Authority of New York an New Jersey before the Federal Maritime Commission, Washington DC Docket No. 10-05 where ASI settled its claims against the Port Auhority of New York and New Jersey ("the Port Authority") pursuant to a written agreement (the action is hereinafter referred to as the  "ASI Port Authority Action" and the settlement agreement as the "Port Authority Settlement" a portion of which is attached hereto as Exhibit 1, hereby incorporated herein as if more fully set forth at length and provides:

"5. "Establishment of Escrow Accounts with Hiller & Weiss

(a) An Escrow or Attorney Trust Account shall be established for the payment of creditors of ASI set forth on Exhibits "C"˘ D and :E attached hereto. Disbursements from said escrows shall require (1) an accountant's certificate and a certification of an officer (either the President or Chief Financial Officer) of ASI with respect to the obligations set forth on Exhibit C, D and E, to the effect that the obligations (as evidenced by copies of the actual invoices) are due and owing by ASI, are legitimate expenses related to ASPs business, that the bills are for goods or services which have been received by ASI and the bills are for business expenses under GAAP, (2) proof of payment in the form of a wire transfer confirmation or check copy, (3) a satisfaction of payment letter :from the creditor and (4) a certificate from the escrow agent or attorney that the disbursement has been made in accordance with these requirements. **As the obligations set forth on Exhibits C, D and E are satisfied, any funds saved in the satisfaction of those obligations set forth in Exhibits C, D and E may be released to ASI on a rolling basis
.** In addition,

i. All payments to persons or entities set forth on Exhibit C (which represents payments necessary to keep the terminal facilities operating) are first in order of payment priority and
must be made at closing;
ii. All payments to persons or entities set forth on Exhibit D (any person or corporate entity that is not related to, or not employed by ASI, or any other corporate entity which does not
share principles with ASI), are second in order of payment priority and must be made within 180 days of August 15, 2011 or sooner; and
iii All payments to persons or entities set forth on Exhibit E (anyone person or corporate entity that is related to, or is employed by ASI, or any other corporate entity which shares principles with ASI), are third in order of payment priority and must be made within 210
days of August 15, 2011 or sooner.

**(b) Any :funds remaining in the Escrows or Attorney Trust Accounts established pursuant to 5 {a), 5(b) and 5 (c) above, after satisfaction of the requirements set forth in paragraphs 5 (a), 5 (b) and 5 (c), shall be disbursed to ASI in consideration of the terms of the Settlement Agreement**

(c) Should any creditor of ASI make a claim against the Port Authority for payment of an ASI debt or in anyway challenge the provisions of Paragraph 5 Sabato Catucci shall be responsible in his

individual capacity, to defend and fully and completely indemnify the
Port Authority in said action.

44. Upon information and belief at the time of the making
Of the Port Authority Settlement there was a "ceiling" or
maximum the  Port Authority was will to pay the settle with ASI
and it desired, inter alia, that the creditors od ASI be paid
the sums owed them "in full" 100%.

45. Upon information and belief, pursuant to the terms of
the Settlement Agreement the Port Authority agreed to and did
allocate:

(1) a sum to be paid to ASI, and

(2) pay over Weiss & Hiller PC, as escrow agent
monies to pay ASI creditors, the Port Authority Settlement
"reserved" monies, for the ASI creditors to pay 100% of the debt
owed creditors of ASI as such debt was disclosed by ASI to the
Port Authority., (hereinafter the "Port Authority Settlement"
and the monies set aside in escrow with Weiss & Hiller PC to pay
ASI and, or "reserved" to pay ASI's creditors is referred to as
the " Settlement Fund").

46. As part of a plan and scheme and with intent to defraud
10 or more of the ASI creditors by device and manipulation of
the Settlement Agreement and Settlement Fund, from the outset in
the or about September 2011, in the drafting of the agreement,
and in the attachment of the creditor lists, and as to further
events in administration of the escrow and Settlement Fund,
Weiss & Hiller PC, Michael Hiller, Esq., ASI, the Catuccis and
Matt Yates agreed to a Plan to defraud the creditors of ASI of
as great a material percentage of the Settlement Fund and
particularly funds "reserved" to pay 100% of the ASI creditor
claims and redirect the funds to ASI, the Catuccis, and Weiss &
Hiller, PC. by causing acts, event, and occurrences in the

17

making of the agreement, and immediate closure of the Port
Authority Action, and to date, as follows:

(1) By intentionally drafting into the Settlement
Agreement In paragraph 5, a provision where Weiss & Hiller PC the
attorneys for ASI would assume responsibility and fiduciary duty as
escrow agent for the ASI creditors for the monies "reserved" for 100%
payoff to  ASI creditors in order that Weiss & Hiller, PC., and
Michael Hiller, Esq. whom were the "architect" of the fraudulent plan
and scheme would be in position to actually execute the scheme to
avoid the payment of that same ASI creditor debt;

(2)  By intentionally drafting into the Settlement
Agreement in paragraph 5, the term term

> **As the obligations set forth on Exhibits C,**
> **D and E are satisfied, any funds saved in the**
> **satisfaction of those obligations set forth in**
> **Exhibits C, D and E may be released to ASI on a**
> **rolling basis,"**

which provision ASI, the Catuccis, Weiss & Hiller PC, and
Michael Hiller intended, from the outset in September, 2011, at the
time the Settlement Agreement was made was specifically intended to be
used, subsequently, as part of the scheme, device, and manipulation to
defraud the ASI creditors as the "mechanism" to avoid payment to ASI
creditors, or materially reduce the percentage of the 100% payment due
the ASI creditors under the instrument, and, in turn, "capture" the
monies for ASI, the Catuccis, and Weiss & Hiller for legal fees (the
"Mechanism").

(3) By ASI, acting in concert with the Catuccis and Weiss
& Hiller, PC refusing or failing to accurately "list" creditors
it knew or should have known had claims against ASI, including
without limitation, Michael Farino and the Union Pension Fund

18

defendants in the within action  as there was a ceiling to the
entire settlement sum the Port Authority was willing to payover
by failing to list creditors ASI was able to directly capture
more monies.

(4) By Weiss & Hiller PC, Michael Hiller, Esq., ASI, the
Catuccis and Matt Yates acting in concert, immediately after the
making of the Settlement Agreement in or near September 2011
with intent to defraud and as part of a plan or scheme to defaud
the creditors of ASI immediately "on application", or "on
consent" applying to the Federal Maritime Commission for an
Order "sealing" the ASI Port Authority Settlement and preventing
anyone from discussing the terms of the settlement or disclosing
its terms, with the specific intent and as part of the scheme to
defraud to prevent the ASI creditors from finding out and
discovering that the Port Authority had created a fund to pay
the ASI creditors "in full", one hundred 100% per cent of the
monies owed them each respectively and to actually "conceal" the
creditor fund from the ASI creditors. The specific and intended
purpose of "sealing" the Port Authority Settlement was to
facilitate and further the plan and scheme to defraud the ASI
creditors, to "conceal" the ASI creditors that the Port
Authority had created the Settlement Fund, that Weiss & Hiller
was escrow agent for disbursement for the creditors, and that
funds to pay 100% of ASI creditor claims were being so held
awaiting disbursement (the "sealing and related 'gag' order(s)"
or agreements are collectively referred to as the "Seal Order"),
all with the specific intent to "secrete" from the ASI creditors
information that the Port Authority had made funds available to
pay-off 100% of the ASI creditor claims and to further and
facilitate the Plan and scheme to defraud the ASI creditors;

(5)  By Weiss & Hiller PC, Michael Hiller, Esq. on behalf of  Weiss & Hiller PC,  in their capacity as fiduciary for payment to the ASI creditors and escrow agent of the ASI creditors, and in all their collective capacities, refusing or failing at any relevant point in time to make application and obtain such orders from the Federal Maritime Commission in the ASI Port Authority Action which would either "unseal" the settlement and Seal Order, or make any provision whatsoever for appropriate and adequate disclosures to the ASI creditors

(6) By Weiss & Hiller, PC, Michael Hiller, Esq., ASI, the Catuccis, and Matt Yates all acting in concert failing to disburse the monies 100% immediately to creditors, or within the time and manner set forth in the Settlement Agreement in order that they would, and did, without disclosing the existence of the creditor fund sufficient to pay off one hundred (100%) percent, contact creditors to attempt avoid payment of 100% of the ASI creditor debt (the conspiracy was complete on the making of the Port Authority Settlement Agreement, the first overt act in furtherance thereof was the obtaining of the Seal Order, further overt acts in furtherance of the conspiracy were the contacting of creditors to and actually obtain "reduced percentage" payoffs, and transfer in violation of the strict priority scheme required under the instrument);

(7) By Weiss & Hiller, PC, Michael Hiller, Esq., ASI, acting in concert with the Catuccis, between 2011 to date, actively contacting ASI Creditors and refusing to state facts indicating (i)_funds had been "reserved" to pay the creditors claim, and at the rate of 100 per cent of the amount owed (using the Seal Order obtained to further and effectuate the fraudulent plan and scheme).

(8) By Weiss and Hiller PC, and Michael Hiller, Esq.,acting in concert with ASI and the Catuccis violating the strict priority of payment schedule set forth in the Settlement Agreement.

(9) By Weiss & Hiller PC, Michael Hiller, Esq., acting in concert with the Catuccis, and ASI, without disclosure of the reservation of funds to ASI creditors per the Settlement Agreement, and upon therefore false or fraudulent pretenses, contacting and  obtaining "reduced percentage" payoffs of ASI debt from ASI creditors without full disclosure, and, in other cases violated of the priority scheme for payment of creditors required by the Settlement Agreement, then , in turn, have redirected the monies reserved to pay the ASI creditors "in full" directly, or indirectly to ASI, or the Catuccis, and, or Catucci related businesses including without limitation American Maritime Services of New York, Inc., or paid third party debt for the benefit of the Catuccis and, or to release the Catucci personal liability upon third party debt, including without limitation, Union relation debt owed American Maritime Services of New York, Inc. in a sum over $1,000,000 as to which the Catuccis were personally liable.

(11) By Weiss & Hiller demanding and causing payment to Wiess & Hiller PC of monies, as legal fees to Weiss & Hiller, PC from at least some of the ASI creditors for services Weiss & Hiller performed which were in furtherance of the fraud and obtaining from the creditor the "reduced percentage"  payoff for ASI and defrauding the creditor, and therefore, indirectly taking and "redirecting" from the creditors portion of the Settlement Fund monies "reserved" for the ASI creditor.

(12) By Weiss & Hiller PC and Michael Hiller, Esq., by the the acts events and occurrences related to the Settlement Agreement and in its administration referred to in the within

complaint breaching the fiduciary duty Weiss & Hiller PC owed the ASI creditors, all as part of the plan and scheme to defraud the ASI creditors.

(13) It is, and was, from the outset part of the plan and scheme to fabricate a claim under 18 USC 1961 -1964 Et. Seq. the "RICO" statute and file the claim in a US Federal Court against the union pensions fund defendants herein or order to avoid the payment of debt owed them. In the Port Authority Action ASI claimed the proximate cause of its injuries to be caused by the Port Authority, in the wrongfully filed RICO action, it now "falsely" in order to attempt to avoid payment of debt has claimed the proximate cause of its injuries to be the defendants in the within proceedings.


47. The Settlement Agreement established an escrow or attorney trust account for payment of creditors of ASI and for the benefit of the ASI creditors.

48. Weiss & Hiller P.C. is the escrow agent regarding the settlement proceeds and Settlement Fund of the Port Authority Settlement.

49. Michael Hiller, Esq. has drafted and or participated in the drafting of the Settlement Agreement in or near September, 2011 and from 2011 to date has administered for Weiss & Hiller PC, or worked on administration of the Port Authority Settlement fund.

50. Upon information and belief, Lauren Rudick, Esq., worked on administration of the Port Authority Settlement fund.

51. Upon information and belief, disbursements from the Settlement fund were approved by ASI by Sal Catucci.

52. Upon information and belief, disbursements from the Settlement fund were approved by ASI by Keith Catucci .

53. Disbursements from the Settlement Fund were approved by Weiss & Hiller PC.

54. Disbursements from the Settlement Fund were approved b Weiss & Hiller PC by Michael Hiller, Esq.

55. Weiss & Hiller PC, and Michael Hiller, Esq. for Weiss & Hiller PC, represented ASI as its attorneys in the Port Authority Action.

56. Weiss & Hiller PC, Michael Hiller, Esq., and ASI all participated in the drafting and or providing the documents attachments to the Settlement Agreement, including without limitation the creditor lists.

57. Creditors of ASI were intended beneficiaries of the Settlement Agreement

58. All classes of creditors of ASI were intended beneficiaries of the Settlement agreement and all creditors were to be listed by ASI as part of the terms of the settlement Agreement.

59. Upon information and belief, ASI and, or Weiss & Hiller PC represented to the Port Authority that all ASI creditors had been listed in the Settlement Agreement.

60. Pursuant to the Settlement Agreement Weiss & Hiller PC (Weiss & Hiller PC and "Hiller & Weiss" are here Weiss & Hiller PC) agreed to be the fiduciary for the ASI creditors and escrow agent for payment to ASI creditors by operating of law by accepting delivery by the Port Authority to Weiss & Hiller PC of funds to be placed in an escrow account designated by the Settlement Agreement as "An Escrow or Attorney Trust Account shall be established for payment of creditors of ASI…)

61. Pursuant to operation of law, upon agreeing to be and assuming the responsibility under the Settlement Agreement as fiduciary and escrow agent for the payment of creditors of ASI, Weiss & Hiller, PC., and Michael Hiller, Esq. to the extent he

acted for Weiss & Hiller PC, had a duties and obligations owed specifically to the creditors of ASI, including without limitation, to act with respect to the obligation owed the ASI creditors and in administration of the ASI creditors escrow within the standard required by law of a fiduciary attorney.

62. Weiss & Hiller PC by Michael Hiller, Esq. did not with respect to the obligations owed the ASI creditors for all the reasons and acts set forth in the within complaint, properly discharge the fiduciary duty owed the ASI creditors, did not act honesty, failed to make full disclosure, and in fact actually devised, and was the "architect" of the means to effectuate and actively participated in the Plan or Scheme to defraud the ASI creditors and, most importantly, cannot legally be deemed to have been relieved of its obligation to make "full disclosure" to the ASI creditors to whom were owed a fiduciary duty where Hiller & Weiss (as attorneys for ASI whose interests were directly in conflict with the interests of the ASI Creditors) "applied for" orders, or "consented to" entry of the Seal Order in the ASI Port Authority Action, where it should have done exactly the opposite, and obtained authority to disclose once it became fiduciary for approximately 150 unsecured creditors of ASI. Weiss & Hiller cannot relieve itself of the fiduciary duty owed the ASI creditors upon an order it caused to be entered for the benefit of its client ASI, particularly where the conflict of interest prohibited the dual representation.

63. Even if Weiss & Hiller had no duty the ASI creditors, ASI, the Catuccis, and Weiss & Hiller PC are each liable by virtue of the fact that the acts, events and occurrences in the making of the Port Authority Settlement detailed herein and administration of the Port Authority Settlement were, all, acts, events and occurrences part of a plan and scheme to defraud the ASI creditors of monies by all the means heretofore set forth

herein , including without limitation, failing to list
creditors, seeking and obtaining "reduced percentage" payoffs
from ASI creditors, and causing unauthorized transfers payments
from the settlement fund,  with intent to defraud creditors of
ASI as part of the fraudulent scheme, device, and manipulation
in the execution of the settlement agreement and in the plan in
and for "administration" of the settlement fund which
"administration" plan and scheme was intended from execution of
the settlement agreement to be administered in  a manner
intended to avoid payment of debt owed 10 or creditors of ASI
defraud creditors of ASI and, or had the effect as administered
by Weiss & Hiller, P.C. and Michael Hiller, Esq., to operate as
a fraud on ten (10) or more creditors of ASI as detailed
herein..

    64. Upon information and belief, the Catuccis, and, or ASI,
made material representations of fact to the Port Authority to
obtain the Port Authority Settlement, including without
limitation, the following:

    (1) that ASI had provided a complete and accurate list of
all the ASI creditors (the "Creditors") to the Port

    (2) proceeds of the Port Authority Settlement would be used
to pay Creditors

    65. The Creditors of ASI  were intended to be, third –party
beneficiaries of the Port Authority Settlement.

    66. The representations the Catuccis, and, or ASI, made to
the Port Authority were materially false representations of
fact.

    67. The failure of Weiss & Hiller, Michael Hiller, Esq.,
the Catuccis, Matt Yates, or any of them to make adequate
disclosures to the ASI creditors was material omission, device,
and manipulation which operated to defraud creditors of monies
due them.

68. There are over ten (10) creditors of ASI who either received "reduced perctenage" payoffs or have not received payment of monies from the Port Authority Settlement fund.

69. There are creditors of ASI or claims which were not "listed" as creditors of ASI to be paid from the Port Authority Settlement fund in the Port Authority Settlement agreement.

70. The Catuccis and Matt Yates (the Enterprise), ASI, Weiss & Hiller PC and Michael Hiller, Esq. , acting in concert as heretofore set forth herein with intent to defraud and as part of a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, so obtained property from one or more of such persons the ASI creditors; or engaged in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, did so obtain property with a value in excess of one thousand dollars from one or more such persons, upon false representations of fact, with intent to defraud .

71. Upon information and belief Weiss & Hiller PC has paid over from the Port Authority Settlement fund a sum of approximately or in excess of $500,000 to American Maritime Services of New York, Inc.

72. Upon information and belief Weiss & Hiller PC has paid over from the Port Authority Settlement fund a sum of approximately or in excess of $1,000,000 to a union related fund upon a debt owed by American Maritime Services of New York, Inc.

73. Upon information and belief Sal Catucci and, or Ronald Catucci, or entities in which their family members have an

interest or are beneficiaries were personally liable for the sum of approximately or in excess of $1,000,000 to a union related fund upon a debt owed by American Maritime Services of New York, Inc.

74. Upon information and belief, the Catuccis (the Enterprise) using ASI as instrumentality, has given by wire, to wit, telephone, or sent by electronic means and use of wire or the United States Mail, or private carrier engaged in interstate commerce, with intent and as part of a scheme to defraud, instructions to Weiss & Hiller PC regarding disbursement of the monies from the Port Authority Settlement to divert funds directly or indirectly for the benefit of the Catuccis or any of them personally, and, or entities which they own or control or which are instrumentalities of the Enterprise, or pay debt from the Port Authority Settlement fund owed by such entities, including without limitation, ASI, AMS, ACP, and others to attempt, or to actually pay sums directly, or indirectly from the monies reserved for the ASI creditors in the Port Authority Settlement for the benefit of the Catuccis or any among them and to avoid payment and not pay ASI Creditors in attempting and in furtherance of the fraud upon the Creditors.

75. ASI has not "listed" as Creditors and, or not paid from the proceeds of the Port Authority Settlement over ten (10) of its Creditors.

76. The Settlement proceeds from a "settlement" upon information and belief have been in part, or whole, or are being to date "diverted" by the Catuccis and Matt Yates (the Enerprise)and ASI, using Weiss and Hiller P.C. as instrumentality, with intent to defraud unsecured general creditors of ASI, in whole or in part from ASI to the Catuccis (the Enterprise) and, or businesses owned or controlled by the

Catuccis and, or third parties (The "Port Authority Settlement Fraud"), including without limitation, ASI, AMS, and ACP.

77. The Catuccis and the Enterprise with intent to defraud general creditors of ASI, with regards the Port Authority Settlement to date failed to "List" as Creditors and refused to pay large number (over ten (10)) of the Creditors, including without limitation, The NYSA-ILA Pension Fund, the NYSA-PPGU Pension Fund, and Michael Farino.

78. Michael Farino is a creditor of ASI and Sal Catucci individually and is owed the sum of $2,000,000

79. Michael Farino is a creditor of ASI and Sal Catucci by virtue of the following events and agreement: In and from 2008, American Stevedoring, Inc. ("ASI") was engaged in business at the Red Hook Brooklyn Port (the "Port") running the Port operation services, including without limitation, stevedoring, warehouse operations, loading and unloading vessels, and support services.

80. In 2008 Sal Catucci on behalf ASI and himself personally made an agreement with Michael Farino a principal of MTC Transportation, and, later, on multiple occasions in 2009 and the beginning of 2010 confirmed and reaffirmed the same agreement, to wit, that ASI, or he, Sal Catucci personally, would pay Michael Farino Two Million Dollars if Michael Farino could "save the Port" by arranging to keep the CMA/CGM vessel at the Port on a long-term basis and, or bring in a Company named "Phoenix" to the Port on a long-term basis either of the two events would produce business revenues needed to keep the Port operating.

81. In or about 2008, or thereafter, the Port Authority had withdrawn funding from ASI at the Red Hook Brooklyn Port and the CMA/CGM vessel was a source to increase much needed revenues;

28

82. From 2008 ASI required increased revenues to keep ASI and the Port "operating" and "open" .

83. In 2009, through mid- 2010  ASI determined that if Phoenix, or its principals could be influenced to enter the Port on a long terms basis, a make a substantial investment at the Port, basically, the Port Authority would not simply "close-down" the Port, and, by 2010 ASI determined such events would ultimately assist it to "settle" the ASI Port Authority action on terms favorable to ASI.

84. Phoenix was, and is MTC Transportation's account, Phoenix was, and is, engaged in beverage distribution and is the New York Distributor for Heineken Beer.

85. From at least 2008, in order to keep the Port "open" on a long term basis, and, in 2009, and early 2010 to generate revenues at the Port for ASI in its business, to keep the Port "open",  and by 2010 to further a prospective settlement by ASI of the ASI Port Authority Action it was it was discussed and agreed, in a series of agreements, between ASI, and Sal Catucci and Michael Farino that it had become necessary first, in 2008, for ASI and Sal Catucci to request Michael Farino to use his existing on-going business relationships  to keep  the CMA/CGM vessel business in place or bring Phoenix to the Port on a long term basis to generate revenues in for ASI to  continue in business at the Port as at a point in time the Port Authority withdrew funding to ASI and it was agreed in 2008, again in 2009, and again, and reaffirmed in the beginning of 2010, that if Michael Farino could achieve either of these events Sal Catucci and ASI would pay him 2 million dollars to  Michael Farino.

86. In 2009-2010  it was further discussed and agreed between Michael Farino and ASI, and Sal Catucci  that Michael Farino could influence Phoenix (or its principals) to come to

the Port on a long term basis which would materially assist ASI,
as it needed the revenue generated by phoenix to stay "open" the
Port Authority having withdrawn funding and, as the agreement
was reaffirmed and further affirmed in the beginning of 2010, it
was discussed that it would further assist ASI to settle the ASI
Port Authority Action as if Phoenix came in to the Port, with a
substantial investment, the Port Authority would not simply
"close" the Port, and the Port Authority would need to settle
the ASI Port Authority Action.

87. In 2008 ,Sal Catucci, made an offer to Michael Farino
and, it was  agreed in 2008, and confirmed on a number of
occasion and reaffirmed in 2009, and beginning of 2010 that if
Michael Farino could arrange through his on-going  business
relationships keep the CMA/CGM vessel at the Port on a long-term
basis and, or  bring in a Company named "Phoenix" to the Port on
a long-term basis,  that ASI or Sal Catucci, personally, would
pay  him  two (2) million dollars either outright, or,  from the
proceeds of a sale of the ASI business,  or by 2010 and 2011
from  the proceeds of a  Port Authority "settlement" of the Port
Authority Action which was discussed and which potential
occurrence was at a point in time envisioned by the parties and
made  part of the agreement.

88. By 2008-2009 it became generally known that ASI and
the Port which were subsidized by the Port Authority of New York
and New Jersey, the "funding" had been "withdrawn" and ASI was
losing money for years running the Port operation services.

89. As the result, without Port Authority funding the Red
Hook Brooklyn Port, the last operating New York Port, if losses
continued would have to be shut-down and closed.

90. The "upshot" of the inevitable "shut-down" of ASI, and
the "closing" of the Red Hook Brooklyn Port would be (or would
have been but for the events which actually occurred) the shut-

down of ASI, loss of countless jobs of all the Longshoremen
union members who worked for years at the port loading and
unloading vessels and providing related services, loss of the
"trucking" business, and closure of numerous other businesses
the business base of which arose from the port operations.

91. In 2008-2009, Michael Farino who is a principal of MTC
Transportation, Inc. which is engaged in business the trucking
industry arranged with "Phoenix" first to keep CMA/CGM vessel
coming to the Port with Phoenix business, and then by mid 2010,
or May 2010, Phoenix actually came to the Port on a long term
basis, with an up to approximately 15 million dollar investment,
and performance by Michael Farino of the agreement was complete.

92. The Port Authority of New York owner of the Red Hook
Brooklyn Port real estate desired the last operating New York
port remain "open".

93. The Longshoremen's union desired the port to remain
"open" and wanted to protect the jobs of the countless workers
whose livelihoods depended on the port and its continued
existence "open" and as an on-going business concern.

94. As the result of Phoenix (or its principals) actually
coming to the Port with a substantial investment and business
revenues to support the Port operating, as was anticipated in
2010 by  ASI, The Port Authority which owned the Port "offered"
ASI a  settlement in September 2011 to leave and "exit" the Red
Hook, Brooklyn, Port. This is the Port Authority Settlement
hereto referred to herein.

95.  As of this date, Michael Farino fully performed on
the agreement with ASI and Sal Catucci, the port itself remained
"open" as an on-going business concern, ASI received its
"settlement",  and the countless Longshoremen's union members
jobs "at stake" were "saved".

96. By Phoenix or its principals investing substantially at the Port by 2010 (and later in 2011 agreeing with the Port Authority to assume Stevedoring operations via "Red Hook Container Terminal, LLC" (Red Hook Container Terminal, LLC is referred to collectively with Phoenix only as Phoenix") such circumstance materially assisted the efforts by ASI in obtaining a money settlement from the Port Authority as Phoenix was ready to "come-in" to the Port by in or about September 2011, and, therefore, the Port Authority needed to complete a settlement with ASI in order that ASI "exist", which both ASI and the Port Authority achieved in the settlement of the ASI Port Authority Action in September 2011.

97. The Port Authority Settlement monies were, among other things, as heretofore indicated, upon information and belief, supposed to be used by ASI to pay off creditors, etc., but were not, rather the means heretofore set forth "pocketed" or "diverted" by Sal Catucci, Ronald Catucci,, and Keith Catucci (the Enterprise) and their instrumentalities ASI, AMS, ACP, and other entities under their control, including without limitation, by payment of debt owed by AMS ACP, or other Catucci related business from the settlement fund for which the Catuccis or any of them were personally liable, all assisted by Weiss & Hiller PC and Michael Hiller, Esq., who was the architect of the means and mechanism to divert the ASI creditors share of the Settlement Fund.

98. Over Ten (10) ASI creditors were subject to the "reduced Percentage" payoffs, or not paid,

99. Michael Farino was not "listed" as a Creditor in connection with the Port Authority Settlement, and has not been paid by ASI or Sal Catucci although the debt owed ASI of 2 million dollars to Michael Farino is justly due and owing .

32

100. The NYSA-ILA Pension Trust Fund (the "NI Fund") and the NYSA-PPGU Pension Fund (the "NP Fund") are the Longshoremen's pensions funds and were not "listed" as a Creditor in connection with the Port Authority Settlement, and have not been paid by ASI although there are sums over 1 million dollars justly due and owing by ASI to said funds.

101. From in or about 2011 to date, the Catuccis, the Enterprise, using ASI and others have with intent to defraud the unsecured creditors of ASI, directed, or "approved" by use of the United States mail or private carrier using interstate commerce by the sending letters by the United States Mail, or by private carrier using interstate commerce, electronic mail (e-mail), or fax, from or by and between the Catuccis, and,or ASI and Weiss & Hiller (in certain instances the "Escrow Agent") directing "payments" from the proceeds of the Port Authority Settlement be sent by the Escrow Agent the United States Mail or private carrier using interstate commerce "checks" from the Escrow Agents trust account to individuals or businesses entities, including without limitation, ASI, AMS, and ACP, and others, and the approximately $500,000 plus payment to AMS which was a "reduced percentage" payoff of an alleged approximately $800,000 debt (although inflated at ($1,200,000) as listed by ASI, as at least one union related fund owed over $1,000,000 which was a reduced percentage payoff of an approximately $1,500,000 debt and which monies were owed by AMS for which the Catuccis or related entities were personally liable.

102. ASI listed the AMS debt at $1,200,000 in the Port Authority Settlement; the actual debt was approximately $800,000; and the reduced percentage payoff was approximately 500,000; by Paragraph 5 of the Port Authority Settlement Agreement and the Mechanism, ASI, the Catuccis, Matt Yates, and Hiller & Weiss, PC "redirected" and "recaptured" the defference

33

between the listed sum of $1,200,000 and the reduced percentage payoff of $500,000 plus, or approximately $600,000 to ASI and the Enterprise.,In addition, Weiss & Hiller by its attorney fee demand redirected, indirectly, through AMS, $15,000 to the firm. The events were effected by use of wire in by use of checks, the United States mail by the sending of checks "payoff", telephone by Weiss & Hiller to AMS's attorneys in the making of the "reduced percentage" payoff, all as part of the fraudulent scheme to defraud ASI creditors.

103. Between September, 2011 and the current date, ASI, and,or the Catuccis (the Enterprise) directed or "approved," and paid-over monies, very specifically, with intent to defraud and as part of the plan and scheme to defraud Creditors and avoid payment to the over ten (10) Creditors from the Port Authority Settlement proceeds, and as part of a broad scheme to defraud the sum of approximately or over 500,000 to a business known as American Maritime Services of New York Inc. ("AMS")operating from New York which is owned or controlled by the Catuccis, and a sum of over one million ($1,000,000) to a union related fund or entity which debt was owed by American Maritime Services of New York, Inc. and for which the Catuccis or any of them had personal liability.

104. Between September, 2011 and the current date, ASI, and,or the Catuccis (the Enterprise) directed or "approved," and paid-over monies, very specifically, with intent to defraud and as part of the plan and scheme to defraud Creditors and avoid payment to the over ten (10) Creditors from the Port Authority Settlement proceeds, and as part of a broad scheme to defraud The aforesaid over $500,000 monies to AMS (the "AMS Payment") and $1,000,000 to a union fund on debt owed AMS to release personal liability on a debt not owed by ASI (the AMS Union Fund Payment"), and, or other substantial sums and monies to the

Catuccis directly, or indirectly to satisfy personal liability of the Catuccis on debt other than owed by ASI as was the case with the Union Fund Payment , or preferentially vis-a vis other creditors outside the terms of the Port Authority Settlement as was the case with both the AMS Payment and the AMS Union Fund Paymnt, or paid over from the Port Authority Settlement fund monies to other entities owned or controlled by them, or formerly owned and controlled by them and now in trust or otherwise disposed for Catucci family members including without limitation American Chasis Pool Systems, LLC ("ACP")thus, participating in, directly or indirectly re-investing monies in the Enterprise, having devised and intending to devise, implement, and effect the scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses and representations from the Port Authority, and as part of the scheme to defraud the Creditors, transmitted or caused to be transmitted "checks" by placing them, or causing same to be placed in a post office or authorized depository for mail or delivered by private carrier using interstate commerce for the purpose of executing such scheme or artifice in violation of 18 U.S.C. 1341,and or having devised or intending to devise any scheme or artifice to defraud the Port Authority and Creditors, or for obtaining money or property by means of false or fraudulent representations to the Port Authority, caused and transmitted funds electronically by means of wire in interstate commerce for the purpose of executing such scheme or artifice in violation of 18 U.S.C. 1343.

105. Upon information and belief, between 2011 to date, the Catuccis (the Enterprise), using ASI and others as instrumentalities, directed or indirectly "approved" payment from the Port Authority Settlement proceeds by the Escrow Agent hundreds of thousands of dollars sums ASI, and or Sal Catucci,

and, or Keith Catucci and other entities owned or controlled by them, or in owned in trust by Catucci family members, including without limitation, ASI, AMS and ACP, and or Weiss & Hiller PC, such monies resulting from the scheme, reduced percentage payoffs to ASI creditors, transfers outside the priority scheme of the Port Authority Settlement to entities related to the Catuccis, and improperly obtained legal fees by Weiss & Hiller PC .

106. Upon information and belief, between 2011 to date, ASI, the Catuccis, and Matt Yates (the Enterprise), using ASI as an instrumentality directed or "approved" payment from the Port Authority Settlement proceeds by the Escrow Agent sums of monies in millions of dollars to AMS and ACP (instrumentalities of the Enterprise), and or to certain preferred creditors of ASI, and in addition, having failed to "list"  or not making payment to or reduced percentage payoffs to more than ten (10) of the Creditors justly due and owed monies by ASI.

107. the Catuccis (the Enterprise), and ASI,  have caused, or the Escrow Agent, acting in concert with the Catuccis, with intent to defraud and a part of a scheme to Creditors of ASI, and a part of and in furtherance of the conspiracy, committed the overt acts in furtherance thereof, including but not limited to:

    A. drafted into the Settlement Agreement the terms

        (1) **As the obligations set forth on Exhibits C, D and E are satisfied, any funds saved in the satisfaction of those obligations set forth in Exhibits C, D and E may be released to ASI on a rolling basis,"**; and

        (2)  appointing Weiss & Hiller PC escrow agent for payment to the ASI creditors; and

B.    has failed to "list" creditors owed monies by ASI,

C. Obtained the Seal order sealing the Settlement Agreement before the Federal Maritime Commission to "conceal" the 100% payoff fund from ASI creditors

D. improperly disbursed the proceeds of the Port Authority Settlement

E. Disbursed to the Catuccis or related businesses including but not limited to, AMS, ACP, and, or other either

     (a)  Preferentially

     (b)  Without the terms of the Port Authority Settlement, or

     (c)  Diverted Port Authority Settlement proceeds, or

     (d)   refused or failed to pay Creditors of ASI justly and lawfully owed monies.

     (e)  D. From the original date payment was per the original terms of the agreements with creditors ASI failed to make payment and unreasonably delayed payment to creditors as part of the plan and scheme to defraud general creditors of ASI

108. The Catuccis, Matt Yates, the Enterprise, and Weiss & Hiller PC acting in concert as part of a plan and scheme to defraud unsecured Creditors of ASI have used united states mail in violation of 18 U.S.C. 1941  or wire in violation of 18 U.S.C. 1943 in execution of the fraudulent scheme, and in overt acts in execution  furtherance of the scheme, in "diverting" and "redirecting" proceeds of the Port Authority Settlement monies reserved for the ASI creditor to the Enterprise, the Catuccis individually, ASI, AMS, ACP (instrumentalities of the Enterprise) , and  third party payees, by use of the united

States Mail or private carrier using interstate commerce in violation of 18 U.S.C. 1341, by use of "wire" in violation of 18 U.S.C. 1343 which predicate acts include, without limitation,

A. In September, 2011, in transmitting the settlement Agreement with the terms herein referred to the Port Authority by use of E-mail, or wire in violation of 18 U.S.C. 1943;

B. In September, 2011, obtained the Seal Order by use filing applications or papers, or cause the Seal Order itself to be entered and filed with the Federal Maritime Commission by electronic means in violation of 13 U.S.C. 1943;

C. From September, 2011 to date by telephone, using "wire" within the meaning of 13 U.S.C., 1943 have contacted numerous of the approximately 150 ASI creditors to obtain, and in cetain instance have obtained, reduced percentage payoffs in violation of 18 U.S.C. 1943;

D. From September, 2011 to date, using the United States Mail in violation of 18 U.S.C. 1941 by Weiss & Hiller PC having sent in the US mail checks to ASI representing reduced percentage payoffs obtained in the execution of the fraudulent scheme;

E. From September 2011 to date, by The Catuccis, Matt Yates, ASI, or Michael Hiller, Esq. sending "disbursement instructions" and "approvals," by "wire transferring" and, or by paying by "check" using "wire" and means of "interstate commerce" to effectuate transfer of monies in furtherance of the scheme in violation of 18 U.S.C. 1943, including without limitation,

(i) the approximately approximately $500,000 plus preferential payment to AMS,

(ii) the over $1,000,000 AMS Union Payment,

(iii) the approximately $600,000 monies "redirected back" to ASI via the AMS reduced percentage payoff;

(iv) the approximately $15,000 attorneys fees redirected to Wiess & Hiller related to the AMS reduced percentage payoff

(v) by payments to ACP

(vi) by other payments unknown at this time but which will be discovered "transferred," "diverted," and "redirected" to ASI, or Catuccis individually, and to third party payees.


109. By the foregoing use of mail in violation of 18 U.S.C. 1941 and wire in violation of 18 U.S.C. 1943 the Catuccis, Matt Yates, and ASI, and obtaining monies through a pattern of racketeering activity, and redirecting the proceeds of the fraud to  either the Catuccis, ASI,  AMS and ACP the latter being instrumentalities of the Enterprise, the Enterprise has redirected and reinvested the proceeds of the racketeering activity in violation 18 U.S.C. 1961-1964 back into the Enterprise.

110.    The Port Authority Diversion Scheme is in violation of New York Penal Law Section 190.50 set fort below, and the offense is an indictable offense under State Law and a predicate act of "racketeering activity" under 18 U.S.C. 1961-1964 et. Seq.

§ 190.65 Scheme to defraud in the first degree.
  1.  A person is guilty of a scheme to defraud in the first degree when he or she: (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons; or (b) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person  or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons;

  2.  In any prosecution under this section, it shall be necessary to prove the identity of at least one person from  whom  the  defendant  so obtained  property,  but it shall not be necessary to prove the identity

of any other intended victim, provided that in any prosecution under
paragraph (c) of subdivision one of this section, it shall be necessary
to prove the identity of at least one such vulnerable elderly person as
defined in subdivision three of section 260.30 of this chapter.
  Scheme to defraud in the first degree is a class E felony.


111.   The 2000-2011 Trucking Extortion and Tax Evasion Scheme
and the 2011-2012 Port Authority Settlement Proceeds Diversion
Scheme are two (2) distinct and discrete fraudulent and criminal
"episodes" engaged by the Catuccis (the Enterprise), who agreed
to engage in criminal activity together and participated in the
Enterprise and effected the schemes by criminal acts by grand
larceny by extortion in violation of New York Penal Law 155.05,
155.30, by effecting a scheme to defraud in violation of New York
Penal law section 190.65 all indictable offenses under State Law
predicate acts of "racketeering activity" in violation of 18
U.S.C. 1961-1864 t. seq. , By mail fraud in violation of 18 U.S.C.
1341, and wire fraud in violation of 18 U.S.C. 1343 predicate acts
under 18 U.S.C. 1961-1964 Et. Seq., which predicate acts by reason
of being engaged and effected as part of at least two (2) distinct
and discrete criminal episodes between the year 2000 and 2012 and
consisting of 12,900 alleged crimes of extortion (2000 through
2011), 33 alleged crimes of mail and or wire fraud (tax evasion
scheme-2001 through 2012), and, at least one (1) very specifically
alleged mail, or wire fraud as to the Port Authority Settlement
scheme (2011 to date) (many more fraudulent money transfers have
undoubtedly been effected as to the current Port Authority
Settlement scheme), form a "pattern of racketeering activity"
within the meaning and in violation of 18 U.S.C. 1961-1964 et.
Seq. (the "RICO Statute").
  112.  As to each of the criminal episodes there exists vertical
continuity as the association in fact Enterprise

40

alleged was and is at all times relevant controlled by Sal
Catucci, Matt Yates, Ronald Catucci, and ASI, and the individuals
committed, or caused all the criminal acts alleged personally, or
directed employees of ASI to commit the crimes alleged.

113.    As to each of the criminal episodes there exists
horizontal continuity in that as to each criminal episode alleged
the individuals Sal Catucci, Matt Yates, Ronald Catucci, Keith
Caticci, were the individuals and entities whom and which formed
the illegal combination and acted in concert and participated in
the Enterprise and committed or caused to be committed with intent
to defraud and obtain monies by illegal means, the crimes alleged,
all in furtherance of the objective of the Enterprise which was,
and is, to obtain money through fraud and criminal acts and to
advance the Enterprise and for personal monetary gain, and monies
obtained through the illegal acts were at all times used
personally by the Catuccis, and, or invested, directly or
indirectly, in the Enterprise and its instrumentalities ASI, AMS,
AMSNJ, ACP, and other entities, at the expense of the victims of
the crimes alleged including without limitation, Michael Farino,
the Truckers, Port Authority, the ASI Creditors, the City of New
York,  the State of New York, and the United States Internal
Revenue Service

114.  Since in or about the year 2000, Sal Catucci, Matt Yates,
Keith Catucci, Ronald Catucci ,together with other persons and
organizations employed by and/or  associated with them and using
ASI, AMS, and ACP as instrumentalities, knowingly and intentionally
combined, conspired, confederated, and agreed to commit offenses  against
Michael Farino the Truckers, Port Authority, the ASI Creditors, the City
of New York, the State of New York, and the United States Internal
Revenue Service in violation of   18   U.S.C.   §1962(c)   (the   "RICO
Conspiracy"),   that   is,   to   conduct   and participate,   directly   and
indirectly, the affairs of the association in fact enterprise through a

41

pattern of racketeering activity, as that term is defined in 18 U.S.C. §1961(1) and (5).

115. The Catuccis, Matt Yates, each, respectively, and the instrumentalities ASI, AMS, and ACP which entities are accessories, with intent to obtain money by commission of illegal acts, and with intent to defraud through the commission of two or more acts constituting a *'pattern'* of racketeering activity participated in, and, *or* directly or indirectly invested in, or maintained an interest in the E*nterprise* and the monies generated by the illegal activities have been reinvested in the Enterprise and in each of the business entities including without limitation, ASI, AMS, AMSNJ, and ACP.

116 .The aforesaid pattern of racketeering activity consists of *inter alia,* the following predicate acts:

    (i)  mail fraud in violation of 18 U.S.C. 1341,

    (ii) wire fraud in violation of 18 U.S.C. 1343,

    (iii) Grand Larceny and Larceny by Extortion under New York Penal Law Section 155.05 and 155.30 indictable offenses under State Law in violation 18 U.S.C. 1961-1964 et. Seq.,

    (iv) theft of interstate shipment in violation of 18 U.S.C. 659,

    (v)  commission of a felony Scheme to defraud under New York Penal Law section 190.65 an indictable offense under State Law in violation of 18 U.S.C 1961-1964 et. Seq.,

42

117.   As a direct and/or substantial result of the aforesaid conspiracy and pattern of racketeering activity and the predicated acts committed in connection therewith, Michael Farino sustained damages in the amount of 2 million dollars.

118. .ASI and the corporate third-party defendant have are liable by reason of having through officers, agents, or employees having aiding and abetted the conspiracy and fraud, and are accessories.

119. ASI and the corporate third-party defendant have are vicariously liable for the acts of its officers, agents and employees.

**WHEREFORE**, Michael Farino demands judgment against ASI, Salvatore Catucci, Ronald Catucci, Matt Yates, Keith Catucci, AMS, AMSNJ, and ACP as follows:

1. Damages of $2,000,000, Punitive Damages $10,000,000
2. Treble Damages under the RICO Statute of $6,000,000
3. Costs
4. Disbursements and
5. Attorneys Fees

Other Relief

## SECOND CAUSE OF ACTION

1. Michael Farino repeats and realleges the allegations of the first cause of action as if more fully set forth at length.

2. Since in or about year 2000, Sal Catucci, Matt Yates, Ronald Catucci, and Keith Catucci using ASI, AMS, and ACP as instrumentalities, together with others,

known and unknown, being persons employed by and associated with the association in fact Enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally entered into a conspiracy in violation of 18 U.S.C. §1962(b), that is, agreed and conspired to commit the illegal predicate acts set forth in the within complaint, and to participate in, and, or  acquire or maintain, directly and indirectly, an interest in, or control of the Enterprise through a pattern of racketeering activity, and to illegally obtain money or property by the commission of the illegal acts and benefit as that term is defined in 18 U.S.C. §1961(1) and (5).


1.   In furtherance· of the RICO Conspiracy, Sal Catucci, Matt Yates, Ronald Catucci, Keith Catucci using ASI, AMS, and ACP as instrumentalities   individually and in combination, committed, and or did or cause the commission of overt avt(s) in furtherance of the conspiracy the following predicate acts:

(i) mail fraud in violation of 18 U.S.C. 1341,

(ii) wire fraud in violation of 18 U.S.C. 1343,

(iii)Grand Larceny and Larceny by Extortion under New York Penal Law Section 155.05 and 155.30 indictable offenses under State Law in violation 18 U.S.C. 1961-1964 et. Seq.,

(iv) theft of interstate shipment in violation of 18 U.S.C. 659,

(v) commission of a felony Scheme to defraud under New York Penal Law section 190.65 an indictable offense under State Law in violation of 18 U.S.C 1961-1964 et. Seq.,

(vi) At least one (1) Overt act in furtherance of the Conspiracy

3. The conspiracy was complete upon the commission of overt act(s) in furtherance thereof.

4. The defendants' violation of 18 U.S.C. 1961-1964 et. Seq. was complete upon completion of the conspiracy to commit the predicate acts listed in 18 United states Code and, or state law crimes alleged.

5. Each of the corporate defendants is vicariously liable for the acts of its officers and participation in the activities of the Enterprise.

5. As a direct and/or substantial result of the aforesaid Conspiracy and pattern of racketeering activity and the predicated and overt acts committed in connection therewith, Michael Farino sustained damages in the amount of $2 Million.

**WHEREFORE,** Michael Farino demands judgment against ASI Salvatore Catucci, Ronald Catucci, Matt Yates, Keith Catucci, AMS, AMSNJ and ACP as follows:

1. Damages of $2,000,000, Punitive Damages $10,000,000
2. Treble Damages under the RICO Statute of $6,000,000
3. Costs
4. Disbursements and
5. Attorneys Fees
6. Other Relief

### AS TO THE THIRD CAUSE OF ACTION
### AGAINST SALVATORE CATUCCI

1. The defendant repeats and realleges each allegation of the first and second causes of action as if more fully set forth at length.

2. There was a legally enforceable agreement between ASI, Sal Catucci and Michael Farino.

3. ASI and Sal Catucci breached the agreement and have refused payment to Michael Farino.

4. Demand for payment on the agreement has been made and refused and as the result Michael Farino has sustained money damages,

**WHEREFORE,** Michael Farino demands judgment against ASI and Salvatore Catucci as follows:

1. Damages of $2,000,000,   Punitive Damages $10,000,000

2. Costs

3. Disbursements and

4. Attorneys Fees

5. Other Relief


## AS TO THE FOURTH CAUSE OF ACTION
### AGAINST SALVATORE CATUCCI

1.   The defendant repeats and realleges each allegation of the first, second, and third causes of action as if more fully set forth at length.

2.   The representations of Sal Catucci and ASI by Sal Catucci to Michael Farino heretofore set forth that if Michael Farino could arrange through his on-going  business relationships keep the CMA/CGM vessel at the Port on a long-term basis   and, or   bring in a Company named "Phoenix" to the Port on a long-term basis at such in 2008 to raise revenues for ASI , or to enable a sale of the ASI business, or in 2011 that if he would bring in  "Phoenix" to the Port on a long-term basis which would enable ASI and in effect necessitate the  settlement of the ASI Port Authority Action ,    that ASI or Sal Catucci, personally, would pay  him  two (2) million dollars either outright, or from the proceeds of a sale of the ASI business,

46

or the proceeds of a Port Authority agreement, were
materially false misrepresentations of fact relied upon by
Michael Farino influencing and causing Phoenix to come to the
Red Hook Brooklyn Port on a permanent basis to conduct its on-
going business, made with intent to defraud Michael Farino.

 3. As the result of the fraud by Sal Catucci and ASI
Michael Farino has sustained damages.

 **WHEREFORE,** Michael Farino demands judgment against ASI and
Salvatore Catucci as follows:

 1. Damages of $2,000,000,

 2. Costs

 3. Disbursements and

 4. Attorneys Fees

 5. Other Relief

**WHEREFORE,** Michael Farino demands judgment against ASI and
Salvatore Catucci as follows:

 1. Damages of $2,000,000,

 2. Costs

 3. Disbursements and

 4. Attorneys Fees

 5. Other Relief

### FIFTH CAUSE OF ACTION

### AGAINST SALVATORE CATUCCI, RONALD CATUCCI, AMS, AMSNJ AND ACP

 1.  The defendant repeats and realleges each allegation of
the first, second, third and fourth causes of action as if more
fully set forth at length.


 2. Each of the individual third party defendants and the
business entities AMS, AMSNJ, and ACP have been unjustly

enriched by their wrongful conduct and participation in the illegal and fraudulent acts heretofore set forth herein.

3. As a result of their wrongful conduct each third party defendant has caused damages to Michael Farino.

**WHEREFORE**, Michael Farino demands judgment against ASI, AMS, ACP Salvatore Catucci and Ronald Catucci as follows:

1. Judgment for quasi contractual damages and disgorgement by defendants of the monies obtained illegally and fraudulenty, or restitution.
2. Costs
3. Disbursements and
4. Attorneys Fees
5. Other Relief

**SIXTH CAUSE OF ACTION**

**AGAINST SALVATORE CATUCCI, RONALD CATUCCI, AMS, AMSNJ AND ACP**

1.     Defendant repeats and realleges each allegation of the first, second, third, fourth, and fifth causes of action as if more fully set forth at length.

2. ASI is a debtor within the meaning of the New York Debtor Creditor Law.

3. ASI has made conveyances and transfers of monies and or property at such time as the present fair salable value of its assets is less than the amount which will be required to pay probable liability on existing debts as such mature under New York Debtor Creditor Law.

4. ASI has made conveyances and transfers, including without limitation, to AMS and ACP which were transfers to insiders which were preferential and at such time the transfers were made such transfers were made without either exchange of current fair value or on account of antecedent debt.

5. The transfers ASI made to AMS, ACP, and to third parties to release personal liability of ASI, or AMS principals were transfers made with intent to hinder, delay, or defraud present or future creditors.

6. From 2011 to date, ASI transfer more than $500,000 to AMS.

7. From 2011 to date ASI transferred more than $1,000,000 to a union pension fund or funds on a debt owed AMS and which released personal liability of either Sal Catucci and, or Ronald Catucci.

8. Upon information and belief from 2011 to date ASI transferred over $500,000 to ACP.

9. Upon information and belief, ASI has transferred other monies to either AMS, AMSNJ, ACP, Salvatore Catucci, Ronald Catucci, or affiliate businesses of the Salvatore and or Ronald Catucci, or their family members, or businesses owned by trusts for the benefit of family members.

10. Defendant Michael Farino has sustained damages as result thereof and will suffer irreparable injury unless a receiver is appointed to prevent further misconduct.

**WHEREFORE,** Michael Farino demands judgment against ASI, AMS, ACP Salvatore Catucci and Ronald Catucci as follows:

1. Setting Aside each and every fraudulent conveyance by ASI to AMS, AMSNJ, ACP, Salvatore Catucci, Ronald Catucci, and any other affiliate business entity in violation of New York Debtor Creditor Law sections 272, 276, and 279
2. Damages
3. An Order appointing a Receiver for ASI
4. Costs
5. Disbursements and
6. Attorneys Fees

7. Other Relief



Dated: July 22, 2013                    S/STEVEN M. SCHAFFER, ESQ.

                              _____
                              STEVEN M. SCHAFFER, ESQ.
                              BAR NO. SS-1349
                               1170 Commerce Ave.
                               Bronx, New York 10462
                               (917) 331-7111
                              Attorney For Michael Farino

EXHIBIT 1

5. Establishment of Escrow Accounts with Hiller & Weiss

(a) An Escrow or Attorney Trust Account shall be established for the payment of creditors of ASI set forth on Exhibits C, D and E attached hereto. Disbursements from said escrows shall require (1) an accountant's certificate and a certification of an officer (either the President or Chief Financial Officer) of ASI with respect to the obligations set forth on Exhibit C, D and E, to the effect that the obligations (as evidenced by copies of the actual invoices) are due and owing by ASI, are legitimate expenses related to ASI's business, that the bills are for goods or services which have been received by ASI and the bills are for business expenses under GAAP, (2) proof of payment in the form of a wire transfer confirmation or check copy, (3) a satisfaction of payment letter from the creditor and (4) a certificate from the escrow agent or attorney that the disbursement has been made in accordance with these requirements. As the obligations set forth on Exhibits C, D and E are satisfied, any funds saved in the satisfaction of those obligations set forth in Exhibits C, D and E may be released to ASI on a rolling basis. In addition,

    i. All payments to persons or entities set forth on Exhibit C (which represents payments necessary to keep the terminal facilities operating) are first in order of payment priority and must be made at closing;

    ii. All payments to persons or entities set forth on Exhibit D (any person or corporate entity that is not related to, or not employed by ASI, or any other corporate entity which does not share principles with ASI), are second in order of payment priority and must be made within 180 days of August 15, 2011 or sooner; and

    iii. All payments to persons or entities set forth on Exhibit E (anyone person or corporate entity that is related to, or is employed by ASI, or any other corporate entity which shares principles with ASI), are third in order of payment priority and must be made within 210 days of August 15, 2011 or sooner.

(b) Any funds remaining in the Escrows or Attorney Trust Accounts established pursuant to 5 (a), 5 (b) and 5 (c) above, after satisfaction of the requirements set forth in paragraphs 5 (a), 5 (b) and 5 (c), shall be disbursed to ASI in consideration of the terms of the Settlement Agreement.

(c) Should any creditor of ASI make a claim against the Port Authority for payment of an ASI debt or in any way challenge the provisions of Paragraph 5, Sabato Catucci shall be responsible, in his individual capacity, to defend and fully and completely indemnify the Port Authority in said action.

American Stevedoring Ltd. (7)

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 8009509396 | ***** Poland Springs Water ***** Processing Center P.O. Box 856192 Louisville, KY 40285 | | | | | | | | |
| 10776207 | 01E0436543664 | 05/14/11 | | | 38.93 | | | | 38.93 |
| | | TOTAL | 0.00 | 0.00 | 38.93 | 0.00 | 0.00 | 0.00 | 38.93 * |
| 7329041039 | ***** Port Technical Training ***** 20 Outlook Lane Freehold. NJ 07728 | | | | | | | | |
| 10741507 | 216 | 10/18/10 | | | | . | | 2,741.00 | 2,741.00 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,741.00 | 2,741.00 * |
| 7183722900 | ***** Portronix Communications ***** 2831 Cropsey Avenue Brooklyn. NY 11214 | | | | | | | | |
| 10742707 | 55078 | 03/04/11 | | | | | 5,665.00 | | 5,665.00 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 5,665.00 | 0.00 | 5,665.00 * |
| 8002556316 | ***** Premium Financing Spec. ***** PO Box 419090 Kansas City, MO 64141-6090 | | | | | | | | |
| 10705807 | NAK-105773 | 06/21/11 | | 2,965.97 | | | | | 2,965.97 |
| 10627807 | NAK-103507 | 07/01/11 | 17.563.58 | | | | | | 17.563.58 |
| 10557307 | NAK-101775 | 07/05/11 | 8,188.06 | | | | | | 8,188.06 |
| 10705907 | NAK-105773 | 07/21/11 | 2.965.97 | | | | | | 2.965.97 |
| | | TOTAL | 28,717.61 | 2,965.97 | 0.00 | 0.00 | 0.00 | 0.00 | 31,683.58 * |
| 7329699200 | ***** Prime Lube Inc. ***** P.O. Box 539 Carteret. NJ 07008 | | | | | | | | |
| 10753507 | 0473665-IN | 03/30/11 | | | | 2,913.22 | | | 2,913.22 |
| 10753607 | 0473736-IN | 03/30/11 | | | | 370.77 | | | 370.77 |
| 10791207 | 0479071-IN | 05/31/11 | | 3,585.45 | | | | | 3,585.45 |
| | | TOTAL | 0.00 | 3,585.45 | 0.00 | 3,283.99 | 0.00 | 0.00 | 6,869.44 * |
| 2013483099 | ***** Propane Power Corp. ***** 915 Delancy Street Newark. NJ 07105 | | | | | | | | |
| 10791107 | C086019 | 05/14/11 | | | 1,062.22 | | | | 1.062.22 |
| | | TOTAL | 0.00 | 0.00 | 1,062.22 | 0.00 | 0.00 | 0.00 | 1,062.22 * |
| 8009979907 | ***** Purchase Power ***** P.O. Box 371874 Pittsburgh, PA 15250-7874 | | | | | | | | |
| 10795707 | 8000-9000-0399-4187 | 06/02/11 | | 282.96 | | | | | 282.96 |
| | | TOTAL | 0.00 | 282.96 | 0.00 | 0.00 | 0.00 | 0.00 | 282.96 * |
| 7184998641 | ***** Rapid Tire Service Inc ***** 103 20th Street Brooklyn. NY 11232 | | | | | | | | |
| 10743007 | 145062 | 05/06/08 | | | | | | 7,034.00 | 7,034.00 |
| 10743107 | 147495 | 07/17/09 | | | | | | 3,815.00 | 3,815.00 |
| 10743207 | 147511 | 07/19/09 | | | | | | 4,140.50 | 4,140.50 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,989.50 | 14,989.50 * |
| 8772346545 | ***** Royal Flush ***** PO Box 3126 Bridgeport. CT 06605 | | | | | | | | |
| 10781807 | B-386315 | 05/20/11 | | | 124.88 | | | | 124.88 |
| | | TOTAL | 0.00 | 0.00 | 124.88 | 0.00 | 0.00 | 0.00 | 124.88 * |

Scerbo on next page

American Stevedoring Ltd. (7)

Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 9734543259 ***** Scerbo ***** PO Box 4374 Wayne. NJ 07474 | | | | | | | | | |
| 10776507 | 4044 | 05/18/11 | | | 1,397.75 | | | | 1,397.75 |
| | | TOTAL | 0.00 | 0.00 | 1,397.75 | 0.00 | 0.00 | 0.00 | 1,397.75 * |
| | | | | | | | | | |
| 8006396111 ***** Sprint Communications ***** P.O. Box 4181 Carol Stream, IL 60197-4181 | | | | | | | | | |
| 10786107 | 717241113 | 06/05/11 | | 1,822.79 | | | | | 1,822.79 |
| 10786507 | 446383813 | 06/06/11 | | 61.48 | | | | | 61.48 |
| | | TOTAL | 0.00 | 1,884.27 | 0.00 | 0.00 | 0.00 | 0.00 | 1,884.27 * |
| | | | | | | | | | |
| 8006995812 ***** Staples Advantage ***** Dept. NY PO Box 415256 Boston, MA 02241-5256 | | | | | | | | | |
| 10767907 | 3154625079 | 05/14/11 | | | 19.69 | | | | 19.69 |
| 10768007 | 3154625080 | 05/14/11 | | | 476.90 | | | | 476.90 |
| 10787407 | 3155769178 | 06/04/11 | | 96.24 | | | | | 96.24 |
| 10787507 | 3155769180 | 06/04/11 | | 368.14 | | | | | 368.14 |
| | | TOTAL | 0.00 | 464.38 | 496.59 | 0.00 | 0.00 | 0.00 | 960.97 * |
| | | | | | | | | | |
| 8002245563 ***** TD Bank ***** Operations Center P.O. Box 8400 Lewiston, ME 04243 | | | | | | | | | |
| 10783807 | 00965001377897 | 06/06/11 | | 420.93 | | | | | 420.93 |
| | | TOTAL | 0.00 | 420.93 | 0.00 | 0.00 | 0.00 | 0.00 | 420.93 * |
| | | | | | | | | | |
| 7187882471 ***** Thompson Overhead Door Co ***** 47- Sixteenth Street Brooklyn, NY 11215 | | | | | | | | | |
| 10752007 | 120044 | 03/30/11 | | | | 1,251.34 | | | 1,251.34 |
| 10791507 | 120280 | 05/09/11 | | | 731.50 | | | | 731.50 |
| | | TOTAL | 0.00 | 0.00 | 731.50 | 1,251.34 | 0.00 | 0.00 | 1,982.84 * |
| | | | | | | | | | |
| 2012273878 ***** Transport Parts & Svc. ***** 435 Route 202 Towaco. NJ 07082 | | | | | | | | | |
| 10743907 | 11228 | 11/01/10 | | | | | | 14.992.24 | 14.992.24 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14.992.24 | 14.992.24 * |
| | | | | | | | | | |
| 7322872887 ***** Tri-Lift NJ Inc. ***** 1471 Jersey Avenue North Brunswick. NJ 08902-1622 | | | | | | | | | |
| 10763507 | E45313 | 03/31/11 | | | | 327.08 | | | 327.08 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 327.08 | 0.00 | 0.00 | 327.08 * |
| | | | | | | | | | |
| 8003484777 ***** TydenBrooks ***** 16036 Collection Ctr Drive Chicago. IL 60693 | | | | | | | | | |
| 10750507 | 303566 | 04/04/11 | | | | 538.95 | | | 538.95 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 538.95 | 0.00 | 0.00 | 538.95 * |
| | | | | | | | | | |
| 8008111648 ***** UPS/United Parcel Service ***** P.O. Box 7247-0244 Philadelphia, PA 19170-001 | | | | | | | | | |
| 10781207 | 00002R13R7211 | 05/21/11 | | | 39.32 | | | | 39.32 |
| 10780907 | 00002R13R7221 | 05/28/11 | | 98.67 | | | | | 98.67 |
| 10795807 | 00002R13R7241 | 06/11/11 | | 66.39 | | | | | 66.39 |
| 10795907 | 0000084A4F241 | 06/11/11 | | 39.38 | | | | | 39.38 |
| | | TOTAL | 0.00 | 204.44 | 39.32 | 0.00 | 0.00 | 0.00 | 243.76 * |

Verizon on next page

## Exhibit D

| Customer | Amount Owed by ASI |
|---|---|
| A&A Brake Service Co. | $ 767.47 |
| AT&T | $ 33.86 |
| Accardi Hardware | $ 1,067.90 |
| Accurate Pest Control | $ 1,519.66 |
| Adam Leitman Bailey | $ 17,824.00 |
| Aetna | $ 21,310.00 |
| Aggressive Property Maint | $ 935.00 |
| Airgas East | $ 669.40 |
| Almat Forms & Systems | $ 4,282.50 |
| American Express | $ 9,082.90 |
| Aramark Uniform Services | $ 813.66 |
| Assurant Employee Benefit | $ 2,727.59 |
| Batteries for Industry | $ 952.00 |
| Blank Rome LLP | $ 550,000.00 |
| Blueoceana Company, Inc. | $ 5,162.50 |
| CBL Consulting LLC | $ 1,559.80 |
| CDW Computer Centers | $ 943.20 |
| Cambria Mack | $ 176.51 |
| Capital Contractors | $ 5,580.00 |
| Certified Products, Inc. | $ 12,690.37 |
| Chartis | $ 1,913.00 |
| Chase Card Service | $ 370.72 |
| Cohen & Krasner Attorneys | $ 28,500.00 |
| Cooperative | $ 599.86 |
| Corvedia, Inc. | $ 39.52 |
| Donahue & Company | $ 62,289.54 |
| EG Electrical | $ 9,439.45 |
| Ear Nose Throat | $ 439.72 |
| Edmar Cleaning Corp | $ 9,513.84 |
| Electrical South | $ (366.14) |
| Energy Fueling Systems | $ 1,252.06 |
| Exxon Mobile | $ 3,532.16 |
| Fry Supply | $ 4,302.82 |
| Grainger | $ 235.40 |
| Hale Trailer | $ 5,200.00 |
| Henke Manufacturing | $ 2,748.07 |
| Hillwick | $ 1,986.06 |
| Imaging Ctr at Morristown | $ 201.46 |
| Labelmaster | $ 610.41 |
| Larry's Auto Electric | $ 245.00 |
| Liberty Industrial Gases | $ 291.33 |
| MILA Managed Health Care | $ 4,168.70 |
| Manning Electric, Inc. | $ 22,211.60 |
| Mash City Business Systems | $ 9,656.40 |
| Metropolitan Paper Recycle | $ 5,141.96 |
| Moen Electric Corp. | $ 936.00 |
| Monmouth Telecom | $ 448.15 |

DRAFT
Exhibit C

| Customer | Amount Owed by ASI |
|---|---|
| ABS Americas | $ 3,720.00 |
| Auster Rubber Co., Inc. | $ 10,234.98 |
| Avenel Truck & Equipment | $ 19,516.72 |
| Bill Silberman | $ 4,590.52 |
| Blue Wolf | $ 855,000.00 |
| Cargotec Solutions LLC | $ 172,773.98 |
| City of Newark - Payroll Tax | $ 11,980.00 |
| CMA-CGM (America) | $ 2,477.64 |
| Comm of Taxation / Finance | $ 123,530.85 |
| Con Ed | $ 50,610.21 |
| ? Cummins Metropower | $ 5,556.45 |
| F&S Tire Corp. | $ 115,514.58 |
| Fleetweather, Inc. | $ 2,070.00 |
| GE Capital | $ 103,968.84 |
| Golten Marine Co., Inc. | $ 20,381.40 |
| HDP Fleet Fueling | $ 155,814.86 |
| Liebherr Nenzing Crane Co | $ 92,418.79 |
| Metro Commercial Fuels | $ 89,367.30 |
| Moran | $ 1,339,103.96 |
| New York State | $ 1,002,500.00 |
| NYSA - Tonnage Assessment | $ 20,387.50 |
| NYSA - Money Market Hiring | $ 1,187.20 |
| NYSA - PPGU Fringe Benefits | $ 120,308.00 |
| NYSA - PPGU Money Purchase | $ 15,648.75 |
| NYSA-ILA Fringe Benefits | $ 12,899.43 |
| New York Shipping Assoc | $ 98,114.50 |
| NSCSA (America), Inc. | $ 1,000.00 |
| National Cargo Bureau | $ 321.00 |
| National Grid/Keyspan | $ 757.33 |
| ? New York Electrical Power | $ 8,366.50 |
| PSE&G | $ 21,890.96 |
| Prime Lube Inc. | $ 16,549.14 |
| Propane Power Corp. | $ 2,718.56 |
| Rapid Tire Service, Inc. | $ 14,989.50 |
| State of New Jersey | $ 648.57 |
| TriLift NJ Inc. | $ 327.08 |
| US Customs | $ 1,479.00 |
| Waterfront Commission of NY | $ 76,574.23 |
| | |
| SUBTOTAL | $ 4,595,298.33 |

| | | |
|---|---|---|
| Morris Imaging Assoc | $ | 53.01 |
| Morristown Memorial Hosp | $ | 2,342.14 |
| New York Terminal | $ | 4,000.00 |
| Onego Shipping & Charter | $ | 53,827.49 |
| PJK Services, LLC | $ | 3,895.00 |
| Patterson Battery | $ | 430.00 |
| Paul's Wire Rope, Inc. | $ | 34,387.32 |
| Paychex, Inc. | $ | 2,142.34 |
| Petro/Whaleco Comm Div | $ | 23,548.44 |
| Pirtek Newark | $ | 1,425.85 |
| Poland Springs Water | $ | 729.54 |
| Port Technical Training | $ | 2,741.00 |
| Portronix Communications | $ | 5,665.00 |
| Postmaster-Brooklyn NY | $ | 48.00 |
| Premium Financing Spec | $ | 20,529.55 |
| Royal Flush | $ | 249.76 |
| Scerbo | $ | 3,689.35 |
| Sherwin Williams | $ | 806.88 |
| Siaca Wipers Inc. | $ | 397.86 |
| Signal Administration | $ | 78,439.31 |
| Soffer, Rech & Borg LLP | $ | 26,358.79 |
| Sprint Communications | $ | 2,639.16 |
| Staples Advantage | $ | 746.50 |
| Szaferman, Lakind | $ | 346,776.64 |
| Thompson Overhead Door | $ | 1,982.84 |
| Transport Parts & Service | $ | 14,992.24 |
| TydenBrooks | $ | 538.95 |
| US Coffee Service | $ | 103.24 |
| UPS/United Postal Service | $ | 31.76 |
| Verizon | $ | 1,601.71 |
| Verizon Wireless | $ | 76.44 |
| WS Archer | $ | 5,302.10 |
| Weiss & Hiller | $ | 271,589.52 |
| Zee Medical | $ | 464.44 |

| | | | |
|---|---|---|---|
| | SUBTOTAL | $ | 1,726,557.58 |
| **Exhibit E** | | | |
| American Chassis Pool | $ | 931,100.00 | |
| American Maritime Service | $ | 2,193,077.48 | |
| | SUBTOTAL | $ | 3,124,177.48 |
| | GRAND TOTAL | $ | 9,446,033.39 |

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 7186244488 ***** A & A Brake Serv. Co. Inc ***** 224 Third Avenue Brooklyn, NY 11217 ||||||||||
| 10777307 | 438327 | 05/11/11 | | | 81.87 | | | | 81.87 |
| 10779607 | 438639 | 05/18/11 | | | 43.18 | | | | 43.18 |
| 10779807 | 438815 | 05/23/11 | | | 21.35 | | | | 21.35 |
| 10779707 | 438855 | 05/24/11 | | | 54.95 | | | | 54.95 |
| 10790807 | 438870 | 05/24/11 | | | 147.80 | | | | 147.80 |
| 10790907 | 439099 | 06/01/11 | | 11.88 | | | | | 11.88 |
| 10790407 | 439236 | 06/06/11 | | 40.34 | | | | | 40.34 |
| 10790607 | 439353 | 06/08/11 | | 164.00 | | | | | 164.00 |
| 10790707 | 439405 | 06/09/11 | | -94.00 | | | | | -94.00 |
| 10790507 | 439467 | 06/10/11 | | 142.68 | | | | | 142.68 |
| | | TOTAL | 0.00 | 264.90 | 349.15 | 0.00 | 0.00 | 0.00 | 614.05 * |
| 2019090499 ***** ABS Americas ***** P.O. Box 201614 Houston, TX 77216-1614 ||||||||||
| 10713107 | 071132294986 | 01/31/11 | | | | | | 3,026.00 | 3,026.00 |
| 10713207 | 071132297337 | 02/24/11 | | | | | 694.00 | | 694.00 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 694.00 | 3,026.00 | 3,720.00 * |
| 8005242455 ***** AT&T ***** P.O. Box 105068 Atlanta, GA 30348-5068 ||||||||||
| 10786607 | 054 093 7163 001 | 06/01/11 | | 34.00 | | | | | 34.00 |
| 10786807 | 171-786-8430 741 | 06/01/11 | | 2,091.12 | | | | | 2,091.12 |
| | | TOTAL | 0.00 | 2,125.12 | 0.00 | 0.00 | 0.00 | 0.00 | 2,125.12 * |
| 7188759856 ***** Accardi Hardware & ***** Industrial Supply Co., Inc. 157 Columbia Street Brooklyn, NY 11231-9955 ||||||||||
| 10752707 | 4287 | 03/17/11 | | | | | 471.14 | | 471.14 |
| 10761507 | 4375 | 04/14/11 | | | | 180.83 | | | 180.83 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 180.83 | 471.14 | 0.00 | 651.97 * |
| 9739276122 ***** Accurate Pest Control, Inc ***** 143 Landing Road - Suite B Landing, NJ 07850 ||||||||||
| 10746807 | 42909 | 04/06/11 | | | | 221.22 | | | 221.22 |
| 10760707 | 43508 | 05/04/11 | | | 221.22 | | | | 221.22 |
| 10776607 | 43507 | 05/18/11 | | | 428.00 | | | | 428.00 |
| | | TOTAL | 0.00 | 0.00 | 649.22 | 221.22 | 0.00 | 0.00 | 870.44 * |
| 2128250365 ***** Adam Leitman Bailey, P.C. ***** 120 Broadway, 17th Floor New York, NY 10271 ||||||||||
| 10758807 | 21009 | 05/01/10 | | | | | | 17,776.00 | 17,776.00 |
| 10758907 | 23999 | 12/01/10 | | | | | | 48.00 | 48.00 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17,824.00 | 17,824.00 * |
| 8006283323 ***** Aetna ***** P.O. Box 7247-0221 Philadelphia, PA 19170-0221 ||||||||||
| 10783507 | A8963750/10776284 | 05/16/11 | | | 21,310.00 | | | | 21,310.00 |
| 10795107 | A9065533/10776284 | 06/14/11 | | 21,310.00 | | | | | 21,310.00 |
| | | TOTAL | 0.00 | 21,310.00 | 21,310.00 | 0.00 | 0.00 | 0.00 | 42,620.00 * |

Aggressive Property Maint on next page

American Stevedoring Ltd. (7)

PAGE 2

Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 7322641568 ***** Aggressive Property Maint ***** (DBA) Kelly & Sons Post Office Box 57 Lakewood, NJ 08701 | | | | | | | | | |
| 10748007 | 23179 | 04/07/11 | | | | 935.00 | | | 935.00 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 935.00 | 0.00 | 0.00 | 935.00 * |
| 7327524500 ***** Airgas East ***** W4880 P.O. Box 827049 Philadelphia, PA 19182-7049 | | | | | | | | | |
| 10760607 | 116458087 | 04/30/11 | | | 334.70 | | | | 334.70 |
| 10789907 | 116666153 | 05/31/11 | | 334.70 | | | | | 334.70 |
| | | TOTAL | 0.00 | 334.70 | 334.70 | 0.00 | 0.00 | 0.00 | 669.40 * |
| 5162697200 ***** Almat Forms & Systems Inc ***** One Main Street - Suite 2 Kings Park, NY 11754 | | | | | | | | | |
| 10712107 | 24330 | 03/01/11 | | | | | 4,237.00 | | 4,237.00 |
| 10712207 | 24333 | 03/02/11 | | | | | 45.50 | | 45.50 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 4,282.50 | 0.00 | 4,282.50 * |

| 8002134927 ***** Aramark Uniform Services ***** PO Box 277 Union, NJ 07083 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10747807 | 535-8929184 | 04/15/11 | | | | 131.54 | | | 131.54 |
| 10761807 | 535-8931765 | 04/18/11 | | | | 53.90 | | | 53.90 |
| 10747907 | 535-8938044 | 04/22/11 | | | | 72.44 | | | 72.44 |
| 10761907 | 535-8940621 | 04/25/11 | | | 53.90 | | | | 53.90 |
| 10762007 | 535-8946771 | 04/29/11 | | | 72.44 | | | | 72.44 |
| 10792807 | 535-8949330 | 05/02/11 | | | 53.90 | | | | 53.90 |
| 10762107 | 535-8955560 | 05/06/11 | | | 72.44 | | | | 72.44 |
| 10792907 | 535-8958172 | 05/09/11 | | | 53.90 | | | | 53.90 |
| 10777007 | 535-8964261 | 05/13/11 | | | 72.44 | | | | 72.44 |
| 10793007 | 535-8966797 | 05/16/11 | | | 53.90 | | | | 53.90 |
| 10777107 | 535-8973025 | 05/20/11 | | | 72.44 | | | | 72.44 |
| 10793107 | 535-8975594 | 05/23/11 | | | 53.90 | | | | 53.90 |
| 10793207 | 5358981665 | 05/27/11 | | 72.44 | | | | | 72.44 |
| 10793307 | 535-8990278 | 06/03/11 | | 72.44 | | | | | 72.44 |
| 10793407 | 535-8998751 | 06/10/11 | | 72.44 | | | | | 72.44 |
| | | TOTAL | 0.00 | 217.32 | 559.26 | 257.88 | 0.00 | 0.00 | 1,034.46 * |

| 8164742345 ***** Assurant Employee Benefit ***** PO Box 807009 Kansas City, MO 64184 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10783607 | 5447590 | 06/01/11 | | 2,727.59 | | | | | 2,727.59 |
| | | TOTAL | 0.00 | 2,727.59 | 0.00 | 0.00 | 0.00 | 0.00 | 2,727.59 * |

| 7187826400 ***** Auster Rubber Co., Inc. ***** 238 N. 9th Street Brooklyn, NY 11211 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10711507 | 358894-004 DI | 05/31/10 | | | | | | 3,478.20 | 3,478.20 |
| 10711607 | 361961-002 DI | 08/31/10 | | | | | | 1,541.20 | 1,541.20 |
| 10711707 | 361961-003 DI | 08/31/10 | | | | | | 1,422.90 | 1,422.90 |
| 10711807 | 361961-004 DI | 08/31/10 | | | | | | 1,845.80 | 1,845.80 |
| 10711907 | 361961-005 DI | 08/31/10 | | | | | | 327.11 | 327.11 |
| 10712007 | 364800-002 DI | 11/15/10 | | | | | | 1,619.77 | 1,619.77 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,234.98 | 10,234.98 * |

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31-60 Days | 61-90 Days | 91-120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 9086367400 ***** Avenel Truck & Equipment ***** P.O. Box 167 Avenel, NJ 07001 | | | | | | | | | |
| 10715307 | 98812 | 11/08/10 | | | | | | 1,877.73 | 1,877.73 |
| 10715507 | 99051 | 11/19/10 | | | | | | 690.54 | 690.54 |
| 10715607 | 99060 | 11/19/10 | | | | | | 1,020.48 | 1,020.48 |
| 10715407 | 99282 | 12/06/10 | | | | | | 362.25 | 362.25 |
| 10715707 | 99400 | 12/09/10 | | | | | | 916.34 | 916.34 |
| 10715807 | 100063 | 01/11/11 | | | | | | 1,680.55 | 1,680.55 |
| 10715907 | 100213 | 01/18/11 | | | | | | 2,244.03 | 2,244.03 |
| 10716007 | 100233 | 01/19/11 | | | | | | 198.00 | 198.00 |
| 10716107 | 100437 | 01/27/11 | | | | | | 783.69 | 783.69 |
| 10716207 | 100576 | 02/03/11 | | | | | | 1,419.43 | 1,419.43 |
| 10716307 | 100579 | 02/03/11 | | | | | | 255.66 | 255.66 |
| 10716407 | 100695 | 02/08/11 | | | | | | 67.47 | 67.47 |
| 10716507 | 100896 | 02/16/11 | | | | | | 814.46 | 814.46 |
| 10716607 | 101396 | 03/08/11 | | | | | 1,480.18 | | 1,480.18 |
| 10746907 | 101619 | 03/18/11 | | | | | 1,004.60 | | 1,004.60 |
| 10752207 | 101700 | 03/24/11 | | | | | 1,289.40 | | 1,289.40 |
| 10752307 | 102038 | 04/07/11 | | | | 1,303.51 | | | 1,303.51 |
| 10752407 | 102159 | 04/14/11 | | | | 2,108.40 | | | 2,108.40 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 3,411.91 | 3,774.18 | 12,330.63 | 19,516.72 * |
| 9737426900 ***** Batteries for Industry ***** 247 Fulton Place Paterson, NJ 07501 | | | | | | | | | |
| 10716907 | 49739 | 02/18/10 | | | | | | -24,380.00 | -24,380.00 |
| 10716807 | 49740 | 03/31/10 | | | | | | 25,332.00 | 25,332.00 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 952.00 | 952.00 * |
| 5163745076 ***** Bill Silberman ***** 309 Buckingham Street Cedarhurst, NY 11516 | | | | | | | | | |
| 10787607 | April 2011 expenses | 06/15/11 | | 1,136.29 | | | | | 1,136.29 |
| 10787707 | May 2011 expenses | 06/15/11 | | 1,115.00 | | | | | 1,115.00 |
| | | TOTAL | 0.00 | 2,251.29 | 0.00 | 0.00 | 0.00 | 0.00 | 2,251.29 * |
| 9737278033 ***** Blueoceana Company, Inc. ***** P.O. Box 283 Basking Ridge, NJ 07920 | | | | | | | | | |
| 10754607 | ASI0111 | 05/03/11 | | | 3,587.50 | | | | 3,587.50 |
| 10792407 | ASI0211 | 06/03/11 | | 5,162.50 | | | | | 5,162.50 |
| | | TOTAL | 0.00 | 5,162.50 | 3,587.50 | 0.00 | 0.00 | 0.00 | 8,750.00 * |
| 7187971664 ***** CBL Consulting LLC ***** 55 Washington Street- Ste 321 Brooklyn, NY 11201 | | | | | | | | | |
| 10781607 | 6879 | 03/01/11 | | | | | 1,500.00 | | 1,500.00 |
| 10781507 | 7029 | 06/01/11 | | 29.90 | | | | | 29.90 |
| | | TOTAL | 0.00 | 29.90 | 0.00 | 0.00 | 1,500.00 | 0.00 | 1,529.90 * |
| 8474656000 ***** CDW Computer Centers, Inc ***** P.O. Box 75723 Chicago, IL 60675-5723 | | | | | | | | | |
| 10767807 | XKP6907 | 05/17/11 | | | 943.20 | | | | 943.20 |
| | | TOTAL | 0.00 | 0.00 | 943.20 | 0.00 | 0.00 | 0.00 | 943.20 * |

CMA-CGM (America) Inc. on next page

American Stevedoring Ltd. (7)

PAGE 4

Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 7573334115 ***** CMA-CGM (America) Inc. ***** 5701 Lake Wright Drive  Norfolk, VA  23502-1868 | | | | | | | | | |
| 10783707 | 3510583 | 03/16/10 | | | | | | 1,775.00 | 1,775.00 |
| 10796007 | 58441/3511545 | 10/19/10 | | | | | | 702.64 | 702.64 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,477.64 | 2,477.64 * |
| 9083542100 ***** Cambria Mack ***** 565 Dowd Avenue  Elizabeth, NJ  07201 | | | | | | | | | |
| 10792007 | S1021658 | 05/26/11 | | 39.65 | | | | | 39.65 |
| 10792107 | S1023129 | 06/07/11 | | 176.51 | | | | | 176.51 |
| | | TOTAL | 0.00 | 216.16 | 0.00 | 0.00 | 0.00 | 0.00 | 216.16 * |
| 9734276700 ***** Capital Contractors Inc. ***** 25049 Network Place  Chicago, IL  60673-1250 | | | | | | | | | |
| 10752607 | 743696 | 03/31/11 | | | | 1,395.00 | | | 1,395.00 |
| 10763007 | 000755307 | 04/30/11 | | | 1,395.00 | | | | 1,395.00 |
| 10791307 | 000765814 | 05/31/11 | | 1,395.00 | | | | | 1,395.00 |
| | | TOTAL | 0.00 | 1,395.00 | 1,395.00 | 1,395.00 | 0.00 | 0.00 | 4,185.00 * |
| 6098600150 ***** Cargotec Solutions LLC. ***** Kalmar Americas Region 1521 Solutions Center Chicago, IL  60677-1005 | | | | | | | | | |
| 10720207 | NJS/71069633 | 02/22/10 | | | | | | 1,934.26 | 1,934.26 |
| 10720307 | NJS/71069634 | 02/22/10 | | | | | | 2,952.10 | 2,952.10 |
| 10720407 | BRM/71009776 | 02/22/10 | | | | | | 8,784.91 | 8,784.91 |
| 10720507 | BRM/71009842 | 03/10/10 | | | | | | 90.08 | 90.08 |
| 10720607 | BRM/71009843 | 03/10/10 | | | | | | 4,870.74 | 4,870.74 |
| 10720707 | NJS/71069874 | 03/10/10 | | | | | | 1,231.55 | 1,231.55 |
| 10720807 | NJS/71070017 | 03/22/10 | | | | | | 191.06 | 191.06 |
| 10720907 | BRM/71009930 | 03/31/10 | | | | | | 1,940.40 | 1,940.40 |
| 10721007 | BRM/71009931 | 03/31/10 | | | | | | 2,574.59 | 2,574.59 |
| 10721107 | BRM/71010017 | 04/17/10 | | | | | | 2,683.92 | 2,683.92 |
| 10721207 | NJS/71070559 | 04/26/10 | | | | | | 135.00 | 135.00 |
| 10721307 | NJS/71070592 | 04/29/10 | | | | | | 283.33 | 283.33 |
| 10721407 | NJS/71070625 | 04/30/10 | | | | | | 225.28 | 225.28 |
| 10721607 | NJS/71070654 | 05/03/10 | | | | | | 1,751.30 | 1,751.30 |
| 10721707 | NJS/71070741 | 05/10/10 | | | | | | 1,234.60 | 1,234.60 |
| 10721807 | NJS/71070846 | 05/13/10 | | | | | | 1,337.30 | 1,337.30 |
| 10721907 | NJS/71070923 | 05/19/10 | | | | | | 1,125.51 | 1,125.51 |
| 10722007 | NJS/71070959 | 05/21/10 | | | | | | 200.91 | 200.91 |
| 10722107 | NJS/71070960 | 05/21/10 | | | | | | 5,101.43 | 5,101.43 |
| 10721507 | NJS/71070653 | 05/30/10 | | | | | | 819.40 | 819.40 |
| 10722207 | NJS/71071140 | 06/04/10 | | | | | | 2,370.60 | 2,370.60 |
| 10722307 | NJS/71071260 | 06/11/10 | | | | | | 803.51 | 803.51 |
| 10722407 | NJS/71071700 | 07/09/10 | | | | | | 222.79 | 222.79 |
| 10722507 | NJS/71071736 | 07/12/10 | | | | | | 2,347.36 | 2,347.36 |
| 10722607 | NJS/71071896 | 07/21/10 | | | | | | 1,230.80 | 1,230.80 |
| 10722707 | NJS/71071921 | 07/22/10 | | | | | | 163.59 | 163.59 |
| 10722807 | NJS/71071946 | 07/23/10 | | | | | | 1,633.34 | 1,633.34 |
| 10722907 | NJS/71071947 | 07/23/10 | | | | | | 64.66 | 64.66 |
| 10723007 | NJS/71071967 | 07/26/10 | | | | | | 3,065.70 | 3,065.70 |
| 10723107 | NJS/71072071 | 08/03/10 | | | | | | 12,260.47 | 12,260.47 |
| 10723207 | BRM/71010498 | 08/11/10 | | | | | | 16,888.49 | 16,888.49 |
| 10723307 | NJS/71072211 | 08/12/10 | | | | | | 519.94 | 519.94 |
| 10723407 | NJS/71072278 | 08/16/10 | | | | | | 1,396.77 | 1,396.77 |
| 10723507 | NJS/71072306 | 08/18/10 | | | | | | 2,499.06 | 2,499.06 |

# Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31-60 Days | 61-90 Days | 91-120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 10723607 | NJS/71072356 | 08/20/10 | | | | | | 1.592.06 | 1.592.06 |
| 10723707 | NJS/71072420 | 08/25/10 | | | | | | 198.81 | 198.81 |
| 10723807 | NJS/71072512 | 08/30/10 | | | | | | 1.612.07 | 1.612.07 |
| 10723907 | NJS/71072513 | 08/30/10 | | | | | | 136.40 | 136.40 |
| 10724007 | NJS/71072557 | 09/01/10 | | | | | | 201.13 | 201.13 |
| 10724107 | NJS/71072615 | 09/07/10 | | | | | | 820.20 | 820.20 |
| 10724207 | NJS/71072672 | 09/09/10 | | | | | | 6.746.90 | 6.746.90 |
| 10724307 | NJS/71072860 | 09/21/10 | | | | | | 188.40 | 188.40 |
| 10724407 | NJS/71072861 | 09/21/10 | | | | | | 134.00 | 134.00 |
| 10724507 | NJS/71072946 | 09/28/10 | | | | | | 719.20 | 719.20 |
| 10724607 | NJS/71073039 | 10/04/10 | | | | | | 941.90 | 941.90 |
| 10724707 | NJS/71073082 | 10/06/10 | | | | | | 1.986.60 | 1.986.60 |
| 10724807 | NJS/71073247 | 10/15/10 | | | | | | 1.322.17 | 1.322.17 |
| 10724907 | NJS/71073498 | 10/27/10 | | | | | | 1.091.47 | 1.091.47 |
| 10725007 | NJS/71073678 | 11/05/10 | | | | | | 643.20 | 643.20 |
| 10725107 | NJS/71073679 | 11/05/10 | | | | | | 896.40 | 896.40 |
| 10725207 | NJS/71073680 | 11/05/10 | | | | | | 10.984.50 | 10.984.50 |
| 10725307 | NJS/71073672 | 11/17/10 | | | | | | 1.606.70 | 1.606.70 |
| 10725407 | NJS/71074087 | 12/01/10 | | | | | | 1.371.65 | 1.371.65 |
| 10725507 | NJS/71074156 | 12/06/10 | | | | | | 886.00 | 886.00 |
| 10725607 | NJS/71074353 | 12/15/10 | | | | | | 1.450.00 | 1.450.00 |
| 10725707 | NJS/71074701 | 01/10/11 | | | | | | 4.294.93 | 4.294.93 |
| 10725807 | NJS/71074702 | 01/10/11 | | | | | | 1.597.65 | 1.597.65 |
| 10725907 | NJS/71075091 | 01/31/11 | | | | | | 976.40 | 976.40 |
| 10726007 | NJS/71075092 | 01/31/11 | | | | | | 923.20 | 923.20 |
| 10726107 | NJS/71075139 | 02/03/11 | | | | | | 934.16 | 934.16 |
| 10726207 | NJS/71075186 | 02/04/11 | | | | | | 1.630.19 | 1.630.19 |
| 10726307 | NJS/71075232 | 02/08/11 | | | | | | 284.94 | 284.94 |
| 10726407 | NJS/71075284 | 02/10/11 | | | | | | 1.044.60 | 1.044.60 |
| 10726507 | NJS/71075327 | 02/14/11 | | | | | | 302.53 | 302.53 |
| 10726607 | NJS/71075344 | 02/15/11 | | | | | | 284.13 | 284.13 |
| 10726707 | NJS/71075365 | 02/16/11 | | | | | | 330.20 | 330.20 |
| 10726807 | NJS/71075494 | 02/22/11 | | | | | | 152.88 | 152.88 |
| 10763807 | NJS/71075535 | 02/24/11 | | | | | 2.705.68 | | 2.705.68 |
| 10763907 | NJS/71075560 | 02/25/11 | | | | | 437.88 | | 437.88 |
| 10764007 | NJS/71075606 | 03/01/11 | | | | | 377.58 | | 377.58 |
| 10764107 | NJS/71075770 | 03/11/11 | | | | | 1.736.90 | | 1.736.90 |
| 10764207 | NJS/71075786 | 03/14/11 | | | | | 29.50 | | 29.50 |
| 10764307 | NJS/71075879 | 03/17/11 | | | | | 533.96 | | 533.96 |
| 10746707 | NJS/42003562 | 03/29/11 | | | | -47.40 | | | -47.40 |
| 10764407 | NJS/42003563 | 04/01/11 | | | | -1.024.59 | | | -1.024.59 |
| 10764507 | NJS/71076077 | 04/01/11 | | | | 476.40 | | | 476.40 |
| 10764607 | NJS/71076096 | 04/04/11 | | | | 946.10 | | | 946.10 |
| 10764707 | NJS/71076152 | 04/07/11 | | | | 2.430.28 | | ' | 2.430.28 |
| 10764807 | NJS/71076153 | 04/07/11 | | | | 17.090.48 | | | 17.090.48 |
| 10764907 | NJS/71076218 | 04/12/11 | | | | 1.942.80 | | | 1.942.80 |
| 10765007 | NJS/71076246 | 04/13/11 | | | | 460.06 | | | 460.06 |
| 10765107 | NJS/71076274 | 04/14/11 | | | | 26.66 | | | 26.66 |
| 10765207 | NJS/71076275 | 04/14/11 | | | | 156.20 | | | 156.20 |
| 10765307 | NJS/71076302 | 04/18/11 | | | | 888.12 | | | 888.12 |
| 10765407 | NJS/71076357 | 04/20/11 | | | | 26.66 | | | 26.66 |
| 10765507 | NJS/71076358 | 04/20/11 | | | | 411.16 | | | 411.16 |
| 10765607 | NJS/71076399 | 04/22/11 | | | | 47.76 | | | 47.76 |
| 10765707 | NJS/71076489 | 04/29/11 | | | 393.66 | | | | 393.66 |

Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 10765807 | NJS/71076576 | 05/03/11 | | | 117.81 | | | | 117.81 |
| 10763707 | NJS/71076614 | 05/05/11 | | | 5,057.91 | | | | 5,057.91 |
| 10779407 | NJS/71076964 | 05/25/11 | | 310.66 | | | | | 310.66 |
| | | TOTAL | 0.00 | 310.66 | 5,569.38 | 23,830.69 | 5,821.50 | 133,220.32 | 168,752.55 * |

2014330013 ***** Certified Products, Inc. ***** 400 West Side Avenue Jersey City, NJ 07305

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10717807 | 117480 | 01/29/11 | | | | | | 1,256.20 | 1,256.20 |
| 10717907 | 117481 | 01/29/11 | | | | | | 1,229.12 | 1,229.12 |
| 10718007 | 200008 | 02/21/11 | | | | | | 521.42 | 521.42 |
| 10718107 | 200009 | 02/21/11 | | | | | | 570.00 | 570.00 |
| 10718207 | 200010 | 02/21/11 | | | | | | 243.15 | 243.15 |
| 10718307 | 200214 | 03/02/11 | | | | | 895.00 | | 895.00 |
| 10752807 | 200465 | 03/30/11 | | | | 2,275.00 | | | 2,275.00 |
| 10752907 | 200473 | 03/30/11 | | | | 1,109.10 | | | 1,109.10 |
| 10753007 | 207748 | 03/31/11 | | | | 168.30 | | | 168.30 |
| 10760507 | 207727 | 03/31/11 | | | | 776.26 | | | 776.26 |
| 10753107 | 207944 | 04/20/11 | | | | 389.40 | | | 389.40 |
| 10792707 | 207945 | 04/20/11 | | | | 1,109.10 | | | 1,109.10 |
| 10748207 | 207988 | 04/22/11 | | | | 515.75 | | | 515.75 |
| 10753207 | 207987 | 04/22/11 | | | | 374.22 | | | 374.22 |
| 10760007 | 208166 | 05/05/11 | | | 586.74 | | | | 586.74 |
| 10760107 | 208167 | 05/05/11 | | | 586.74 | | | | 586.74 |
| | | TOTAL | 0.00 | 0.00 | 1,173.48 | 6,717.13 | 895.00 | 3,819.89 | 12,605.50 * |

8006452259 ***** Chartis ***** 22427 Network Place Chicago, IL 60673-1224

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10549707 | WC7442113 | 07/08/11 | 1,913.00 | | | | | | 1,913.00 |
| | | TOTAL | 1,913.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,913.00 * |

8003366675 ***** Chase Automotive Finance ***** P.O. Box 78068 Phoenix, AZ 85062

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10788207 | 1062914361400 | 06/16/11 | | 1,261.07 | | | | | 1,261.07 |
| | | TOTAL | 0.00 | 1,261.07 | 0.00 | 0.00 | 0.00 | 0.00 | 1,261.07 * |

2128094952 ***** Chase Card Services ***** PO Box 15153 Wilmington, DE 19886-5153

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10786407 | 44666 | 06/05/11 | | 786.89 | | | | | 786.89 |
| | | TOTAL | 0.00 | 786.89 | 0.00 | 0.00 | 0.00 | 0.00 | 786.89 * |

8008332700 ***** Cooperative ***** Communications Inc. P.O. Box 903 Belleville, NJ 07109-0903

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10787007 | 799-000-0148 | 06/07/11 | | 592.27 | | | | | 592.27 |
| | | TOTAL | 0.00 | 592.27 | 0.00 | 0.00 | 0.00 | 0.00 | 592.27 * |

2407780163 ***** Corvedia, Inc. ***** 20010 Century Blvd. Suite 105 Germantown, MD 20874

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 10795207 | 110150780 | 05/31/11 | | 49.52 | | | | | 49.52 |
| | | TOTAL | 0.00 | 49.52 | 0.00 | 0.00 | 0.00 | 0.00 | 49.52 * |

Cummins Metropower Inc. on next page

American Stevedoring Ltd. (7)

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 7188922400 ***** Cummins Metropower Inc. ***** LK BX 510277   Philadelphia, PA 19175 | | | | | | | | | |
| 10793507 | 003-77686 | 09/14/10 | | | | | | 2,117.31 | 2,117.31 |
| 10718407 | 003-78308 | 09/23/10 | | | | | | 3,439.14 | 3,439.14 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,556.45 | 5,556.45 * |
| | | | | | | | | | |
| 8005315000 ***** Directv ***** P.O. Box 60036   Los Angeles, CA 90060 | | | | | | | | | |
| 10795307 | 15337205011 | 06/10/11 | | 86.99 | | | | | 86.99 |
| | | TOTAL | 0.00 | 86.99 | 0.00 | 0.00 | 0.00 | 0.00 | 86.99 * |
| | | | | | | | | | |
| 2016352111 ***** Donahue & Company ***** 354 Main Street   Chatham, NJ 07928 | | | | | | | | | |
| 10727207 | Corp tax 2007 | 08/27/08 | | | | | | 7,050.00 | 7,050.00 |
| 10727407 | rh 4th qtr 09 & g/l | 02/28/10 | | | | | | 2,450.00 | 2,450.00 |
| 10727507 | Install # 3 | 07/06/10 | | | | | | 5,000.00 | 5,000.00 |
| 10727607 | WFC assistance | 07/12/10 | | | | | | 400.00 | 400.00 |
| 10727707 | WFC audit & legal | 07/15/10 | | | | | | 700.00 | 700.00 |
| 10727807 | Beverage Trust | 08/04/10 | | | | | | 4,145.00 | 4,145.00 |
| 10727907 | RH 1st qtr 10 | 10/07/10 | | | | | | 2,330.00 | 2,330.00 |
| 10728007 | NJ 1st qtr 10 | 10/07/10 | | | | | | 2,435.00 | 2,435.00 |
| 10728107 | SFC NY/NJ/VA non res | 10/11/10 | | | | | | 3,950.00 | 3,950.00 |
| 10728207 | NJ 2nd qtr 10 | 11/10/10 | | | | | | 2,120.00 | 2,120.00 |
| 10728307 | RH 2nd qtr 10 | 11/10/10 | | | | | | 2,370.00 | 2,370.00 |
| 10728407 | corp attny/grantor | 03/03/11 | | | | | 1,163.44 | | 1,163.44 |
| 10728507 | Install #1 | 03/16/11 | | | | | 5,000.00 | | 5,000.00 |
| 10781007 | Bev Trust | 05/23/11 | | | 1,768.75 | | | | 1,768.75 |
| 10781107 | WFC correspondence | 05/24/11 | | | 1,282.35 | | | | 1,282.35 |
| 10795607 | Installment # 2 | 06/06/11 | | 5,000.00 | | | | | 5,000.00 |
| 10795507 | NYPA Audit | 06/15/11 | | 7,500.00 | | | | | 7,500.00 |
| | | TOTAL | 0.00 | 12,500.00 | 3,051.10 | 0.00 | 6,163.44 | 32,950.00 | 54,664.54 * |
| | | | | | | | | | |
| 9086131416 ***** E.G. Electrical ***** 162 Prigmore Street   East Brunswick, NJ 08816 | | | | | | | | | |
| 10729107 | 3591 | 01/12/11 | | | | | | 4,040.32 | 4,040.32 |
| 10729207 | 3603 | 03/10/11 | | | | | 1,373.79 | | 1,373.79 |
| 10729307 | 3604 | 03/10/11 | | | | | 4,025.34 | | 4,025.34 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 5,399.13 | 4,040.32 | 9,439.45 * |
| | | | | | | | | | |
| 7187285800 ***** Edmar Cleaning Corp. ***** 50-05 47th Avenue   Woodside, NY 11377-5442 | | | | | | | | | |
| 10752507 | 106994 | 04/13/11 | | | | 1,527.95 | | | 1,527.95 |
| 10791607 | 110108 | 05/18/11 | | | 1,670.18 | | | | 1,670.18 |
| 10791707 | 110159 | 05/18/11 | | | 58.56 | | | | 58.56 |
| | | TOTAL | 0.00 | 0.00 | 1,728.74 | 1,527.95 | 0.00 | 0.00 | 3,256.69 * |
| | | | | | | | | | |
| 9106684848 ***** Electrical South Inc. ***** 23427 Network Place   Chicago, IL 60673 | | | | | | | | | |
| 10728607 | 1482041 | 10/19/10 | | | | | | -412.32 | -412.32 |
| 10728707 | 1495744 | 12/29/10 | | | | | | 46.18 | 46.18 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -366.14 | -366.14 * |

Emergency Physicians of on next page

Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 8668987142 ***** Emergency Physicians of ***** Saint Clares LLC PO Box 51028 Newark, NJ 07101-5128 | | | | | | | | | |
| 10779007 | J.Sea1731*0029777091 | 02/06/11 | | | | | | 198.00 | 198.00 |
| | | TOTAL | .0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 198.00 | 198.00 * |
| 7182578470 ***** Energy Fueling Systems ***** 898 East 92nd Street Brooklyn, NY 11236 | | | | | | | | | |
| 10729007 | 1031 | 03/15/11 | | | | | 1,252.06 | | 1,252.06 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 1,252.06 | 0.00 | 1,252.06 * |
| 8005521223 ***** Exxon Mobile / GECC ***** P.O. Box 688938 Des Moines, IA 50368 | | | | | | | | | |
| 10793807 | 7187859620633775105 | 05/24/11 | | | 262.15 | | | | 262.15 |
| | | TOTAL | 0.00 | 0.00 | 262.15 | 0.00 | 0.00 | 0.00 | 262.15 * |
| 7322878877 ***** F & S Tire Corp. Inc. ***** P.O. Box 1352 Edison, NJ 08818 | | | | | | | | | |
| 10776407 | 292318 | 07/22/10 | | | | | | 9,154.84 | 9,154.84 |
| 10778407 | 296875 Balance | 10/09/10 | | | | | | 11,634.97 | 11,634.97 |
| 10729907 | 297204 | 10/16/10 | | | | | | 7,764.24 | 7,764.24 |
| 10730007 | 298405 | 11/06/10 | | | | | | 11,144.41 | 11,144.41 |
| 10730107 | 840176 | 11/15/10 | | | | | | 1,375.61 | 1,375.61 |
| 10730207 | 840249 | 11/18/10 | | | | | | 942.11 | 942.11 |
| 10730307 | 840529 | 12/09/10 | | | | | | 1,628.92 | 1,628.92 |
| 10730407 | 300681 | 01/06/11 | | | | | | 9,176.27 | 9,176.27 |
| 10730507 | 300789 | 01/08/11 | | | | | | 368.67 | 368.67 |
| 10730607 | 300853 | 01/10/11 | | | | | | 3,618.47 | 3,618.47 |
| 10730707 | 301062 | 01/15/11 | | | | | | 1,336.42 | 1,336.42 |
| 10730807 | 841078 | 01/20/11 | | | | | | 461.63 | 461.63 |
| 10730907 | 301388 | 01/22/11 | | | | | | 2,645.88 | 2,645.88 |
| 10731007 | 841150 | 01/25/11 | | | | | | 834.10 | 834.10 |
| 10731107 | 301779 | 02/01/11 | | | | | | 329.56 | 329.56 |
| 10731207 | 841583 | 02/24/11 | | | | | 471.06 | | 471.06 |
| 10731307 | 302894 | 02/26/11 | | | | | 4,707.10 | | 4,707.10 |
| 10731407 | 302921 | 02/28/11 | | | | | 13,521.73 | | 13,521.73 |
| 10731507 | 303745 | 03/17/11 | | | | | 1,137.02 | | 1,137.02 |
| 10731607 | 842012 | 03/23/11 | | | | | 627.78 | | 627.78 |
| 10731707 | 304171 | 03/24/11 | | | | | 2,307.12 | | 2,307.12 |
| 10746607 | 842344 | 04/11/11 | | | | 868.46 | | | 868.46 |
| 10751707 | 305214 | 04/12/11 | | | | 1,427.80 | | | 1,427.80 |
| 10748107 | 305422 | 04/16/11 | | | | 4,124.97 | | | 4,124.97 |
| 10766607 | 306135 | 04/29/11 | | | 253.43 | | | | 253.43 |
| 10766707 | 306507 | 05/06/11 | | | 8,696.02 | | | | 8,696.02 |
| 10779907 | 307285 | 05/20/11 | | | 2,327.98 | | | | 2,327.98 |
| 10780007 | 307365 | 05/23/11 | | | 2,753.86 | | | | 2,753.86 |
| 10791807 | 307923 | 06/03/11 | | 3,385.83 | | | | | 3,385.83 |
| | | TOTAL | 0.00 | 3,385.83 | 14,031.29 | 6,421.23 | 22,771.81 | 62,416.10 | 109,026.26 * |
| 8002385355 ***** FedEx ***** P.O. Box 371461 Pittsburgh, PA 15250-7461 | | | | | | | | | |
| 10768207 | 7-495-40915 | 05/16/11 | | | 82.23 | | | | 82.23 |
| | | TOTAL | 0.00 | 0.00 | 82.23 | 0.00 | 0.00 | 0.00 | 82.23 * |

Fleetweather Inc. on next page

American Stevedoring Ltd. (7)

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 9142268300 ***** Fleetweather Inc. ***** Compu-Weather 2566 Route 52 Hopewell Junct.. NY 12533 | | | | | | | | | |
| 10746407 | 4864 | 04/05/11 | | | | 690.00 | | | 690.00 |
| 10767007 | 5136 | 05/04/11 | | | 690.00 | | | | 690.00 |
| 10792507 | 5409 | 06/03/11 | | 690.00 | | | | | 690.00 |
| | | TOTAL | 0.00 | 690.00 | 690.00 | 690.00 | 0.00 | 0.00 | 2,070.00 * |
| 8009374322 ***** GE Capital ***** P.O. Box 642555 Pittsburgh. PA 15264-2555 | | | | | | | | | |
| 9081007 | 4161577-005 | 07/01/11 | 17,328.14 | | | | | | 17.328.14 |
| | | TOTAL | 17,328.14 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17.328.14 * |
| 7188557200 ***** Golten Marine Co. Inc. ***** 160 Van Brunt Street Brooklyn. NY 11231 | | | | | | | | | |
| 10732607 | 34484 | 07/30/10 | | | | | | 13.718.25 | 13.718.25 |
| 10732707 | 34485 | 07/30/10 | | | | | | 5.487.30 | 5.487.30 |
| 10732807 | 34486 | 07/30/10 | | | | | | 1,175.85 | 1.175.85 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,381.40 | 20.381.40 * |
| 7184991500 ***** Grainger ***** Dept 545 - 824112288 Palatine, IL 60038-0001 | | | | | | | | | |
| 10792207 | 9554844895 | 06/07/11 | | 235.40 | | | | | 235.40 |
| | | TOTAL | 0.00 | 235.40 | 0.00 | 0.00 | 0.00 | 0.00 | 235.40 * |
| 8666540047 ***** HOP Fleet Fueling ***** 178 Bruckner Blvd. Bronx, NY 10454 | | | | | | | | | |
| 10751207 | 8598090 | 04/15/11 | | | | 9,725.41 | | | 9,725.41 |
| 10751607 | 8599486 | 04/18/11 | | | | 11,834.22 | | | 11.834.22 |
| 10758407 | 8608439 | 04/25/11 | | | 7,890.70 | | | | 7,890.70 |
| 10758307 | 8666799 | 05/02/11 | | | 17,874.39 | | | | 17,874.39 |
| 10778007 | 8676694 | 05/09/11 | | | 8,117.01 | | | | 8.117.01 |
| 10779107 | 8691650 | 05/16/11 | | | 13,682.65 | | | | 13.682.65 |
| 10779207 | 8700708 | 05/24/11 | | | 8,116.32 | | | | 8.116.32 |
| 10789207 | 8702204 | 05/25/11 | | 9.158.60 | | | | | 9.158.60 |
| 10789407 | 8744656 | 05/31/11 | | 12,929.17 | | | | | 12.929.17 |
| 10789307 | 8751390 | 06/06/11 | | 10,072.08 | | | | | 10,072.08 |
| | | TOTAL | 0.00 | 32,159.85 | 55,681.07 | 21,559.63 | 0.00 | 0.00 | 109,400.55 * |
| 8002326535 ***** Hale Trailer ***** P.O. Box 1400 Voorhees, NJ 08043 | | | | | | | | | |
| 10758107 | 600877 | 05/02/11 | | | 2,600.00 | | | | 2.600.00 |
| 10780807 | 612541 | 06/01/11 | | 2,600.00 | | | | | 2,600.00 |
| | | TOTAL | 0.00 | 2,600.00 | 2,600.00 | 0.00 | 0.00 | 0.00 | 5.200.00 * |
| 9136829000 ***** Henke Manufacturing Corp. ***** Box 79 3070 Wilson Leavenworth. KS 66048 | | | | | | | | | |
| 10734007 | 3049487-RI | 02/14/11 | | | | | | 2,748.07 | 2,748.07 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.748.07 | 2.748.07 * |

Hillwick Inc. on next page

American Stevedoring Ltd. (7)

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31-60 Days | 61-90 Days | 91-120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 9088500296 ***** Hillwick Inc. ***** 60 Newburgh Roadeet Hackettstown, NJ 07840 | | | | | | | | | |
| 10733907 | 4076 | 02/02/11 | | | | | | 1,986.06 | 1,986.06 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,986.06 | 1,986.06 * |
| 7182382353 ***** Intelligent Security ***** Solutions LLC 87 74th Street Brooklyn, NY 11209 | | | | | | | | | |
| 10795407 | 1-003 | 06/06/11 | | 500.00 | | | | | 500.00 |
| | | TOTAL | 0.00 | 500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.00 * |
| 7189373783 ***** Jellinek Auto Radiator ***** 38-59 9th Street Long Island Cty. NY 11101-6109 | | | | | | | | | |
| 10791407 | A119715 | 05/31/11 | | 120.00 | | | | | 120.00 |
| | | TOTAL | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 * |
| 9148889999 ***** Keith Catucci ***** 257 Watermelon Hill Rd. Mahopac, NY 10541 | | | | | | | | | |
| 10796407 | medical reimburse | 06/23/10 | | | | | | 563.10 | 563.10 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 563.10 | 563.10 * |
| 3124780900 ***** Labelmaster ***** American Labelmark Co. P.O. Box 46402 Chicago, IL 60646-0402 | | | | | | | | | |
| 10766307 | K72835-001 | 04/29/11 | | | 461.62 | | | | 461.62 |
| | | TOTAL | 0.00 | 0.00 | 461.62 | 0.00 | 0.00 | 0.00 | 461.62 * |
| 7136721601 ***** Liebherr Nenzing Crane Co ***** 11801 NW 100th Road Ste # 17 Medley (Miami), FL 33178 | | | | | | | | | |
| 10734507 | INS/21020802 | 02/26/10 | | | | | | 25,162.80 | 25,162.80 |
| 10734607 | INS/21023039 | 09/17/10 | | | | | | 640.00 | 640.00 |
| 10734707 | INS/21023068 | 09/22/10 | | | | | | 3,771.85 | 3,771.85 |
| 10734807 | INE/26004581 | 09/28/10 | | | | | | 1,180.58 | 1,180.58 |
| 10735007 | INS/21023213 | 10/04/10 | | | | | | 10,956.50 | 10,956.50 |
| 10735107 | INS/21023231 | 10/05/10 | | | | | | 647.70 | 647.70 |
| 10734907 | INS/21023285 | 10/08/10 | | | | | | 3,405.64 | 3,405.64 |
| 10735207 | INS/21024645 | 01/31/11 | | | | | | 22,803.45 | 22,803.45 |
| 10735307 | INS/21024646 | 01/31/11 | | | | | | 2,786.12 | 2,786.12 |
| 10760307 | INE/26005097 | 04/26/11 | | | 20,538.35 | | | | 20,538.35 |
| 10777207 | INE/26005187 | 05/26/11 | | 525.80 | | | | | 525.80 |
| | | TOTAL | 0.00 | 525.80 | 20,538.35 | 0.00 | 0.00 | 71,354.64 | 92,418.79 * |
| 7324527865 ***** MILA Managed Health Care ***** Trust Fund (Tonnage) P.O. Box 5929 Hicksville, NY 11802-5929 | | | | | | | | | |
| 10719307 | Milaint-69234/351 | 04/19/11 | | | | 1,341.04 | | | 1,341.04 |
| 10719407 | NILABD-69234/351 | 04/19/11 | | | | 10.00 | | | 10.00 |
| 10780107 | Milaint-69774/351 | 06/01/11 | | 1,459.86 | | | | | 1,459.86 |
| 10787307 | Milaint-69899/351 | 06/08/11 | | 1,357.80 | | | | | 1,357.80 |
| | | TOTAL | 0.00 | 2,817.66 | 0.00 | 1,351.04 | 0.00 | 0.00 | 4,168.70 * |
| 7188322488 ***** Manning Electric Inc. ***** 154 27th Street Brooklyn, NY 11232 | | | | | | | | | |
| 10736207 | F7187 | 09/30/10 | | | | | | 2,674.05 | 2,674.05 |
| 10736307 | F7470 | 10/26/10 | | | | | | 2,316.00 | 2,316.00 |
| 10736407 | F7560 | 11/04/10 | | | | | | 2,359.50 | 2,359.50 |
| 10736507 | F6710 | 11/10/10 | | | | | | 202.00 | 202.00 |
| 10736607 | F8084 | 01/31/11 | | | | | | 2,316.00 | 2,316.00 |

Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 10736707 | F8431 | 02/10/11 | | | | | | 95.50 | 95.50 |
| 10736807 | F8515 | 02/18/11 | | | | | | 237.44 | 237.44 |
| 10736907 | F8684 | 03/07/11 | | | | | 1,100.00 | | 1,100.00 |
| 10752107 | F8610 | 04/11/11 | | | | 227.90 | | | 227.90 |
| 10761207 | F9066 | 04/14/11 | | | | 769.25 | | | 769.25 |
| 10765907 | F9057 | 04/14/11 | | | | 1,544.00 | | | 1,544.00 |
| 10779507 | F9182 | 05/23/11 | | | 772.00 | | | | 772.00 |
| | | TOTAL | 0.00 | 0.00 | 772.00 | 2,541.15 | 1,100.00 | 10,200.49 | 14,613.64 * |

8007822036 ***** Maryland Assoc of C.P.A's ***** P.O. Box 37513 Baltimore. MD 21298-8543

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 10796507 | 2011-2012 Dues | 06/23/11 | | 280.00 | | | | | 280.00 |
| | | TOTAL | 0.00 | 280.00 | 0.00 | 0.00 | 0.00 | 0.00 | 280.00 * |

5169337221 ***** Mash City Business System ***** 1 Enterprise Place - Suite E Hicksville. NY 11801

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 10737507 | 31756 | 03/22/11 | | | | | 1,114.00 | | 1,114.00 |
| 10737707 | 582 | 04/11/11 | | | | 250.80 | | | 250.80 |
| 10737707 | 31695 | 04/13/11 | | | | 175.00 | | | 175.00 |
| 10737807 | 31830 | 04/20/11 | | | | 720.00 | | | 720.00 |
| 10737907 | 31831 | 04/20/11 | | | | 5,936.00 | | | 5,936.00 |
| 10759107 | 787 | 05/05/11 | | | 545.70 | | | | 545.70 |
| 10783107 | 31999 | 05/25/11 | | 175.00 | | | | | 175.00 |
| 10775707 | 928 | 05/26/11 | | 239.90 | | | | | 239.90 |
| 10786007 | 32037 | 06/06/11 | | 325.00 | | | | | 325.00 |
| | | TOTAL | 0.00 | 739.90 | 545.70 | 7,081.80 | 1,114.00 | 0.00 | 9,481.40 * |

2019413470 ***** Metro Commercial Fuels ***** A HOP Energy Company 1011 Hudson Ave. Ridgefield. NJ 07657

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 10748707 | 8598859 | 04/18/11 | | | | 2,073.75 | | | 2,073.75 |
| 10748807 | 8603533 | 04/21/11 | | | | 6,168.02 | | | 6,168.02 |
| 10758507 | 8634669 | 04/26/11 | | | 2,037.19 | | | | 2,037.19 |
| 10758707 | 8699188 | 04/28/11 | | | 4,435.65 | | | | 4,435.65 |
| 10758607 | 8666208 | 05/02/11 | | | 2,718.84 | | | | 2,718.84 |
| 10777707 | 8669750 | 05/05/11 | | | 3,364.72 | | | | 3,364.72 |
| 10777807 | 8676141 | 05/09/11 | | | 1,641.52 | | | | 1,641.52 |
| 10777907 | 8680390 | 05/12/11 | | | 9,694.33 | | | | 9,694.33 |
| 10777607 | 8688343 | 05/16/11 | | | 2,460.95 | | | | 2,460.95 |
| 10777507 | 8695351 | 05/19/11 | | | 4,848.10 | | | | 4,848.10 |
| 10779307 | 8698373 | 05/23/11 | | | 1,576.45 | | | | 1,576.45 |
| 10789607 | 8738655 | 05/26/11 | | 4,148.68 | | | | | 4,148.68 |
| 10789507 | 8742090 | 05/31/11 | | 1,589.13 | | | | | 1,589.13 |
| 10789707 | 8745983 | 06/02/11 | | 8,039.35 | | | | | 8,039.35 |
| 10789807 | 8750941 | 06/06/11 | | 1,776.76 | | | | | 1,776.76 |
| | | TOTAL | 0.00 | 15,553.92 | 32,777.75 | 8,241.77 | 0.00 | 0.00 | 56,573.44 * |

7188756450 ***** Moen Electric Corp. ***** 151 Hamilton Ave. Brooklyn. NY 11231

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 10760207 | 14871 | 04/29/11 | | | 936.00 | | | | 936.00 |
| | | TOTAL | 0.00 | 0.00 | 936.00 | 0.00 | 0.00 | 0.00 | 936.00 * |

Monmouth Telecom on next page

# Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 7327041000 ***** Monmouth Telecom ***** P.O. Box 8656  Red Bank, NJ  07701 | | | | | | | | | |
| 10786907 | 171470 | 06/01/11 | | 442.07 | | | | | 442.07 |
| | | TOTAL | 0.00 | 442.07 | 0.00 | 0.00 | 0.00 | 0.00 | 442.07 * |
| | | | | | | | | | |
| 2124774430 ***** NYC Dept. of Finance ***** Parking Violations Church St S P.O.Box 3600 New York, NY  10008 | | | | | | | | | |
| 10781307 | K023708428/X23N18 | 05/25/11 | | 55.00 | | | | | 55.00 |
| | | TOTAL | 0.00 | 55.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55.00 * |
| | | | | | | | | | |
| 2123236057 ***** NYSA - Tonnage Assessment ***** 45 Broadway 5th Floor New York, NY  10006 | | | | | | | | | |
| 10786307 | North Sea 001 | 05/13/11 | | | 3,910.00 | | | | 3,910.00 |
| | | TOTAL | 0.00 | 0.00 | 3,910.00 | 0.00 | 0.00 | 0.00 | 3,910.00 * |
| | | | | | | | | | |
| 2123236056 ***** NYSA Container Assessment ***** 45 Broadway 5th Floor New York, NY  10006 | | | | | | | | | |
| 10788907 | Spica 00095 | 05/18/00 | | | | | | 20,616.00 | 20,616.00 |
| 10789007 | Spica 00096 | 05/18/00 | | | | | | 19,289.00 | 19,289.00 |
| 10788507 | Vega Nikolas 00071 | 05/11/11 | | | 12,539.00 | | | | 12,539.00 |
| 10788607 | Vega Nikolas 00072 | 05/11/11 | | | 20,052.00 | | | | 20,052.00 |
| | | TOTAL | 0.00 | 0.00 | 32,591.00 | 0.00 | 0.00 | 39,905.00 | 72,496.00 * |
| | | | | | | | | | |
| 7324527800 ***** NYSA Money Market Hiring ***** Agent & Dispatchers 333 Thornall Street Suite 3A Edison, NJ  08837 | | | | | | | | | |
| 10794307 | 20117056 | 06/16/11 | | 1,187.20 | | | | | 1,187.20 |
| | | TOTAL | 0.00 | 1,187.20 | 0.00 | 0.00 | 0.00 | 0.00 | 1,187.20 * |
| | | | | | | | | | |
| 7324527822 ***** NYSA PPGU Fringe Benefits ***** 333 Thornall Street Suite 3A Edison, NJ  08837 | | | | | | | | | |
| 10750707 | 20115203 | 04/26/11 | | | 10,920.00 | | | | 10,920.00 |
| 10757807 | 20115210 | 05/03/11 | | | 10,346.00 | | | | 10,346.00 |
| 10766807 | 20115216 | 05/11/11 | | | 11,088.00 | | | | 11,088.00 |
| 10783407 | 20115223 | 05/19/11 | | | 10,528.00 | | | | 10,528.00 |
| 10782907 | 20115230 | 05/24/11 | | | 11,396.00 | | | | 11,396.00 |
| 10794607 | 20115237 | 06/02/11 | | 10,528.00 | | | | | 10,528.00 |
| 10787207 | 20115244 | 06/08/11 | | 10,794.00 | | | | | 10,794.00 |
| 10794707 | 20115251 | 06/15/11 | | 10,542.00 | | | | | 10,542.00 |
| | | TOTAL | 0.00 | 31,864.00 | 54,278.00 | 0.00 | 0.00 | 0.00 | 86,142.00 * |
| | | | | | | | | | |
| 7324527823 ***** NYSA PPGU Money Purchase ***** Pension Fund & Plan 333 Thornal Street / Suite 3A Edison, NJ  08837 | | | | | | | | | |
| 10757707 | 20116210 | 05/03/11 | | | 982.80 | | | | 982.80 |
| 10766907 | 20116216 | 05/11/11 | | | 1,063.15 | | | | 1,063.15 |
| 10783307 | 20116223 | 05/19/11 | | | 1,021.65 | | | | 1,021.65 |
| 10782807 | 20116230 | 05/24/11 | | | 1,091.05 | | | | 1,091.05 |
| 10794407 | 20116237 | 06/02/11 | | 1,005.65 | | | | | 1,005.65 |
| 10787107 | 20116244 | 06/08/11 | | 1,032.95 | | | | | 1,032.95 |
| 10794507 | 20116251 | 06/15/11 | | 1,022.85 | | | | | 1,022.85 |
| | | TOTAL | 0.00 | 3,061.45 | 4,158.65 | 0.00 | 0.00 | 0.00 | 7,220.10 * |

NYSA-ILA Cont Royalty Fnd on next page

American Stevedoring Ltd. (7)

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31-60 Days | 61-90 Days | 91-120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 2123236055 ***** NYSA-ILA Cont Royalty Fnd ***** 45 Broadway Fifth Floor New York, NY 10006-3007 | | | | | | | | | |
| 10788707 | Spica 00095 | 05/18/00 | | | | | | 5,274.00 | 5,274.00 |
| 10788807 | Spica 00096 | 05/18/00 | | | | | | 5,720.00 | 5,720.00 |
| 10788307 | Vega Nikolas 00071 | 05/11/11 | | | 3,760.00 | | | | 3,760.00 |
| 10788407 | Vega Nikolas 00072 | 05/11/11 | | | 5,212.00 | | | | 5,212.00 |
| | | TOTAL | 0.00 | 0.00 | 8,972.00 | 0.00 | 0.00 | 10,994.00 | 19,966.00 * |
| 2123236045 ***** NYSA-ILA Fringe Benefits ***** Escrow Fund 45 Broadway - Fifth Floor New York, NY 10006-3007 | | | | | | | | | |
| 10757607 | IC:3505 | 05/03/11 | | | 8,985.62 | | | | 8,985.62 |
| 10767307 | IC:3516 | 05/05/11 | | | 1,472.82 | | | | 1,472.82 |
| 10782507 | IR:3530 | 05/12/11 | | | 2,440.99 | | | | 2,440.99 |
| | | TOTAL | 0.00 | 0.00 | 12,899.43 | 0.00 | 0.00 | 0.00 | 12,899.43 * |
| 2127858300 ***** National Cargo Bureau ***** 17 Battery Place - Suite 1232 New York, NY 10004 | | | | | | | | | |
| 10786707 | 10631488 | 05/24/11 | | | 321.00 | | | | 321.00 |
| | | TOTAL | 0.00 | 0.00 | 321.00 | 0.00 | 0.00 | 0.00 | 321.00 * |
| 7186434050 ***** National Grid / Keyspan ***** P.O. Box 29212 Brooklyn, NY 11202-9212 | | | | | | | | | |
| 10767607 | 01020-08773 | 05/16/11 | | | 1,432.85 | | | | 1,432.85 |
| 10767707 | 01020-08002 | 05/16/11 | | | 935.04 | | | | 935.04 |
| 10781407 | 01020-07304 | 05/16/11 | | | 855.90 | | | | 855.90 |
| 10793607 | 01020-08002 | 06/15/11 | | 552.40 | | | | | 552.40 |
| 10793707 | 01020-08773 | 06/15/11 | | 137.09 | | | | | 137.09 |
| 10796107 | 01020-07304 | 06/16/11 | | 67.84 | | | | | 67.84 |
| | | TOTAL | 0.00 | 757.33 | 3,223.79 | 0.00 | 0.00 | 0.00 | 3,981.12 * |
| 2126325238 ***** New York Electrical Power ***** 1221 Ave. of the Americas New York, NY 10020 | | | | | | | | | |
| 10740107 | IV00591 | 05/31/10 | | | | | | 3,860.00 | 3,860.00 |
| 10740207 | IV00719 | 09/30/10 | | | | | | 3,200.00 | 3,200.00 |
| 10740307 | IV00821 | 11/30/10 | | | | | | 1,306.50 | 1,306.50 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,366.50 | 8,366.50 * |
| 2123236600 ***** New York Shipping Assoc. ***** 333 Thornall Street Suite 3A Edison, NJ 08837 | | | | | | | | | |
| 10738807 | 20110284 | 03/31/11 | | | | 6,698.50 | | | 6,698.50 |
| 10738907 | 20110297 | 04/07/11 | | | | 7,838.50 | | | 7,838.50 |
| 10739007 | 20110308 | 04/14/11 | | | | 7,682.00 | | | 7,682.00 |
| 1071B807 | 20110318 | 04/21/11 | | | | 5,831.00 | | | 5,831.00 |
| 10750907 | 20110333 | 04/28/11 | | | 7,592.00 | | | | 7,592.00 |
| 10759907 | 20110343 | 05/05/11 | | | 5,340.50 | | | | 5,340.50 |
| 10768407 | 20110353 | 05/12/11 | | | 7,984.00 | | | | 7,984.00 |
| 10783207 | 20110364 | 05/19/11 | | | 5,692.50 | | | | 5,692.50 |
| 10783007 | 20110376 | 05/25/11 | | 8,518.00 | | | | | 8,518.00 |
| 10794907 | 20110389 | 06/02/11 | | 6,062.00 | | | | | 6,062.00 |
| 10794807 | 20110401 | 06/09/11 | | 7,644.00 | | | | | 7,644.00 |
| 10795007 | 20110413 | 06/16/11 | | 4,832.00 | | | | | 4,832.00 |
| | | TOTAL | 0.00 | 27,056.00 | 26,609.00 | 28,050.00 | 0.00 | 0.00 | 81,715.00 * |

New York Terminal on next page

American Stevedoring Ltd. (7)

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31- 60 Days | 61- 90 Days | 91- 120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 9082336974 ***** New York Terminal ***** Conference P.O. Box 875 Chatham, NJ 07928 | | | | | | | | | |
| 10740007 | April 2011 | 04/01/11 | | | | 1,000.00 | | | 1,000.00 |
| 10747607 | May 2011 | 05/01/11 | | | 1,000.00 | | | | 1,000.00 |
| 10782707 | June 2011 | 06/01/11 | | 1,000.00 | | | | | 1,000.00 |
| | | TOTAL | 0.00 | 1,000.00 | 1,000.00 | 1,000.00 | 0.00 | 0.00 | 3,000.00 * |
| 9083599599 ***** Northeast Great Dane ***** P.O. Box 34760 Newark, NJ 07189 | | | | | | | | | |
| 10763607 | 1-211160262 | 04/26/11 | | | 213.20 | | | | 213.20 |
| | | TOTAL | 0.00 | 0.00 | 213.20 | 0.00 | 0.00 | 0.00 | 213.20 * |
| 223833558 ***** PJK  Services, LLC ***** 777 Nut Swamp Rd. Red Bank, NJ 07701 | | | | | | | | | |
| 10742507 | 10-444 | 12/01/10 | | | | | | 580.00 | 580.00 |
| 10742607 | 10-446 | 12/09/10 | | | | | | 1,180.00 | 1,180.00 |
| 10792607 | 11-463 | 06/14/11 | | 2,135.00 | | | | | 2,135.00 |
| | | TOTAL | 0.00 | 2,135.00 | 0.00 | 0.00 | 0.00 | 1,760.00 | 3,895.00 * |
| 7187827360 ***** Patterson Battery Inc. ***** 371 Union Avenue  Brooklyn, NY 11211 | | | | | | | | | |
| 10753307 | 63676 | 03/25/11 | | | | | 235.00 | | 235.00 |
| 10753407 | 63694 | 04/26/11 | | | 95.00 | | | | 95.00 |
| 10791907 | 64075 | 06/01/11 | | 430.00 | | | | | 430.00 |
| | | TOTAL | 0.00 | 430.00 | 95.00 | 0.00 | 235.00 | 0.00 | 760.00 * |
| 2034813469 ***** Paul's Wire Rope Inc. ***** P.O. Box 1083  Branford, CT 06405 | | | | | | | | | |
| 10741607 | 6830 | 06/22/10 | | | | | | 6,461.72 | 6,461.72 |
| 10741707 | 6794 | 06/25/10 | | | | | | 1,630.00 | 1,630.00 |
| 10741807 | 6916 | 07/27/10 | | | | | | 915.20 | 915.20 |
| 10741907 | 7656 | 12/08/10 | | | | | | 8,905.72 | 8,905.72 |
| 10742007 | 7900 | 01/31/11 | | | | | | 16,474.68 | 16,474.68 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34,387.32 | 34,387.32 * |
| 7324243888 ***** Paychex Inc. ***** P.O. Box 6921  Piscataway, NJ 08854 | | | | | | | | | |
| 10774307 | 787847 | 05/25/11 | | 518.36 | | | | | 518.36 |
| 10778907 | 789425 | 06/01/11 | | 544.23 | | | | | 544.23 |
| 10785807 | 790838 | 06/08/11 | | 534.07 | | | | | 534.07 |
| 10788007 | 792491 | 06/15/11 | | 549.16 | | | | | 549.16 |
| | | TOTAL | 0.00 | 2,145.82 | 0.00 | 0.00 | 0.00 | 0.00 | 2,145.82 * |
| 7188527000 ***** Petro/Whaleco Comm. Div. ***** 1820 Cropsey Ave.  Brooklyn, NY 11214 | | | | | | | | | |
| 10710807 | 73921 | 04/01/09 | | | | | | 11,114.13 | 11,114.13 |
| 10710707 | 509409 | 05/13/09 | | | | | | 12,434.31 | 12,434.31 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23,548.44 | 23,548.44 * |

Poland Springs Water on next page

## Aged Accounts Payable As of 06/23/11

| REF No. | CUSTOMER REFERENCE | INVOICE DATE | FUTURE | UNDER 30 Days | 31-60 Days | 61-90 Days | 91-120 Days | OVER 121 Days | TOTAL DUE |
|---|---|---|---|---|---|---|---|---|---|
| 3158906757 | ***** Verizon ***** P.O. Box 4820 | Trenton, NJ | 08650-4820 | | | | | | |
| 10780207 | M501300125-11142 | 05/22/11 | | | 482.68 | | | | 482.68 |
| 10793907 | 7188580413888223 | 05/25/11 | | 37.05 | | | | | 37.05 |
| 10794007 | 718 52223277 558 227 | 06/01/11 | | 336.61 | | | | | 336.61 |
| 10794107 | 718 852 6314 416 226 | 06/07/11 | | 366.64 | | | | | 366.64 |
| | | TOTAL | 0.00 | 740.30 | 482.68 | 0.00 | 0.00 | 0.00 | 1,222.98 * |
| | | | | | | | | | |
| 8886499500 | ***** Verizon Communications ***** PO Box 1100 | Albany, NY | 12250-0001 | | | | | | |
| 10781707 | 6285004739 | 05/19/11 | | | 87.51 | | | | 87.51 |
| | | TOTAL | 0.00 | 0.00 | 87.51 | 0.00 | 0.00 | 0.00 | 87.51 * |
| | | | | | | | | | |
| 8002271069 | ***** Verizon Wireless ***** P.O. Box 408 | Newark, NJ | 07101-0408 | | | | | | |
| 10781907 | 382433542/2573009425 | 05/15/11 | | | 80.07 | | | | 80.07 |
| 10782007 | 382433542/2573009426 | 05/15/11 | | | 487.76 | | | | 487.76 |
| 10794207 | 882155074/2580090012 | 05/28/11 | | 76.67 | | | | | 76.67 |
| 10787807 | 982530493-00001 | 06/04/11 | | 119.47 | | | | | 119.47 |
| | | TOTAL | 0.00 | 196.14 | 567.83 | 0.00 | 0.00 | 0.00 | 763.97 * |
| | | | | | | | | | |
| 7184428470 | ***** W.S. Archer Ltd. ***** P.O. Box 120255 | Staten Island, NY | 10312 | | | | | | |
| 10746307 | 6656 | 04/11/11 | | | | 490.80 | | | 490.80 |
| 10746207 | 6669 | 04/15/11 | | | | 188.37 | | | 188.37 |
| 10776807 | 6719 | 05/12/11 | | | 105.36 | | | | 105.36 |
| 10776907 | 6718 | 05/12/11 | | | 1,577.88 | | | | 1,577.88 |
| 10776707 | 6728 | 05/13/11 | | | 84.28 | | | | 84.28 |
| 10776107 | 6746 | 05/20/11 | | | 475.92 | | | | 475.92 |
| 10792307 | 6785 | 06/10/11 | | 144.00 | | | | | 144.00 |
| 10791007 | 6793 | 06/14/11 | | 142.80 | | | | | 142.80 |
| | | TOTAL | 0.00 | 286.80 | 2,243.44 | 679.17 | 0.00 | 0.00 | 3,209.41 * |
| | | | | | | | | | |
| 2127429280 | ***** Waterfront Commission of ***** New York Harbor 39 Broadway, 4th Floor New York, NY | 10006-3003 | | | | | | | |
| 10758207 | 3rd qtr 2010 penalty | 04/19/11 | | | | 11,665.35 | | | 11,665.35 |
| | | TOTAL | 0.00 | 0.00 | 0.00 | 11,665.35 | 0.00 | 0.00 | 11,665.35 * |
| | | | | | | | | | |
| 8009421805 | ***** Zee Medical, Inc. ***** P.O. Box 781433 | Indianapolis, IN | 46278-8433 | | | | | | |
| 10769307 | 0113273883 | 05/19/11 | | | 266.37 | | | | 266.37 |
| | | TOTAL | 0.00 | 0.00 | 266.37 | 0.00 | 0.00 | 0.00 | 266.37 * |

*** GRAND TOTALS ***     47,958.75  197,514.71  325,838.98  133,160.11  61,138.76     547,597.95 1,313,209.26

EXHIBIT 2

███████ ██ ██████ declare under penalty of law the following is true and accurate to the best of my knowledge.

1. I paid to American Stevedoring Inc. and Sal Catucci monies demanded from me to park at the Red Hookj Brooklyn Terminal from 1999 thru 2010 monthly, If I did not pay I could not come in the pier and park to conduct business. All payments were demanded and paid in cash only.
2. The monies were collected by persons including but not limited to Clinton Catuuci, and David _____ I paid approximately , monthly the following sums.

2000  100.00

2001  150.00

2002  225.00

2003  225.00

2004  225.00

2004  250.00

2005  250.

2006  250.00

2007  275.00

2008  275.00

2009  300.00

2010  400.00

2011  400.00

_____ CHECK IF YOU DESIRE TO BE REPRESENTED IN COURT IN AN ACTION TO SEEK RECOVERY OF THESE MONIES BY ATTORNEY STEVEN M. SCHAFFER, ESQ.

THE UNDERSIGNED RESIDES AT

ADDRESS 

TELEPHONE ████████████



5/15/13