**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

AMERICAN STEVEDORING, INC.,                     :
                                                                    :
                          Plaintiff,               :
                                                                    :          **Case No. 13-CIV-0918 (KPF)**
         -against-                                       :
                                                                    :                  **ECF Case**
INTERNATIONAL LONGSHOREMEN'S          :
ASSOCIATION, AFL-CIO, HAROLD J.           :
DAGGETT (President), STEPHEN KNOTT     :
(General Vice President), LOUIS PERNICE (Vice :
President), NYSA-ILA PENSION FUND,        :
JOSEPH CURTO (Co-Chairman), PORT POLICE :
AND GUARDS UNION, JOHN T. OATES        :
(President), NYSA-PPGU PENSION FUND,    :
MICHAEL FARRINO, and JOSEPH POLLIO,   :
                                                                    :
                          Defendants.              :

------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION TO DISMISS OF DEFENDANTS
## NYSA-ILA PENSION TRUST FUND AND ITS TRUSTEE-DEFENDANTS

Kevin Marrinan                                   Donato Caruso
John P. Sheridan                                 James R. Campbell
MARRINAN & MAZZOLA MARDON, P.C.      THE LAMBOS FIRM, LLP
26 Broadway, 17th Floor                        303 South Broadway, Suite 410
New York, New York 10004                    Tarrytown, New York 10591
Tel. (212) 425-3240                              Tel. (212) 943-2470
Fax (212) 943-6649                              Fax (212) 797-9213

*Cocounsel to Defendants NYSA-ILA Pension Trust Fund (PTF) and*
*Joseph Curto, Harold J. Daggett, Stephen Knott, and Louis Pernice*
*in their Capacity as Members of PTF's Board of Trustees*

**Dated:  October 7, 2013**

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

THE PARTIES ......................................................................................................2

FACTUAL BACKGROUND .....................................................................................4

    ASI's Demise ........................................................................................4
    MPPAA's Withdrawal-Liability Provisions .........................................6
    PTF's Claim for Withdrawal Liability.................................................7

ARGUMENT ........................................................................................................9

I.    Standards For Dismissal Motions ..........................................9

II.   ASI's RICO Claims Are Precluded Because
      MPPAA Provides The Exclusive Remedy .................................9

III.  The Doctrine of *Res Judicata*
      Precludes ASI's RICO Claims
      Against PTF and Its Trustees ...............................................11

IV.  ASI's RICO Claims Against PTF and
      Its Trustees Are Legally Deficient ........................................13

      A. No Racketeering Activities ........................................13
          1. Labor Racketeering Is Not A RICO Predicate Act ...............14
          2. ASI Has Not Properly Alleged A Claim For Extortion .......14
          3. Mismailing Notices of Withdrawal Liability
             Does Not Constitute Mail Fraud ........................................15
          4. E-Filing A Complaint Does Not Constitute Wire Fraud......18

      B. Neither PTF Nor Its Trustee-Defendants
         Can Violate § 1962(b) or § 1962(c) ..........................................19

      C. Dismissal of PTF's Trustee-Defendants....................................20

V.   The Withdrawal-Liability Action Commenced
      By PTF Was Not The Proximate Cause Of ASI's
      Ceasing Its Operations In The Port ........................................21

VI.  PTF Did Not Interfere With
      ASI's Business Relations .......................................................22

CONCLUSION.....................................................................................................24

TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214
  (S.D.N.Y. 2009)................................................................................................15

*Am. Stevedoring, Inc. v. Port Authority of NY & NJ*, F.M.C. Docket No. 10-05 .....................4, 5

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)................................................21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................9

*Auburn Med. Ctr. v. Andrus*, 9 F. Supp. 2d 1291 (M.D. Ala. 1998) ...........................................18

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................9

*Bowers v. Compania Peruana De Vapores, S.A.*, 689 F. Supp. 215
  (S.D.N.Y. 1988)................................................................................................6

*Bowers v. Transportación Maritima Mexicana, S.A.*, 901 F.2d 258
  (2d Cir. 1990)......................................................................................... *passim*

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991),
  *cert. denied*, 503 U.S. 960 (1992)................................................................9

*Danielsen v. Burnside-Ott Aviation Training Center*, 941 F.3d 1220
  (D.C. Cir. 1991) ........................................................................................10

*Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003)...................................................14

*Evans v. Dale*, 896 F.2d 975 (5th Cir. 1990) ..........................................................................12

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ...........................................................11

*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ..............................19

*First Nat'l Bank v. Gelt Funding Corp.,* 820 F. Supp. 89 (S.D.N.Y. 1993),
  *aff'd,* 27 F.3d 763 (2d Cir. 1994), *cert. denied,* 513 U.S. 1079 (1995) .......................................19

*Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137 (3d Cir. 1997)................................................6, 11

*G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233
  (S.D.N.Y. 2001)................................................................................................14

TABLE OF AUTHORITIES (CONT.)

Page(s)

**FEDERAL CASES (CONT.)**

*Godlewska v. Human Dev. Ass'n,* No. 03 cv 3985 (DGT), 2005 WL 1667852
   (E.D.N.Y. July 18, 2005) ........................................................................................................19

*Gov't of Guam v. Am. President Lines*, 28 F.3d 142 (D.C. Cir. 1994) ........................................10

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) ..........................................................21

*Holmes v. Sec. Investor Prof. Corp.*, 503 U.S. 258 (1992) ..........................................................22

*ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.,* 846 F.2d 879 (2d.Cir.1988)....................9, 10

*In re Aegis Realty Corp.*, 301 B.R. 116 (Bankr. S.D.N.Y. 2003)..................................................12

*Int'l Longshoremen's Ass'n v. Am. Stevedoring, Inc.*, E.D.N.Y.
   Case No. 12-CV-1325..................................................................................................3n, 5, 16n

*Kavowras v. N.Y. Times Co.*, 328 F.3d 50 (2d Cir. 2003) ..............................................................9

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003)..............21

*Local 857 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545 (S.D.N.Y. 1998) ...........................19

*McCulloch v. PNC Bank Inc.*, 298 F.3d 1217 (11th Cir. 2002)....................................................10

*Metropolitan Transp. Auth. v. Contini*, No. 04-cv-0104, 2005 WL 1565524
   (E.D.N.Y. July 6, 2005) ...........................................................................................................20

*Miller v. Collectron Corp.*, Case No. 98-CV-2221 (JG), 1999 WL 730981
   (E.D.N.Y. Sept. 16, 1999)........................................................................................................15

*Moran Towing Corp. v. The Barge New Jersey*, E.D.N.Y.Case No. 11 Civ. 2636 .......................5

*Mortell v. Mortell*, 887 F.2d 1322 (7th Cir. 1989)......................................................................12

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir. 1983)
   *cert. denied*, 465 U.S. 1025 (1984)...........................................................................................13

*Nakahara v. Bal*, No. 97 Civ. 2027 (DLC), 1998 WL 35123
   (S.D.N.Y. Jan. 30, 1998)..........................................................................................................18

*NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.,* S.D.N.Y.
   Case No. 12 Civ. 2506 (PAC)..............................................................................................16n, 18

## TABLE OF AUTHORITIES (CONT.)

**Page(s)**

**FEDERAL CASES (CONT.)**

*NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc*., No. 12 Civ. 2506
 (PAC), 2013 WL 1234957 (S.D.N.Y. Mar. 26, 2013)....................................................... *passim*

*NYSA-PPGU Pension Fund v. Am. Stevedoring, Inc.,*
D.N.J. Case No. 12-CV-2309 (ES) .....................................................................................21

*N.Y. State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co*.,
 848 F.2d 20 (2d Cir. 1988)................................................................................6, 9, 10

*Norman v. Niagara Mohawk Power Corp*., 873 F.2d 634 (2d Cir. 1989)..............................10, 11

*Paul v. Manufacturer's Asset Group, LLC*, No. 04-C-769-C, 2005 WL 1038672
 (W.D. Wis. March 7, 2005) ...............................................................................................12

*Pension Benefit Guar. Corp. v. R. A. Gray and Co.,* 467 U.S. 717 (1984) ...................................6

*Port Authority of NY & NJ v. Am. Stevedoring, Inc.,*
 E.D.N.Y. Case No. 10-cv-00099 (JG) .................................................................................5

*Rafferty v. Halprin*, No. 90-251, 1991 WL 148798 (S.D.N.Y. July 16, 1991)............................12

*Raney v. Allstate Ins. Co*., 370 F.3d 1086 (11th Cir. 2004)..........................................................14

*Reves v. Ernst & Young*, 507 U.S. 170 (1993).............................................................................20

*Saud v. Bank of New York*, 929 F.2d 916 (2d Cir. 1991).............................................................11

*Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003) ................................................. 14

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002)......................................................14

*von Bulow By Auersperg v. von Bulow*, 657 F. Supp. 1134 (S.D.N.Y. 1987)..............................18

*Zhu v. St. Francis Health Ctr.*, 215 Fed. App'x 717 (10th Cir. 2007) ..........................................12

**FEDERAL STATUTES**

18 U.S.C.A. § 1341 (West Supp. 2012).......................................................................................15

18 U.S.C.A. § 1343 (West Supp. 2012).......................................................................................17

TABLE OF AUTHORITIES (CONT.)

Page(s)

FEDERAL STATUTES (CONT.)

18 U.S.C.A. § 1951 (West 2000) .......................................................................14

18 U.S.C.A. § 1961 (West Supp. 2012) ..............................................................14

18 U.S.C.A. § 1962 (West Supp. 2012) ......................................................... *passim*

18 U.S.C.A. § 1964 (West 200) .........................................................................21

29 U.S.C.A. § 186 (West 1998) ...........................................................................3

29 U.S.C.A. § 1002 (West 2008) .........................................................................3

29 U.S.C.A. § 1382 (West 2009) .........................................................................6

29 U.S.C.A. § 1399 (West 2009) ....................................................................6, 15

29 U.S.C.A.  § 1401 (West 2009) ...............................................................6, 9, 10

29 U.S.C.A. § 1405 (West 2009) .......................................................................23

FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 201 ...............................................................................................9

MISCELLANEOUS

Alyssa Katz, *Off The Waterfront*, City Limits, Mar. 15, 2003 ................................. 4n

Charles V. Bagli, *Shipping Is Up In Brooklyn, But Future Is Shaky*,
   N.Y. Times, June 29, 2006 .............................................................................4n

Deborah Kolben and Nail Sloane, *City: Pier Study A Waste*,
   The Bay Ridge Paper, May 29, 2004 ................................................................4

Deborah Kolben and Nail Sloane, *Cruise Ships A Ploy*, The Bay
   Ridge Paper, July 10, 2004 .............................................................................4n

Elizabeth Dwoskin, *Brooklyn Brewery's Steve Hindy Can't Get A
   Break On New Digs*, Village Voice, July 23, 2008 .............................................4n

TABLE OF AUTHORITIES (CONT.)

**Page(s)**

**MISCELLANEOUS (CONT.)**

Faiza Akhtar, *Something's Happening At The Piers*, The Red Hook
  Star-Revue, Oct. 1-15, 2011 ..........................................................................4n

George Fiala, *American Stevedoring Gone From Red Hook Terminal*,
  The Red Hook Star-Revue, Oct. 16-31, 2011 ..............................................4n

Joseph Bonney, *Nadler Wants Brooklyn Container Terminal*, The
  Journal of Commerce, Oct. 26, 2009 ............................................................4n

New York State Department of State, Division of Corporations, Corporation
  and Business Entity Database,
  http://www.dos.ny.gov/corps/bus_entity_search.html (Oct. 2, 2013) .......................16n

Peter T. Leach, *A Port Stays In Brooklyn*, The Journal of Commerce,
  May 11, 2008 ...............................................................................................4n

Peter T. Leach, *NY-NJ Renews Red Hook Lease*, The Journal of Commerce,
  Apr. 23, 2008 ...............................................................................................4n

Peter T. Leach, *On The Brooklyn Waterfront*, The Journal of Commerce,
  Apr. 26, 2010 ...............................................................................................4n

Peter T. Leach, *Robbing Peter to Pay Paul*, The Journal of Commerce,
  May 4, 2008 .................................................................................................4n

Tom Robbins, *The Magician's Nephew*, Village Voice, Feb. 6, 2007.........................................4n

## INTRODUCTION

Plaintiff American Stevedoring, Inc. (ASI) ceased its operations in the Port of New York and New Jersey (Port) as the result of a failed business model – nothing more, nothing less. Following many years of well-publicized disputes with the City of New York and the Port Authority of New York and New Jersey (Port Authority) concerning whether ASI would be permitted to continue to lease the publicly owned property at which a crucial portion of its business was located and the refusals by the Port Authority to support ASI's applications for government subsidies upon which its operations depended, ASI ceased its stevedoring operations in the Port on or about September 26, 2011.

Rather than accepting responsibility for the failure of its core business, ASI seeks to place the blame on others, including the NYSA-ILA Pension Trust Fund (PTF or the Fund) for asserting a statutory claim against ASI several months after ASI had ceased its operations in the Port. Defendant PTF and a handful of the members of its board of trustees find themselves enmeshed in a civil action brought under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C.A. §§ 1961-1968 (West 2000 & Supp. 2013),[1] merely because they exercised their statutory duty as trustees to recover monies owed to PTF by ASI under the withdrawal-liability provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA).

The foundation of ASI's RICO claims is the assertion that PTF somehow committed mail fraud in connection with notices of withdrawal liability that it had mailed separately both to ASI at its last known business address and to its attorney, Michael Hiller, and wire fraud in connection with the electronic filing of a court action against ASI to recover the withdrawal

---

[1] In this brief references to RICO will be designated by the section citations in article 18 of the United States Code Annotated.

liability ASI owes to the Fund.  This brief will establish that (1) the RICO claims against PTF and its trustees are preempted because another statute, MPPAA, provides the exclusive adjudicatory regime, (2) the final judgment in the pending MPPAA lawsuit will foreclose any RICO claims against PTF and its trustees under the doctrine of *Res Judicata*, (3) the factual elements required to plead actionable mail fraud and wire fraud simply do not exist, (4) PTF as a non-member of the putative association-in-fact Enterprise lacks the interest or control in that Enterprise that is required to sustain ASI's RICO claims, and (5) the pursuit by PTF and its trustees of the withdrawal-liability claim could not have been the proximate cause of any RICO injury or tortious interference with ASI's stevedoring business, since the withdrawal-liability claim was not asserted until after that business had ceased to exist, since ASI has not paid any portion of that claim, and since ASI's counsel conceded that PTF and its trustees were not involved in any interference of that business. The Amended Complaint against PTF and Defendants Curto, Daggett, Knott, and Pernice in their capacity as PTF trustees should be dismissed.

## THE PARTIES

ASI is a former marine-terminal company that operated the Red Hook Container Terminal in Brooklyn, New York, and a facility located in Newark, New Jersey.  *See* Am. Compl. at ¶¶ 6-8.  ASI provided stevedoring and terminal services, including the loading and unloading of containers onto and off of ocean-going vessels.  *See* Am. Compl. at ¶ 9.

Defendant International Longshoremen's Association, AFL-CIO (ILA) is a labor organization that represents longshoremen employed by businesses that operate in ports along the Atlantic and Gulf Coasts of the United States.  *See* Am. Compl. at ¶ 11.  The ILA through its

affiliated locals, which are not parties in this case, represents longshore workers whom ASI had employed at its Brooklyn and Newark facilities.

Defendant PTF is a joint labor-management trust fund organized and existing under § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C.A. § 186(c)(5) (West 1998), and a multiemployer employee-pension-benefit plan under ERISA §§ 3(2)(A) and 37(A), 29 U.S.C.A. §§ 1002(2)(A), 1002(37)(A) (West 2008).  PTF was established and is maintained in accordance with collective bargaining agreements between New York Shipping Association, Inc. (NYSA)[2] and the ILA.  PTF provides pension-benefit payments to eligible longshore workers who have retired from employment with members of NYSA.  ASI, as a former member of NYSA, was a contributing employer to PTF.

PTF is administered by trustees appointed by the NYSA and the ILA.  As required by LMRA § 302(c)(5), 29 U.S.C.A. § 186(c)(5) (West 1998), the voting rights of the trustees are divided equally so that the union and management are equally represented.  Defendants Harold Daggett, Stephen Knott, and Louis Pernice, who are officers of the ILA, *see* Am. Compl. at ¶¶ 15, 21, 25, are members of PTF's Board of Trustees.  *See* Am. Compl. at ¶ 16.  During the period covered by the Amended Complaint, Defendant Joseph Curto was the president of NYSA and also a member of PTF's Board of Trustees.  *See* Am. Compl. at ¶ 34.

---

[2]   NYSA is a New York, not-for-profit membership corporation, which is the collective bargaining representative for employers of longshore workers in the Port of New York and New Jersey.  During the period covered by the Amended Complaint ASI was a member of NYSA.  *See* Compl., *Int'l Longshoremen's Ass'n v. Am. Stevedoring, Inc.*, Case No. 12-cv-1325, at ¶ 4 (E.D.N.Y. filed Mar. 16, 2012).

**Factual Background**

**ASI's Demise**

In 2002 the City of New York and the Port Authority initiated well-publicized efforts to transform the Red Hook terminal from container-shipping operations to residential uses.[3]  The City of New York had also considered converting Red Hook terminal from a container-handling terminal into a passenger-cruise-ship terminal.[4]

In 2004 Sabato Catucci, ASI's president at the time, had estimated that ASI had lost half its business during the 17-month period when the City of New York was conducting a study of the future of Red Hook terminal.  *See* Deborah Kolben and Nail Sloane, *City: Pier Study A Waste*, The Bay Ridge Paper, May 29, 2004, at 1.

After five years of negotiations and lawsuits with the City of New York, ASI entered into a ten-year lease beginning in 2008.  *See Fiala*, *supra* note 3.  But in the subsequent three and one-half years, ASI failed to pay any rent, resulting in several landlord-tenant actions by the Port Authority against ASI.  *See* Ver. Compl., *Am. Stevedoring, Inc. v. Port Authority of NY & NJ*, Docket No. 10-05, at ¶¶ 37-38, 77 (F.M.C. filed May 5, 2010); Ver. Ans., *Am. Stevedoring, Inc. v. Port Authority of NY & NJ*, Docket No. 10-05, at ¶¶ 38, 49, 66-67 (F.M.C. filed June 18, 2010); Fiala, *supra* note 3 at 1.

---

[3]  *See* George Fiala, *American Stevedoring Gone From Red Hook Terminal*, The Red Hook Star-Revue, Oct. 16-31, 2011, at 1; Faiza Akhtar, *Something's Happening At The Piers*, The Red Hook Star-Revue, Oct. 1-15, 2011, at 3; Peter T. Leach, *On The Brooklyn Waterfront*, The Journal of Commerce, Apr. 26, 2010; Joseph Bonney, *Nadler Wants Brooklyn Container Terminal*, The Journal of Commerce, Oct. 26, 2009; Elizabeth Dwoskin, *Brooklyn Brewery's Steve Hindy Can't Get A Break On New Digs*, Village Voice, July 23, 2008; Peter T. Leach, *NY-NJ Renews Red Hook Lease*, The Journal of Commerce, Apr. 23, 2008; Tom Robbins, *The Magician's Nephew*, Village Voice, Feb. 6, 2007; Charles V. Bagli, *Shipping Is Up In Brooklyn, But Future Is Shaky*, N.Y. Times, June 29, 2006; Alyssa Katz, *Off The Waterfront*, City Limits, Mar. 15, 2003.

[4]  *See* Peter T. Leach, *A Port Stays In Brooklyn*, The Journal of Commerce, May 11, 2008; Peter T. Leach, *Robbing Peter to Pay Paul*, The Journal of Commerce, May 4, 2008; Deborah Kolben and Nail Sloane, *Cruise Ships A Ploy*, The Bay Ridge Paper, July 10, 2004, at 1.

According to ASI, it did not pay rent to the Port Authority due to the Port Authority's refusal to subsidize ASI's barge operation.  *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Remand, *Port Authority of NY & NJ v. Am. Stevedoring, Inc.*, Case No. 10-cv-00099 (JG), at 2 (E.D.N.Y. filed Feb. 19, 2010).  "[ASI] charge[d] that the Port Authority's refusal to pay for the barges [was] part of its campaign to shut down the Brooklyn port, and [ASI's] business, in particular."  *See id.* at 2.

The litigation escalated when ASI initiated complaints against the Port Authority in a proceeding before the Federal Maritime Commission.  *See* Ver. Compl., *Am. Stevedoring, Inc. v. Port Authority of NY & NJ*, Docket No. 10-05, at ¶¶ 37-38, 77 (filed May 5, 2010).  While this litigation raged, ASI's business deteriorated.  Its difficulty in timely paying its bills spawned legal actions by its vendors.  In one of these actions the vendor temporarily arrested ASI's barges, seriously affecting its ability to remain in business.  *See* Order Releasing Vessel and Dismissing Action, *Moran Towing Corp. v. The Barge New Jersey*, Case No. 11 Civ. 2636 (E.D.N.Y. filed Sept. 28, 2011).  In that action, Sabato Catucci submitted an affidavit in which he stated that "[w]ithout the Barges, [ASI's] business would come to a halt, since [ASI] would be unable to transport any of the cargo across the Hudson and East Rivers."  *See* Affidavit of Sabato Catucci, *Moran Towing Corp. v. The Barge New Jersey*, at ¶ 3 (filed July 6, 2011).  During this time ASI became delinquent in paying contributions to various NYSA-ILA employee-benefit funds (other than PTF), which resulted in an arbitration award that was confirmed by the Eastern District of New York.  *See* Am. Compl. at n.7; *see also* Memorandum & Order, *Int'l Longshoremen's Ass'n v. Am. Stevedoring, Inc.*, E.D.N.Y. 12-CV-1325 (NGG) (filed Mar. 5, 2013).  PTF was not involved in any aspect of these disputes.

Only after this long odyssey had ended and ASI had permanently ceased its stevedoring operations in the Port, did PTF enter the picture.  It did so to comply with its statutory obligation under federal pension law.

**MPPAA's Withdrawal-Liability Provisions**

ERISA is a remedial statute enacted by Congress to protect the integrity of pension plans and the benefits of their participants.  *See Pension Benefit Guar. Corp. v. R. A. Gray and Co.*, 467 U.S. 717, 720 (1984).  In order to protect the continued viability of pension plans, MPPAA requires that an employer that withdraws from a pension plan pay its share of the plan's vested liabilities in the form of withdrawal liability  *See Bowers v. Compania Peruana De Vapores, S.A.*, 689 F. Supp. 215, 216-17 (S.D.N.Y. 1988).

Upon learning of an employer's cessation of operations, the plan is required to determine the amount of the employer's withdrawal liability, *see* 29 U.S.C.A. § 1382 (West 2009), and notify the employer of the amount due, *see* 29 U.S.C.A. § 1399(b)(1) (West 2009).  An employer that wishes to challenge this liability must do so solely in arbitration and only after it has timely requested review.  *See* 29 U.S.C.A. § 1401(a) (West 2009); *Bowers v. Transportación Maritima Mexicana, S.A.*, 901 F.2d 258, 262-63 (2d Cir. 1990).

In enacting these provisions, Congress foresaw that the purpose of MPPAA would be undermined if employers could postpone paying their debts to pension funds by engaging in protracted litigation over withdrawal liability.  *See Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 140 (3d Cir. 1997).  As a result, a failure to request review within the statutory period precludes arbitration and bars a challenge to the withdrawal-liability claim as a matter of law.  *See Transportación Maritima Mexicana,* 901 F.2d at 263; *N.Y. State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co*., 848 F.2d 20, 22 (2d Cir. 1988).

**PTF's Claim For Withdrawal Liability**

On October 26, 2011, PTF initiated the process to recover the amount of withdrawal liability owed by ASI. It asserted its claim by mailing to ASI the notice of withdrawal liability. *See NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, No. 12 Civ. 2506 (PAC), 2013 WL 1234957, at *3 (S.D.N.Y. Mar. 26, 2013). It sent the notice to ASI's last known address at Marsh Street in Newark, New Jersey, which was listed on the website of the New York State Secretary of State as the address to which the Secretary would have sent all process received on behalf of ASI. A copy of the notice was also sent to Michael S. Hiller, Esq. who represents ASI in this case.

On January 18, 2012, as required by MPPAA, the Fund advised ASI that it had failed to make the first quarterly installment payment and that if ASI did not cure its delinquency within 60 days of receiving the notice, it would be in default and the entire amount of the withdrawal liability would become due. *See id.*, at *3. This default notice was sent to the same address listed with the Secretary of State as well as to Mr. Hiller. In a colloquy with this Court, Mr. Hiller admitted that he had received the notices, but tried to neutralize their effect by arguing that it was not effective service on ASI because he was not general counsel to ASI and purportedly was not authorized to accept service on its behalf. *See* Docket No. 39, Tr. of Aug. 5, 2013 Court Conference, at 46-47.

When ASI failed both to request review of the withdrawal-liability claim and to pay any installments, PTF commenced an action in this Court. PTF's counsel worked out a stipulation with Mr. Hiller in which he agreed to accept service on ASI's behalf in exchange for an extension of time in the delinquent-contributions case in the Eastern District of New York in which Mr. Hiller was also representing ASI. *See supra* p.5.

In the withdrawal-liability action in this Court ASI raised a host of affirmative defenses, including PTF's unclean hands and selective enforcement of withdrawal liability, which are asserted as RICO claims in this case.  The linchpin of ASI's defenses in the withdrawal-liability action was the contention that ASI had never received proper notice of PTF's withdrawal-liability claim and hence ASI had not waived its right to assert these defenses.  Under the law, however, service of the complaint also constitutes notice.  *See Transportación Maritima Mexicana, supra,* 901 F.2d at 263.  Rather than litigate the sufficiency of the mailed notices, PTF instead relied upon the complaint as notice and succeeded in obtaining a determination by the Honorable Paul A. Crotty of this Court that because ASI had failed to request review within the 90-day period following service of the complaint, it had waived its right to arbitrate and thus could not litigate any of its defenses. *See  Am. Stevedoring,* 2013 WL 1234957, at \*4-6.

In a desperate attempt to avoid the statutory scheme established by Congress in MPPAA, ASI tries to convert these MPPAA defenses into RICO claims.  The gravamen of the RICO claims against PTF is the contention that the notice mailed to the address on file with the Secretary of State constitutes mail fraud, despite ASI's counsel's admission that he had received the same notice, and that PTF's electronic filing of the withdrawal-liability complaint with this Court constitutes a second predicate act of wire fraud.  As a result ASI seeks treble damages against PTF and four of its Trustees for their alleged violation of RICO.  This brief will demonstrate that ASI's complaint is devoid of legal sufficiency and should be dismissed.

ARGUMENT

## I.

### Standards For Dismissal Motions

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading that offers "labels and conclusions" or "a formalistic recitation of the elements of a cause of action will not do." *See Twombly*, 550 U.S. at 555.

The Court may consider materials outside the four corners of the complaint of which judicial notice may be taken.  *See* Fed. R. Evid. 201; *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).[5]

## II.

### ASI's RICO Claims Are Precluded Because MPPAA Provides The Exclusive Remedy

MPPAA provides a comprehensive procedure for addressing withdrawal-liability claims. An employer that wishes to challenge a pension fund's assessment of withdrawal liability must do so solely in arbitration and only after it has  timely requested review. *See* 29 U.S.C.A. § 1401(a) (West 2009); *see also Transportación Maritima Mexicana,* 901 F.2d at 263-64; *McNicholas Transport*, 848 F.2d at 23; *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc,*. 846 F.2d 879, 885-88 (2d. Cir. 1988).  Indeed, MPPAA expressly states, "Any dispute between an employer and the plan sponsor of a multiemployer pension plan concerning a determination

---

[5] The materials sans the Amended Complaint that are cited in this brief are statements in related court proceedings and in media articles.

made under sections 1381 through 1399 . . . **shall** be resolved through arbitration." 29 U.S.C.A. § 1401(a) (West 2009) (emphasis added); *see Am. Stevedoring,* 2013 WL 1234957, at *1.

In the underlying withdrawal-liability action, Judge Crotty wrote, "It is indisputably correct that Congress mandated arbitration with a tight time schedule to mitigate the expense and delay inherent in litigation, where one party desires avoidance of a liability and the other desires its imposition.  As noted, Congress wanted to protect the employee and the beneficiary, impose the cost of that protection on the appropriate party in the appropriate amount, and do so fairly, as expeditiously as possible." *Am. Stevedoring,* 2013 WL 1234957, at *1.

Judge Crotty has ruled that ASI had sufficient notice of PTF's withdrawal liability claim, that ASI failed to request review within the appropriate period of time, and that ASI is not entitled to assert its defenses because it failed to proceed in the manner required by MPPAA. *See id*. at *2, 5.  Accordingly, ASI is procedurally barred from raising defenses that it could have raised in arbitration.  *See id*. at *5; *see also Transportación Maritima Mexicana*, 901 F.2d at 263-64; *McNicholas Transp.,* 848 F.2d at 23;  *Levy Bros. Frocks,* 846 F.2d at 885-87.

Rather than accepting its statutorily mandated fate, ASI is attempting to use RICO as an end-run around MPPAA.  In similar cases, courts have repeatedly rejected attempts to convert actions governed by one federal statute into a RICO action.  *See, e.g., Norman v. Niagara Mohawk Power Corp*., 873 F.2d 634, 637-38 (2d Cir. 1989); *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226-27 (11th Cir. 2002); *Gov't of Guam v. Am. President Lines*, 28 F.3d 142, 145-47 (D.C. Cir. 1994); *Danielsen v. Burnside-Ott Aviation Training Center*, 941 F.3d 1220, 1226-29 (D.C. Cir. 1991).  In each of these cases, the court concluded that the provisions of the non-RICO statute provided the exclusive remedy. *See Norman*, 873 F.2d at 637; *McCulloch*, 298 F.3d at 1226-27; *Am. President Lines*, 28 F.3d at 145-46; *Danielsen*, 941 F.2d at 309-12.  ASI's

"[a]rtful invocation of controversial civil RICO . . . cannot conceal the reality that the gravamen of the complaint" is ASI's obligation to pay withdrawal liability. *See Norman*, 873 F.2d at 637. The Court should not countenance ASI's blatant attempt to evade the Congressional policy that withdrawal-liability claims must be resolved in a MPPAA arbitration, not in protracted court litigation. *See Galgay*, 105 F.3d at 140.

## III.

### The Doctrine of *Res Judicata* Precludes ASI's RICO Claims Against PTF and Its Trustees

Under the doctrine of *Res Judicata*, "[a] final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in the action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). *Res Judicata* precludes re-litigation of those claims that were actually raised in a prior lawsuit – or those that "could have been raised in the action." *Federated Dep't Stores*, 452 U.S. at 398. Consequently, for the purpose of claim preclusion, it is the *facts* that matter. A new legal theory does not amount to a new "cause of action," so as to defeat the bar of R*es Judicata*.

The RICO claims in this case arise out of the same facts that spawned the withdrawal-liability litigation. Indeed, all the claims asserted by ASI against PTF in this action are based initially on the allegedly fraudulent notice that PTF provided in the earlier litigation. ASI raised these claims in the withdrawal-liability litigation as the affirmative defenses of unclean hands and selective enforcement.

The Second Circuit has held that RICO claims are precluded if they were raised unsuccessfully as affirmative defenses in a prior action. *See Saud v. Bank of New York*, 929 F.2d 916 (2d Cir. 1991) (RICO plaintiff's assertion of affirmative defense of fraud in prior contract action with bank precludes plaintiff's RICO claim in new action against bank). Similarly, RICO

claims are dismissed, if they were asserted under different legal theories in prior litigation.  *See, e.g., Paul v. Manufacturer's Asset Group, LLC*, No. 04-C-769-C, 2005 WL 1038672, at *1 (W.D. Wis. March 7, 2005) (RICO claim precluded by prior lawsuit invoking state security laws); *In re Aegis Realty Corp.*, 301 B.R. 116, 122 (Bankr. S.D.N.Y. 2003) (fraud claim precluded by prior lawsuit that invoked contractual claims); *Evans v. Dale*, 896 F.2d 975, 978 (5th Cir. 1990) (RICO claim barred by prior state-court divorce litigation); *Mortell v. Mortell*, 887 F.2d 1322, 1326 (7th Cir. 1989) (plaintiff's RICO claim was barred because he had failed to plead a claim for fraud in prior state-court action arising out of same facts); *Zhu v. St. Francis Health Ctr.*, 215 Fed. App'x, 717 (10th Cir. 2007) (plaintiff's RICO claim barred by previous claim for medical malpractice in state court).

Although in the withdrawal-liability action, Judge Crotty has already decided that the unclean-hands and selective-enforcement defenses, which are tantamount to the RICO claims in the case, are precluded by ASI's failure to comply with MPPAA's statutory arbitration procedures, his decision was in the context of a motion for interim payments and thus is not a final adjudication.  In cases where the prior lawsuit has not yet arrived at a final judgment, courts have stayed the second proceeding pending the entry of final judgment in the first.  *See Rafferty v. Halprin*, No. 90-251, 1991 WL 148798 (S.D.N.Y. July 16, 1991) (holding in RICO action "it would be wasteful of the parties' energies and the resources of this Court to do anything other than to stay proceedings on these claims pending their apparently inevitable dismissal.").

The current posture of the withdrawal-liability case is that PTF's motion for summary judgment was fully briefed and submitted on June 5, 2013, and is awaiting the Court's decision. Therefore, although no final judgment has issued, one is imminent, and it makes no sense to

continue litigating ASI's RICO claim against PTF, when R*es Judicata* preclusion will necessitate dismissal in a short period of time.

## IV.

### ASI's RICO Claims Against PTF and Its Trustees Are Legally Deficient

To plead a valid claim for violations of RICO §§ 1962(b) and 1962(c), the RICO claims asserted by ASI against PTF in this case, the complaint must allege that the defendant through the commission of two or more acts constituting a pattern of racketeering activity directly or indirectly maintains an interest in or participates in an enterprise the activities of which affect interstate or foreign commerce.  *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984) (citation omitted).  If one of these elements is missing, the complaint is defective and must be dismissed as a matter of law.  ASI's complaint fails on four of those elements: the acts complained of are not racketeering activities, there is no pattern of racketeering activity, PTF has not joined any association-in-fact enterprise, and PTF has not maintained an interest in or participated in the enterprise.[6]

### A.      No Racketeering Activities

ASI's complaint asserts that PTF has violated RICO by engaging in the following racketeering activities:  (1) labor racketeering, *see* Am. Compl. at 33, ¶¶ 233(iv), 238(iv); (2) extortion, *see* Am. Compl. at 33, ¶¶ 233(iv), 238(iv); (3) mail fraud, *see* Am. Compl. at ¶¶ 146-66, 233(iv), 238(iv); and (4) wire fraud, *see* Am. Compl. at ¶¶ 167-172, 233(iv), 238(iv).  The factual allegations in the complaint do not substantiate the existence of any of these predicate acts of racketeering.

---

[6] To avoid repetition, PTF refrains from engaging in a full-scale briefing on all issues and adopts the standard of review and arguments presented in the brief of Defendant International Longshoremen's Association, AFL-CIO in support of its motion to dismiss.

1.      **Labor Racketeering Is Not A RICO Predicate Act**

The RICO definition of "racketeering activity" is set forth in § 1961.  *See* 18 U.S.C.A. § 1961(1) (West Supp. 2012).  It sets forth the only indictable offenses that constitute RICO predicate acts.  Labor racketeering is not one of them.

2.      **ASI Has Not Properly Alleged A Claim For Extortion**

To allege actionable extortion under 18 U.S.C.A. § 1951 (West 2000), which is known as the Hobbs Act, ASI must assert that PTF obtained or attempted to obtain ASI's property through the wrongful use of actual or threatened force, violence, or fear.  *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 402 (2003).

ASI's case against PTF appears on pages 33-37 of the Amended Complaint.  The only reference to extortion appears in the heading on page 33, which purports to alert the reader that the following paragraphs will contain allegations showing "Extortion . . . in Connection with Alleged Withdrawal liability Against American." One searches in vain in the following paragraphs for any factual allegations of acts or threats of force, violence, or fear.  The word "threatened" does appear in paragraph 156 of the Amended Complaint: "By the SDNY Action and the New Jersey Action, plaintiffs therein threatened to impose liability against American in amounts in excess of $1 Million."  This paragraph, however, does not allege a Hobbs Act violation.  It does not contain any assertion that PTF or any PTF trustee ever made any threat at all.  The only "threat" attributed to PTF is the filing of the SDNY action for withdrawal liability.  But the filing of a lawsuit, even a meritless one, cannot constitute a Hobbs Act violation as a matter of law.  *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087-88 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257-58 (10th Cir. 2003); *United States v. Pendergraft*, 297 F.3d 1198, 1205-08 (11th Cir. 2002); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d

233, 259 (S.D.N.Y. 2001).  PTF's exercise of its statutory rights under ERISA to assert a claim for withdrawal liability and seek its recovery in a court of law is not wrongful by any stretch of the imagination and thus cannot be the basis of a Hobbs Act violation.

### 3. Mismailing Notices Of Withdrawal Liability Does Not Constitute Mail Fraud

Under MPPAA a fund must "notify" an employer of its withdrawal liability.  *See* 29 U.S.C.A. § 1399(b)(1) (West 2009).  MPPAA does not require a fund to formally serve its withdrawal-liability notices. *See Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214, 224-25 (S.D.N.Y. 2009); *Miller v. Collectron Corp.*, Case No. 98-CV-2221 (JG), 1999 WL 730981, *6 (E.D.N.Y. Sept. 16, 1999).  Indeed, "[a]ny doubt regarding the sufficiency of the [n]otice is allayed by the fact that [the employer's] counsel . . . received a copy of the [n]otice" and it is irrelevant that the employer's attorney was not authorized to accept service on behalf of the employer.  *See Miller*, 1999 WL 730981, at *6.

ASI contends that PTF's mailing of its withdrawal-liability notice to the wrong address amounted to mail fraud, *see* Am. Compl. at ¶¶ 157-66, which is a RICO predicate act.  Mail fraud occurs whenever a person "having devised or intending to devise any scheme or artifice to defraud" uses  the mail "for the purpose of executing such scheme or artifice."  *See* 18 U.S.C.A. § 1341 (West Supp. 2012).

According to the Amended Complaint the scheme to defraud consisted of an intentional mismailing of the withdrawal-liability notice to an address where ASI was no longer operating in order to deprive ASI of the ability to raise the defense of selective enforcement.  *See* Am. Compl. at ¶¶ 154-55, 162, 164.  All these allegations supporting this putative scheme are based not on acts but upon information and belief.  *See id.* at ¶ 155.  In addition, two essential allegations necessary for this scheme to be a fraudulent act by PTF are missing.  First, there is no allegation

anywhere in the Amended Complaint that ASI did not receive notification of the withdrawal-liability claim.  Second, there is no allegation that any PTF Trustee had any involvement in the alleged mismailing.  Not only are these essential allegations missing in the Amended Complaint, but ASI's counsel also admitted at the August 5 court conference in this case that they do not exist. *See* Docket No. 39, Tr. at 46-48.

At the court conference ASI's counsel conceded that there was not one mailing but two: one to the official address for service of process designated by ASI in its filing with the New York Secretary of State and the other to ASI's counsel himself.  *See id.* at 46.  These mailings make it impossible to allege a claim of intent to defraud with a straight face.  Indeed, ASI's counsel admitted he received the notice and did not deny that he advised ASI of its contents.[7] *See id.* at 46.  Rather, he elevated form over substance by arguing that PTF, not he, was required to notify ASI, so that even if he had passed it on to ASI, that would not constitute effective notice.  *See id.* at 46-47.  Moreover, he asserted that the notice received by him was not sufficient, since he was not general counsel for ASI authorized to receive service at that time.  *See id.* at 46-47.[8]

_____

[7] It strains credulity to suggest that ASI had no knowledge of the withdrawal-liability notice, since during the grievance hearing on January 4, 2012, referred to in note 7 of the Amended Complaint, Matthew Yates, ASI's Director of Commercial Operations, asserted, "[T]he only type of indebtedness that was carved out separately was the withdrawal liability that is, of course, yet to be introduced, that is yet to be addressed.  That is not the subject of today's hearing."  *See* Certification of Elizabeth A. Alexander, *Int'l Longshoremen's Ass'n v. Am. Stevedoring, Inc.*, No. 12-cv-01325 (NGG), Exh. S (E.D.N.Y. filed Aug. 27, 2012)(Tr. of Jan. 4, 2012 Hearing at 180).

[8] ASI's counsel is much too modest in declining to hold himself out as ASI's general counsel. His letter to the Court in this action states that his firm has represented ASI for nine years and that his firm's "familiarity with [ASI's] business and institutional history, not to mention [its] longstanding relationship with [ASI's] principals, is critical to representation of [ASI]."  *See* ASI's Letter Dated July 15, 2013 to the Hon. Katherine Polk Failla, at 6.  Shortly before the infamous mailings of ASI's withdrawal-liability notice, Mr. Hiller informed NYSA and various NYSA-ILA employee-benefit funds that he was representing ASI in connection with the delinquent contributions that became the subject of the arbitration referenced in note 7 of the Amended Complaint. *See* Alexander Cert., *supra,* note 7, Exh. Q at 2.  He subsequently represented ASI in the Eastern District Action mentioned in note 7 of the Amended Complaint and during the course of that litigation agreed to accept service of the complaint on behalf of ASI in PTF's withdrawal-liability action in this Court and later became counsel of record for ASI in that case. *See* Proof of Service of Summons and Complaint, *NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, No. 12-cv-02506 (PAC) (S.D.N.Y filed June 26, 2012). Currently, Mr. Hiller's firm is ASI's designated agent for service of process.  *See* Declaration of Michael S. Hiller in Opposition, *NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, No. 12-CV-2506 (PAC)(MHD), at n.1 (S.D.N.Y. filed Aug. 20, 2012); New York State Department of State,

- 16 -

At the court conference ASI's counsel also conceded that he had no information at all that any of the four individual trustee-defendants had directed where the notice should be mailed. *See id.* at 48.

The fact that PTF sent copies of the withdrawal-liability notices to Mr. Hiller establishes conclusively that it did not attempt or intend to defraud ASI.  By giving notice to Mr. Hiller, who has served as ASI's attorney for nine years, PTF made a good-faith effort to inform ASI of its claim.  When all is said and done, ASI's counsel made a tactical decision to preserve the issue of lack of notice to forestall the imposition of withdrawal liability.  This strategy backfired because the service of the complaint, which ASI could not deny, provided the required notice, which ASI failed to heed.  If ASI never received notice of the withdrawal-liability claim, it was because its attorney decided not to inform ASI.  This cannot be the foundation of a mail-fraud claim against PTF as a matter of law.  And in light of ASI's counsel's admission that he had no knowledge that any individual trustee directed the alleged mismailing, as a matter of law, no mail-fraud claim is sustainable against the four trustee-defendants.

### 4.      E-Filing A Complaint Does Not Constitute Wire Fraud

Racketeering activity under RICO includes any act that is indictable as wire fraud, which occurs whenever a person "having devised or intending to devise any scheme or artifice to defraud" uses the wires "for the purpose of executing such scheme or artifice."  *See* 18 U.S.C.A. § 1343 (West Supp. 2012).

ASI's wire-fraud claim is based on its assertion that PTF e-filed a withdrawal-liability complaint that falsely represented that ASI received the withdrawal-liability notices, even though

---

Division of Corporations,  Corporation and Business  Entity Database, http://www.dos.ny.gov/corps/bus_entity_-search.html (Oct. 2, 2013).  If Mr. Hiller is not ASI's general counsel, "Will the real general counsel for ASI please stand up." *To Tell the Truth* (CBS Television Panel Game Show 1956-1968).

PTF "fully knew that such Notices had not been sent to [ASI's] proper address and thus had not been received by [ASI]." *See* Am. Compl. at ¶ 167.

ASI's wire-fraud claim is a replay of its mail-fraud claim, which PTF has already debunked. *See supra* p. 14-17. Moreover, PTF has not unearthed any case where the electronic filing of a complaint containing an inaccurate allegation has been found to constitute wire fraud. On the contrary, courts have repeatedly found that the filing of lawsuits "do not constitute predicate acts for purposes of sustaining a RICO action." *See Nakahara v. Bal*, No. 97 Civ. 2027 (DLC), 1998 WL 35123, *6-11 (S.D.N.Y. Jan. 30, 1998); *von Bulow By Auersperg v. von Bulow*, 657 F. Supp. 1134, 1143-45 (S.D.N.Y. 1987); *Auburn Med. Ctr. v. Andrus*, 9 F. Supp. 2d 1291, 1298-99 (M.D. Ala. 1998) (identifying numerous court decisions throughout the country supporting that proposition).

In any event, in this case the alleged inaccuracy simply does not exist. Nowhere in the withdrawal-liability complaint is there any allegation that ASI received the notice of withdrawal; all that is asserted is that PTF "sent" ASI the withdrawal-liability notice, *see* Compl. at ¶ 9, *NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.,* No. 12 Civ. 2506 (PAC) (S.D.N.Y. filed Apr. 2, 2012) and that PTF "advised Defendant ASI" of its default, *see id.* at ¶ 10. Nowhere in the Amended Complaint in this case does ASI allege that it did not receive those notices in the mail or from its attorney. Indeed, the Amended Complaint uses the disingenuous allegation that because the notices had not been sent to the proper address, ASI could not have received them. S*ee* Am. Compl. at ¶ 167. It defies logic to suggest that the filing of a withdrawal-liability complaint is in furtherance of a fraud based on mismailing a notice of claim designed to deprive a party of its ability to defend the claim. The complaint actually informed ASI of the claim and gave it the opportunity to defend it.

**B.      Neither PTF Nor Its Trustee-Defendants
Can Violate § 1962(b) or § 1962(c)**

For an association-in-fact enterprise to exist its component members "must *share* a common purpose … and work together to achieve such purpose." *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (emphasis added) (quoting *First National Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994), *cert denied,* 513 U.S. 1079 (1995)). The Enterprise proposed by ASI does not name PTF as a constituent member.  This Enterprise does include "the trustees" of PTF, but not PTF itself.[9] *See* Am. Compl. at ¶ 101.  The reasons for this omission is that ASI is just not able to allege that PTF is a member of the purported association-in-fact enterprise.  For an ERISA fund, like PTF, to become a member of an association-in-fact enterprise requires the affirmative consent of a majority of its Board of Trustees, s*ee Godlewska v. Human Dev. Ass'n,* No. 03 cv 3985 (DGT), 2005 WL 1667852, at *8 (E.D.N.Y. July 18, 2005) (*citing Local 857 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 568 (S.D.N.Y 1998)), and ASI has no factual basis for making that assertion.  Indeed, during the August 5, 2013 court conference counsel for ASI admitted that ASI is unable to assert any claims of wrongdoing against a majority of PTF's trustees.  *See* Docket No. 39, Tr. of Aug. 5, 2013 Court Conference at 37-39.  Absent this ability to name PTF as a member of the Enterprise, ASI cannot as a matter of law interpose a claim against PTF under either § 1962(b) or § 1962(c).

To violate RICO § 1962(b) a defendant must engage in a pattern of racketeering activity to acquire an interest or control of the enterprise.  When the enterprise, as in this case, is an

---

[9]  There is no allegation anywhere in the Amended Complaint that all the PTF trustees, let alone a majority, are part of the Enterprise. *See* Am. Compl. at ¶ 101. While the Enterprise is alleged to include individual Defendants, *see id.* at ¶ 101, a term explicitly defined in the Amended Complaint,  *see* Am. Compl. at ¶¶ 46-50, PTF, although  named as a defendant, is not one of those individual Defendants.

association-in-fact enterprise, only members can acquire an interest or control of that enterprise. The RICO § 1962(b) claim (Second Cause of Action) states that Defendants, which would include PTF, sought "to control and dominate the Waterfront, selected businesses and unions operating on the Waterfront and to acquire or maintain and illegally profit from, directly and indirectly, an interest in, or control of, the affairs of the Enterprise." *See* Am. Compl. at ¶ 239. But there is no allegation that PTF has an ownership interest in any Waterfront business or union, and since it is not a member of the Enterprise, by definition it cannot have any interest in or control of that Enterprise.

To violate RICO § 1962(c), a defendant employed or associated with any enterprise must conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. To plead a § 1962(c) violation, the named defendants must be shown in the complaint to have exercised direction or control over the operation and management of the enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993); *see also Metropolitan Transp. Auth. v. Contini*, No. 04-cv-0104, 2005 WL 1565524, at *4 (E.D.N.Y. July 6, 2005). Since there is no allegation that PTF is employed by the Enterprise and since by definition PTF as a non-member cannot associate with the Enterprise, it cannot conduct or participate in conducting the Enterprise's affairs. Consequently, once the Amended Complaint concedes that PTF is not a member of the association-in-fact enterprise, ASI's claims under RICO §§ 1962(b) and 1962(c) become unsustainable as a matter of law.

## C.    Dismissal of PTF's Trustee-Defendants

This brief has established that as to the four PTF trustees named as defendants no action can proceed against them in their capacity as members of PTF's Board of Trustees. Accordingly, the complaint in this case against the four trustee-defendants in their capacity as PTF trustees

must be dismissed.  Two of these trustee-defendants, Stephen Knott and Joseph Curto, are not alleged to have engaged in any actions other than in their capacity as trustees. As to Stephen Knott, there are no allegations concerning his purported involvement with the Enterprise in any other capacity.  *See* Am. Compl. at ¶¶ 21-24, 107.  As to Joseph Curto, the only remaining allegations concerning his purported involvement with the Enterprise relate to his alleged status as a member of the board of trustees of the NYSA-PPGU Pension Fund and Plan (Port Police Fund).  *See* Am. Compl. at ¶¶ 33-36, 151-52, 154, 162-64.  But that status is alleged on information and belief, and the factual basis for that allegation is not stated in the Amended Complaint.  Apparently, ASI did not engage in any investigation to substantiate the truth of that allegation.  All that ASI needed to do to uncover the truth was to look at the Port Police Fund's complaint in its withdrawal-liability action against ASI, which reveals that Mr. Curto was not a trustee of that fund.  *See* Compl., *NYSA-PPGU Pension Fund v. Am. Stevedoring, Inc*., Case No. 12-CV-2309 (ES) (D.N.J. filed Apr. 18, 2012).  The complaint against Defendants Knott and Curto, therefore, should be dismissed in its entirety.

## V.

### The Withdrawal-Liability Action Commenced By PTF Was Not The Proximate Cause Of ASI's Ceasing Its Operations In The Port

Despite nearly a decade of financial troubles and uncertainty as to whether it would be permitted to retain its leases at its two facilities in the Port, *see supra* at pp. 3-5, ASI asserts that the withdrawal-liability action commenced by PTF after ASI had ceased its operations in the Port somehow caused ASI to cease its operations in the Port.

RICO provides a cause of action for any person injured in his business or property by reason of a violation of RICO § 1962.  *See* 18 U.S.C.A. § 1964(c) (West 2000); *Lerner v. Fleet*

*Bank, N.A.*, 318 F.3d 113, 120 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003).  In other words the RICO predicate acts alleged in the complaint must be the proximate cause of the plaintiff's injuries.  *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)).  Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged" and excludes those "link[s] that are too remote, purely contingent, or indirect."  *See Hemi Group*, 559 U.S. at 9.

As PTF has established, *see supra* pp. 13-18, the purported predicate acts allegedly committed by PTF does not pass muster.  Even if they did, it is a legal and factual impossibility that the withdrawal-liability court action filed several months after ASI ceased operations in the Port could have been the proximate cause of that cessation of operations.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).  And, certainly, ASI cannot establish that the withdrawal-liability notices, which were sent after ASI ceased operations in the Port and which ASI claims it never received, could have somehow caused ASI to have ceased its operations.  What decisively puts to rest any showing of proximate causation is the fact that PTF's actions did not result in any injury to ASI, since despite this Court's order directing payment of its withdrawal liability to PTF, ASI to date has not paid a cent.

## VI.

### PTF Did Not Interfere with
### ASI's Business Relations

ASI tosses in a third cause of action against PTF for a purported interference with business relations between ASI and other businesses.  *See* Am. Compl. at ¶¶ 242 – 245.  The Amended Complaint does not set forth any allegations as to how PTF interfered with ASI's relationships with other business.  It does not identify those businesses.  And it does not identify

any contracts or "customer shipping agreements" that PTF purportedly caused ASI to be unable to perform.  In sum, ASI's third cause of action is an empty claim, and its counsel admitted as much during some obvious back-peddling during the August 5, 2013, court conference:

- "[T]he funds perhaps did not interfere necessarily as much as it's an overlapping act or angle . . . ."  *See* Docket No. 39, Tr. of Aug. 5, 2013 Court Conference, at 42 (Rudick));

- "So the funds may not individually have participated in the tortious interference that we have alleged . . . ."  *See id.* at 42 (Rudick);

- "To the extent that the funds actively interfered, you're correct, your Honor, in that they didn't do anything specifically directed at [ASI's] customer shipping agreements."  *See id.* at 43 (Rudick);

- So, in these particular instances, with respect to tortious interference, perhaps we shouldn't be alleging that the funds did interfere.  *See id.* at 43 (Rudick);

- "[T]here is no allegation in the complaint, or it's not intended to have an allegation in the complaint, that the funds, either one of them, directly interfered with economic relationships or tortiously induced breaches of contracts."  *See id.* at 44 (Hiller); and

- "The aspect of the claim that relates to the interference with contracts and relationships did not involve directly the fund."  *See id.* at 44 (Hiller).

PTF could not possibly have interfered with ASI's business relationships because the only conduct attributed in the complaint to PTF occurred after ASI had already ceased its stevedoring and terminal operations in the Port.  By that time any purported interference with ASI's business relationships had already occurred.  If ASI's obligation to pay withdrawal liability to PTF impaired its ability to engage in future operations, then so be it.  Congress knew when it passed MPPAA that some companies that incurred withdrawal liability could be insolvent.  *See* 29 U.S.C.A. § 1405(b), (d), (e) (West 2009).  Indeed, MPPAA provides a defense for this actuality, *see* 29 U.S.C.A. § 1405(b), but ASI failed to raise its defenses in a timely manner and in the manner permitted by MPPAA.

## CONCLUSION

For the reasons set forth above, ASI's claim should be dismissed with prejudice.

**Dated:  October 7, 2013**

Respectfully submitted,

MARRINAN & MAZZOLA MARDON, P.C.    THE LAMBOS FIRM, LLP


By_____s/ Kevin Marrinan_____    By_____s/ Donato Caruso_____
      Kevin Marrinan                                   Donato Caruso
      John P. Sheridan                                 James R. Campbell
      26 Broadway, 17th Floor                          303 South Broadway, Suite 410
      New York, New York 10004                         Tarrytown, New York 10591
      Tel. (212) 425-3240                              Tel. (212) 943-2470
      Fax (212) 943-6649                               Fax (212) 797-9213
      kmarrinan@mmmpc.com                              dcaruso@lambosfirm.com
      jpsheridan@mmmpc.com                             jrcampbell@lambosfirm.com

*Cocounsel to Defendants NYSA-ILA Pension Trust Fund (PTF) and*
*Joseph Curto, Harold J. Daggett, Stephen Knott, and Louis Pernice*
*in their Capacity as Members of PTF's Board of Trustees*

*24401*