UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
AMERICAN STEVEDORING, INC.,                             :
                                                        :
                              Plaintiff,                :
                                                        :
              v.                                        :
                                                        :
INTERNATIONAL LONGSHOREMAN'S                            :
ASSOCIATION, *et al.*,                                  :
                                                        :
                              Defendants.               :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  July 18, 2014

13 Civ. 0918 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

This action was filed on February 7, 2013 (Dkt. #1), and an Amended Complaint was filed on May 13, 2013 (Dkt. #19).[1] Plaintiff American Stevedoring, Inc. ("Plaintiff" or "Stevedoring"), the former marine terminal operator at the Brooklyn and Newark waterfronts, sues a large group of Defendants, principally the labor unions involved in the waterfront business (the "Unions"), their associated pension funds (the "Funds"), and a variety of individuals involved in waterfront labor or the waterfront business generally.[2]

---

[1] The Amended Complaint in this action is referred to as "Am. Compl." and Stevedoring's Proposed Complaint as "Prop. Compl." The briefs of the parties as referred to according to the convention "[Party] Br.," "[Party] Opp.," and "[Party] Reply."

[2] Specifically, Stevedoring sues: the International Longshoreman's Association, AFL-CIO ("ILA"); the Port Police and Guards Union ("PPGU"); the New York Shipping Association-International Longshoreman's Association Pension Trust Fund ("ILA Fund"); the New York Shipping Association-Port Police and Guards Union Pension Trust Fund ("PPGU Fund"); Harold Daggett, the ILA President and Executive Co-Trustee of the ILA Fund; Stephen Knott, the ILA General Vice President; Louis Pernice, an ILA Vice President and the President of ILA Local 1814, the Longshoreman's local in Brooklyn; Joseph Curto, the President of the New York Shipping Association, the Executive Co-Trustee of the ILA Fund, and an Executive Officer of the ILA Fund and the PPGU Fund; John Oates, the President of the PPGU and an Executive Officer and Trustee of the PPGU Fund; Paul Puntunieri, the Vice-President of the PPGU; Michael Farino, a principal of MTC

There are four motions to dismiss the Amended Complaint before the Court, one filed by each of the principal entities: the ILA, the ILA Fund, the PPGU, and the PPGU Fund (and individuals associated with each entity). Each attacks the allegations in the Amended Complaint on a variety of grounds. As detailed below, these motions are as procedurally complicated as the case itself has been since its inception. For a variety of reasons, this action can neither proceed nor conclude at this time, and the preliminary briefing cycle must continue.

## BACKGROUND

Stevedoring alleges that Defendants have been and remain engaged in a longstanding criminal conspiracy that, among many other things, destroyed Stevedoring's profits and ultimately its very business. Stevedoring contends in particular that Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, and committed state-law tortious interference with contract and prospective economic advantage.

Defendant Farino in turn filed a third-party complaint, since stricken from the docket, against Stevedoring itself, its principal Sabato Catucci, his relatives Keith Catucci and Ronald Catucci, and other entities allegedly under their control. Farino made allegations in this third-party complaint of separate unlawful conduct that are not at issue at this time.

---

Transportation; and Joseph Pollio, the Vice President of ILA Local 1814 and an Executive Vice President of the ILA Atlantic Coast District. (Am. Compl. ¶¶ 11-50).

Defendants requested leave to file motions to dismiss the Amended Complaint on a variety of grounds, and the Court held a pre-motion conference on August 5, 2013, at which it set a particularized briefing schedule for motions made by any party. (Dkt. #37). After numerous extensions occasioned by various problems confronted during the briefing process, the motions were submitted in full to the Court on April 17, 2014. (Dkt. #64-83).

## DISCUSSION

### A.   The Funds' Motions to Dismiss Are Granted Without Leave to Replead

The ILA Fund and Joseph Curto, on the one hand, and the PPGU Fund and Joseph Pollio, on the other, attack the legal sufficiency of allegations in the Amended Complaint to the effect that the Funds committed wire and mail fraud by filing lawsuits against Stevedoring for ERISA withdrawal liability. (Dkt. #65, 68). Stevedoring explicitly does not oppose these motions. (Pl. Opp. 3 n.3).

Normally, failure to oppose a motion to dismiss cannot itself justify dismissal of a complaint:

> In deciding an unopposed motion to dismiss, a court is to "assume the truth of a pleading's factual allegations and test only its legal sufficiency.... Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law."

*Haas* v. *Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall* v. *Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)). Here, however, the situation is unusual in that, as will be discussed at greater length below,

3

Plaintiff has provided a Proposed Complaint as an exhibit to its opposition to the motions to dismiss and, as the Court construes its brief, seeks leave to amend by filing the Proposed Complaint as a Second Amended Complaint.

The Proposed Complaint alleges no claims against the ILA Fund, the PPGU Fund, Joseph Curto, or Joseph Pollio. (Prop. Compl. ¶¶ 6-42). This is not, therefore, a circumstance in which a plaintiff has neglected to file a responsive brief defending his complaint against a motion to dismiss, but rather one in which Plaintiff has expressly disavowed any intention to pursue liability against multiple defendants it originally sued and with whom it now apparently has no quarrel. The Court's resources need not be expended on examining claims Plaintiff intends not to press. Plaintiff's claims against the ILA Fund, the PPGU Fund, Joseph Curto, and Joseph Pollio, as well as its claims against any other individual Defendants in their capacity as officers or trustees of the Funds, are thus dismissed without leave to replead.

**B.    The Unions' Motions to Dismiss Are Denied Without Prejudice and Stevedoring Is Granted Leave to Replead**

The motions to dismiss filed by the Unions and those individuals associated with them present a more complex set of problems. In consequence, they will be denied without prejudice to refiling after Stevedoring files its Proposed Complaint as the Second Amended Complaint.

The motions to dismiss filed by the Unions attack Stevedoring's claims comprehensively: the Unions argue that Stevedoring's information-and-belief allegations are impermissibly conclusory; that Stevedoring has not adequately alleged an enterprise or any predicate acts; that Stevedoring has failed to plead

4

any form of continuity substantiating the requisite pattern of racketeering activity; that the alleged RICO violation lacks a causal link to any injury Stevedoring may have suffered; and that Stevedoring's state-law claims fail as a matter of law.

Stevedoring offers two different types of responses to Defendants' arguments. The first is commonplace to the motion to dismiss context and focuses on the content of Defendants' motions, justifying Plaintiff's claims as pleaded on purely legal grounds. For example, Stevedoring argues that it has adequately pleaded an open-ended threat of continuing activity. (Pl. Opp. 40-42). Defendants' contentions to the contrary are wrong, Stevedoring submits, because Defendants misapprehend the nature of the enterprise Stevedoring alleges. Defendants' association was not aimed solely at harming Stevedoring but rather at enriching themselves; harming Stevedoring and forcing it out of the waterfront was merely one scheme to which they devoted their energies as part of their larger criminal project. (*Id.*).

The second category of argument Stevedoring offers in opposition is quite different. Attached to its opposition it provided a Proposed Complaint that altered its allegations to varying and sometimes significant extents. For example, Plaintiff seems to acknowledge that the state tort claims as pleaded in the Amended Complaint are deficient: its opposition brief makes no argument in defense of those claims except to point to the relevant section of the Proposed Complaint, where those claims are significantly expanded by the inclusion of details that may salvage them from dismissal. (Pl. Opp. 43-44;

5

*compare* Prop. Compl. §§ 220-224, *with* Am. Compl. §§ 241-245). Similarly, Stevedoring has included a number of arguably critical additions to its claims regarding the predicate acts it alleges make up Defendants' pattern of racketeering activity.[3] With respect, for example, to Stevedoring's allegations that Defendants colluded to promote illegal gambling and loansharking activity on the waterfront, the Proposed Complaint now includes specific claims that these activities damaged Stevedoring because of the expenditure of significant funds in overtime and private security charges in efforts to combat them. (Pl. Opp. 39; *compare* Am. Compl. ¶¶ 209-228, *with* Prop. Compl. ¶¶ 178-201). In just the same way, Stevedoring's claims of fraud related to the submission of false injury claims are, in the Proposed Complaint, extensively supplemented by more specific allegations that endeavor to satisfy the heightened pleading requirements for claims of fraud under Federal Rule of Civil Procedure 9(b). (*Compare* Am. Compl. ¶¶ 173-184, *with* Prop. Compl. ¶¶ 142-153).

Understandably, Defendants expended little effort on reply seeking to confront this new — and in some cases significantly altered — proposed pleading; rather, they largely argued that the Proposed Complaint "is not properly before the Court," and should only be considered after the Court decides the pending motions to dismiss and, if appropriate, subsequently grants Stevedoring leave to replead. (ILA Reply 2). This is not to fault Defendants, who made a good-faith effort where possible to engage at least in

---

[3]   As explained below, the Court expressly draws no conclusion at this time about the legal sufficiency of any element of the Amended Complaint or the Proposed Complaint.

part with the alterations presented in the Proposed Complaint. (ILA Reply 2-3; PPGU Reply 3 n.3). The posture of these motions does, however, pose a problem. Stevedoring in large part defends the vitality of its claims against Defendants on the basis of allegations only presented to them halfway through the briefing schedule for their motions to dismiss, to which they could respond only via portions of the limited pages available in their reply briefs. Defendants' motions, in turn, principally attack a pleading Stevedoring now effectively disclaims, many of whose deficiencies Stevedoring implicitly or explicitly acknowledges.

Defendants have argued nonetheless that the Court should decide the pending motions and only consider whether Stevedoring's Proposed Complaint may be filed if the Amended Complaint proves legally deficient. Presumably, if the Proposed Complaint were ultimately filed, this course would lead to a subsequent cycle of briefing on the merits of the Proposed Complaint. Alternatively, Defendants seem to suggest the possibility — by no means unimaginable — that the Court should, in the interest of conserving judicial and party resources, apply Defendants' arguments regarding the Amended Complaint to the Proposed Complaint and determine whether the latter could survive if accepted as the operative complaint. The latter course would likely be more efficient, but almost certainly less fair. For example, the Proposed Complaint substantially amplifies Stevedoring's allegations regarding the predicate acts it alleges, including introducing an entirely new predicate act that serves to incriminate one individual Defendant with much more

7

particularity than in the Amended Complaint. (Prop. Compl. ¶¶ 202-204). Defendants, given their very limited opportunity to respond to these new allegations, would likely object if the Court decided that the new claims salvaged Stevedoring's predicate act allegations.

A court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "When determining whether to grant leave to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile." *Baez* v. *Delta Airlines, Inc.*, No. 12 Civ. 3672 (KPF), 2013 WL 5272935, at *4 (S.D.N.Y. Sept. 18, 2013) (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)).

Stevedoring has not unduly delayed, offering the Proposed Complaint as soon as possible under the special briefing protocol the Court prescribed for these motions. Nor is Stevedoring acting in bad faith, as it has diligently sought to remediate certain arguable deficiencies in its allegations. Defendants face no prejudice; they might, in a quiet moment, even agree that this approach would ultimately be the fairest solution from their perspective as much as from Stevedoring's. The parties' arguments here pass each other in the night more than they meet on equal terms. Even were the limited engagement between the parties on these motions the only problem implicated here, the Court would conclude that the fairest and ultimately most efficient outcome would be to deny Defendants' pending motions, order Stevedoring to file the Proposed

8

Complaint as a Second Amended Complaint, and permit the parties to answer or file responsive motions once more.  In no way would this amount to any conclusion on the merits of Defendants' pending motions or the likelihood that the Second Amended Complaint, when filed, could withstand the arguments likely to be made against it.  It would merely constitute a sober appraisal of how best to resolve the procedural complexities of this litigation.

Defendants might, however, protest that the Proposed Complaint would necessarily be futile because it could not survive motions to dismiss on the same grounds already identified in Defendants' moving papers here.  For example, Defendants might insist that the Proposed Complaint fares no better at surviving *Twombly*'s and *Iqbal*'s plausibility standard than does the Amended Complaint, or that Stevedoring's new effort to identify a RICO enterprise is exactly as defective as its old.  At a minimum, the PPGU and its associated individuals very likely would argue that the Proposed Complaint simply does not state a claim that rises above the conclusory against them and so they should be dismissed from this action, irrespective of the Proposed Complaint's merits as to the ILA and its associated individuals.  (PPGU Reply 9).

But there is another procedural hurdle here that exists independent of whether the Court should grant leave to replead.  The ILA and the PPGU have both argued that their relationship with Stevedoring at the time of the incidents giving rise to this dispute was subject to separate collective bargaining agreements, both containing arbitration clauses.  (ILA Br. 3-4; PPGU Br. 8).

9

And both Defendants have maintained that any of Stevedoring's claims arising out of labor disputes — at a minimum, Stevedoring's claims regarding the ILA/PPGU labor strike — must be submitted to arbitration and may not be litigated here. (*Id.*).

Perhaps so. Curiously, however, as Stevedoring points out (Pl. Opp. 5 n.7), the PPGU, though explicitly and by adoption of the ILA's arguments contending that the claims at issue here must be arbitrated, has failed to provide the CBA on which it relies — even though that document was referenced in the Complaint itself (Am. Compl. ¶ 131). More seriously, no party has moved to compel arbitration. The closest either came was the ILA's demand that the Court "dismiss all of Plaintiff's claims and refer them to arbitration for resolution." (ILA Br. 4). But it is by no means self-evident that dismissal is the appropriate treatment for a complaint when arbitration is compelled. The Second Circuit has cautioned district courts that they "should continue to be mindful of th[e] liberal federal policy favoring arbitration agreements when deciding" whether to dismiss or stay an action after finding that it is reserved to arbitration, *Salim Oleochemicals* v. *M/V SHROPSHIRE*, 278 F.3d 90, 93 (2d Cir. 2002) (internal quotation marks and citation omitted), and "[c]ourts in this [D]istrict have heeded this admonition and chosen to stay proceedings, even where urged to dismiss," *Dixon* v. *NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 405 (S.D.N.Y. 2013) (collecting cases).

In addition to these procedural problems, the question of arbitration here involves substantive issues that warrant meaningful discussion. There is no

10

question that civil RICO claims can be arbitrated. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987). But whether all such claims must be arbitrated, even in the face of an undisputed arbitration agreement, is less clear. *See, e.g., id.* And, as Stevedoring points out, even if its claims against the ILA and the PPGU were arbitrated, the status of this action as to the individual Defendants would remain in question. (Pl. Opp. 5 n.6). These issues warrant serious attention and argument.

As Defendants have raised the possibility that this dispute must be arbitrated, the Court concludes that it is not appropriate to assess the legal merits of the claims against Defendants in any way before determining whether Plaintiff's claims are indeed reserved to arbitration. Thus the Court must decline the invitation — whether from Defendants generally or from the PPGU and its associated individuals — to examine the merits of the Proposed Complaint in the face of various compelling procedural reasons not to do so now. Such an examination would be wholly improper if indeed Stevedoring's claims should be heard by an arbitrator.[4] Under these circumstances, any assessment of the futility of permitting Stevedoring to file the Proposed Complaint on the docket would effect the same improper incursion on the rights of a future arbitrator in this dispute.

---

[4] For example, the PPGU cannot credibly contend on the one hand that Stevedoring's claims are reserved to arbitration (PPGU Br. 8), while on the other ask the Court to dismiss the PPGU Defendants before granting Stevedoring leave to replead (PPGU Reply 9). If the latter claim is correct, the Court would have no power to dismiss the PPGU; only the arbitrator could do so.

11

Accordingly, no factor under Rule 15 militates against granting leave to replead.  Construing Stevedoring's opposition as seeking such leave (Pl. Opp. 2 n.2), and concluding that Stevedoring has shown at least "'some indication as to what [it] might add to [its] complaint in order to make it viable,'" *Horoshko* v. *Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (quoting *Nat'l Union of Hosp. & Health Care Emps.* v. *Carey*, 557 F.2d 278, 282 (2d Cir. 1977)), the Court will grant Stevedoring leave to replead.

It is in the interest of all parties for (i) the question of arbitrability to receive full development and (ii) the Court's decision to be based on the actual agreements Stevedoring references in the Amended and Proposed Complaints, rather than on the parties' representations regarding their content.  Arbitrability cannot and should not be decided at this time.  And no other issue or argument may be decided until the Court determines whether it has jurisdiction to hear this dispute.

## CONCLUSION

The Court recognizes and appreciates the assiduity with which the parties have considered the legal issues implicated by the Amended Complaint, from the insightful issues raised by Defendants to the responsive (and, on some level, remedial) efforts embodied in Stevedoring's Proposed Complaint.  But while the Court is most assuredly disinclined to delay resolution of these issues, it is compelled to conclude that, for the reasons just detailed, justice and common sense require the plan outlined herein.  Either this dispute must be arbitrated, in which case the Court should not evaluate Plaintiff's claims at

all; or it may be litigated, in which case it is fairer to all parties that those claims be presented and attacked on an even playing field.

Accordingly, the Court DENIES the ILA and PPGU Defendants' motions to dismiss without prejudice to refiling and grants leave to Stevedoring to file the Proposed Complaint on the docket as the Second Amended Complaint. Stevedoring should file the Second Amended Complaint by **July 31, 2014**. It is the Court's expectation that part or all of Defendants' current briefing can be salvaged for subsequent motion practice.

In addition, the Court GRANTS the motions to dismiss of the NYSA-ILA Pension Fund, the NYSA-PPGU Pension Fund, Joseph Curto, and Joseph Pollio. The Clerk of Court is respectfully directed to terminate these Defendants as parties to this action.

The remaining parties are hereby ORDERED to appear for a conference on **August 20, 2014, at 11:00 a.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, to discuss Defendants' arguments regarding arbitrability and dismissal and the best approach to briefing those applications. Any deadlines to answer specified by Rules 12 or 15 of the Federal Rules of Civil Procedure are stayed pending further order of the Court.

The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 64, 67, 75, and 78.

SO ORDERED.

Dated:   July 18, 2014
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge